**Oral Argument- Not Yet Scheduled**
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

APPEAL NO: 17-3027

UNITED STATES OF AMERICA,
Appellee,

v.

ALFREDO BELTRAN LEYVA
Appellant,

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Richard Leon, J.)

JOINT APPENDIX TO MAIN BRIEF OF APPELLANT BELTRAN LEYVA
Volume I
Docket and Pleadings

Stephen C. Leckar, #281691
Kalbian Hagerty, LLP
888-17th St., NW
Washington, D.C. 20006
202.742.4242
202.223.6625 (FAX)
Counsel for Alfredo Beltran Leyva

Table of Contents

Docket .................................................................................................. 001-35

Indictment [6] ..................................................................................... 036-039

Government's Sentencing Memorandum [174] .................................. 040-061

Defendant's Sentencing Memorandum [183] ..................................... 062-090

Government's Notice re: Sentencing [209] ......................................... 091-093

Defendant's Reply [221] ..................................................................... 094-097

Memorandum Opinion [225] ............................................................... 098-102

Motion to Reconsider [226] ................................................................ 103-107

Motion to Withdraw Guilty Plea [227] and Declaration (filed under seal) ... 108-115

Memorandum Order [236] ................................................................... 116-120

Government's Supplemental Sentencing Memorandum [242] ............ 121-132

Defendant's Supplemental Sentencing Memorandum [243] ............... 133-145

APPEAL,CAT B,CLOSED,INTERPRETER

## U.S. District Court
## District of Columbia (Washington, DC)
## CRIMINAL DOCKET FOR CASE #: 1:12-cr-00184-RJL-1

Case title: USA v. LEYVA                                  Date Filed: 08/24/2012

Assigned to: Judge Richard J. Leon

Appeals court case number: 17-3027

### Defendant (1)

**ALFREDO BELTRAN LEYVA**                represented by **A. Eduardo Balarezo**
*also known as*                                          BALAREZO LAW
MOCHOMO                                                   400 Seventh Street, NW
                                                         Suite 306
                                                         Washington, DC 20004
                                                         (202) 639-0999
                                                         Fax: (202) 639-0899
                                                         Email: filings@balarezolaw.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

                                                         **Victor E. Rocha**
                                                         LAW OFFICE OF VICTOR E. ROCHA,
                                                         P.A.
                                                         990 Biscayne Blvd
                                                         Suite O-903
                                                         Miami, FL 33132
                                                         (305) 774-9111
                                                         Fax: (305) 514-0987
                                                         Email: vicrocha@comcast.net
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

                                                         **William B. Purpura , Jr.**
                                                         LAW OFFICE OF PURPURA &
                                                         PURPURA
                                                         8 East Mulberry Street
                                                         Baltimore, MD 21202
                                                         (410) 727-8550
                                                         Fax: (410) 576-9351

Email: wpurp@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**David S. Zapp**
46 East 92nd Stret
Suite 2
New York, NY 10128
(212) 410-3351
Fax: (917) 492-1879
Email: davidzapp@aol.com
*TERMINATED: 11/25/2014*
*Designation: Retained*

**Pending Counts**

21:959, 960, and 963; NARCOTICS -
SELL, DISTRIBUTE, OR DISPENSE;
Conspiracy to distribute 5 kilograms or
more of cocaine, 50 grams or more of
methamphetamine, 1 kilogram or more of
heroin and 1,000 kilograms or more of
marijuana for importation into the United
States.
(1)

**Disposition**

Sentenced to Life imprisonment, followed
by Sixty (60) months of Supervised
Release, Special Assessment of $100.00
and a fine of $5,000.00 were imposed.

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

None

**Disposition**

---

**Plaintiff**

**USA**                            represented by **Adrian Rosales**
                                   U.S. DEPARTMENT OF JUSTICE
                                   Narcotic and Dangerous Drug Section

145 N Street, NE
Second Floor, East Wing
Washington, DC 20530
(202) 598-2281
Fax: (202) 514-0483
Email: adrian.rosales@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Amanda Nunn Liskamm**
U.S. DEPARTMENT OF JUSTICE
Narcotics and Dangerous Drug Section
145 N Street, NE
Second Floor, East Wing
Washington, DC 20530
(202) 616-1576
Fax: (202) 514-0483
Email: amanda.liskamm@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Andrea Goldbarg**
US DEPARTMENT OF JUSTICE
Criminal Division
145 N Street NE
Washington, DC 20530
(202) 616-2200
Fax: (202) 514-0483
Email: andrea.goldbarg@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

**Jason James Ruiz**
U.S. DEPARTMENT OF JUSTICE
Criminal Division, Narcotic and
Dangerous Drug Section
145 N Street, NE
East Wing, Second floor
Washington, DC 20530
(202) 514-0420
Fax: (202) 514-0483
Email: Jason.Ruiz@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

003

*Designation: Assistant U.S. Attorney*

**Marcia M. Henry**
U.S. DEPARTMENT OF JUSTICE
Narcotics and Dangerous Drug Section
145 N Street, NE
Second Floor, East Wing
Washington, DC 20530
(718) 254-7000
Fax: (202) 514-0483
Email: marcia.henry@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant U.S. Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/24/2017 | | USCA Case Number as to ALFREDO BELTRAN LEYVA 17-3027 for 247 Notice of Appeal - Final Judgment filed by ALFREDO BELTRAN LEYVA. (hsj) (Entered: 04/25/2017) |
| 04/17/2017 | 251 | Transmitted Supplemental Record on Appeal and Docket Sheet to USCA. Copy of Judgment and Commitment Order Filed on 4/13/2017 as to ALFREDO BELTRAN LEYVA 247 Notice of Appeal - Final Judgment. (hsj) (Entered: 04/17/2017) |
| 04/13/2017 | 250 | STATEMENT OF REASONS as to ALFREDO BELTRAN LEYVA re 249 Judgment Access to the PDF Document is restricted per Judicial Conference Policy. Access is limited to Counsel of Record and the Court.. Signed by Judge Richard J. Leon on 4/13/2017. (hsj) (Entered: 04/17/2017) |
| 04/13/2017 | 249 | JUDGMENT as to ALFREDO BELTRAN LEYVA. Statement of Reasons Not Included. Signed by Judge Richard J. Leon on 12184. (Attachments: # 1 Final Order of Forfeiture for Money Judgment) (hsj) (Entered: 04/17/2017) |
| 04/06/2017 | 248 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Fee was not paid because it was filed In Forma Pauperis (CJA) as to ALFREDO BELTRAN LEYVA re 247 Notice of Appeal - Final Judgment. (znmw) (Entered: 04/06/2017) |
| 04/06/2017 | | NOTICE OF CORRECTED DOCKET ENTRY: as to ALFREDO BELTRAN LEYVA Docket Entry 246 Notice (Other) was entered in error and was refiled as Docket Entry 247 Notice of Appeal - Final Judgment. (znmw) (Entered: 04/06/2017) |
| 04/05/2017 | 247 | NOTICE OF APPEAL - Final Judgment by ALFREDO BELTRAN LEYVA re Sentencing. Filing fee $0. Fee Status: No Fee Paid (CJA). Parties have been notified. (znmw) (Entered: 04/06/2017) |
| 04/05/2017 | 246 | ENTERED IN ERROR.....NOTICE *OF APPEAL* by ALFREDO BELTRAN LEYVA (Balarezo, A.) Modified on 4/6/2017 (znmw). (Entered: 04/05/2017) |

| 04/05/2017 | 245 | FINAL ORDER OF FORFEITURE FOR MONEY JUDGMENT. (see order for complete details). Signed by Judge Richard J. Leon on 4/5/2017. (jth) (Entered: 04/05/2017) |
|---|---|---|
| 04/05/2017 | | Minute Entry for proceedings held before Judge Richard J. Leon: Sentencing as to ALFREDO BELTRAN LEYVA held on 4/5/2017. Count 1: sentenced to Life Imprisonment, followed by Sixty (60) months of Supervised Release, Special Assessment of $100.00 and a fine of $5,000.00 were imposed. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: William P. Zaremba; Defense Attorney: A. Eduardo Balarezo; US Attorneys: Adrian Rosales, Andrea Goldbarg, Amanda Nunn Liskamm and Marcia M. Henry; Probation Officer: Renee Moses-Gregory; Interpreters: Teresa Roman and Erin Gaston-Owen. (jth) (Entered: 04/05/2017) |
| 04/05/2017 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. Sentencing presently scheduled for 4/5/2017 at 2:30 PM is rescheduled for 4/5/2017 at 3:30 PM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED. By Judge Richard J. Leon on 4/5/2017. (jth) (Entered: 04/05/2017) |
| 04/03/2017 | 244 | PRELIMINARY ORDER OF FORFEITURE as to ALFREDO BELTRAN LEYVA. Signed by Judge Richard J. Leon on 4/1/2017. (jth) (Entered: 04/03/2017) |
| 03/24/2017 | 243 | SUPPLEMENTAL SENTENCING MEMORANDUM by ALFREDO BELTRAN LEYVA (Balarezo, A.) Modified event title on 3/27/2017 (znmw). (Entered: 03/24/2017) |
| 03/24/2017 | 242 | SUPPLEMENTAL SENTENCING MEMORANDUM by USA as to ALFREDO BELTRAN LEYVA (Liskamm, Amanda) Modified event title on 3/27/2017 (znmw). (Entered: 03/24/2017) |
| 03/08/2017 | | Minute Entry for proceedings held before Judge Richard J. Leon: Status Conference/Forfeiture Hearing as to ALFREDO BELTRAN LEYVA held on 3/8/2017. The Court issues its findings on the Sentencing Enhancements. Sentencing is set for 4/5/2017 at 2:30 PM in Courtroom 18 before Judge Richard J. Leon. Supplemental Sentencing Memoranda from the parties are due by 3/24/2017. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: William Zaremba; Interpreters: Benjamin Engelsberg and Shelley Blumberg-Lorenzana; Defense Attorney: A. Eduardo Balarezo; US Attorneys: Adrian Rosales and Amanda Nunn Liskamm. (jth) (Entered: 03/08/2017) |
| 03/01/2017 | | Minute Entry for proceedings held before Judge Richard J. Leon: Evidentiary Hearing as to ALFREDO BELTRAN LEYVA resumed and concluded on 3/1/2017. A Hearing regarding Forfeiture is scheduled for 3/8/2017 at 2:30 PM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: William Zaremba; Defense Attorneys: A. Eduardo Balarezo and William B. Purpura, Jr.; US Attorneys: Adrian Rosales, Amanda Liskamm and Andrea Goldbarg; Probation Officer: Renee Moses-Gregory; Interpreters: Benjamin Engelsberg, Teresa Salazar and Teresa Roman; Government Witness: Paul Peschka. (jth) (Entered: 03/01/2017) |

| 03/01/2017 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. The Evidentiary Hearing presently scheduled for 3/1/2017 at 10:00 AM is rescheduled for 11:00 AM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED. By Judge Richard J. Leon on 03/01/2017. (jth) (Entered: 03/01/2017) |
|---|---|---|
| 02/23/2017 | | Minute Entry for proceedings held before Judge Richard J. Leon: Evidentiary Hearing as to ALFREDO BELTRAN LEYVA resumed and held on 2/23/2017. Exhibits admitted into evidence. Evidentiary Hearing continued to 3/1/2017 at 10:00 AM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: William Zaremba; Defense Attorneys: A. Eduardo Balarezo and William B. Purpura; US Attorneys: Adrian Rosales, Amanda Liskamm and Andrea Goldbarg; Interpreters: Benjamin Engelsberg and Teresa Salazar; Government Witnesses: Thomas Hatherley and Paul Peschka. (jth) (Entered: 02/24/2017) |
| 02/17/2017 | | Set/Reset Hearings as to ALFREDO BELTRAN LEYVA: The continuation of the Evidentiary Hearing presently set for 2/23/2017 at 10:00 AM is reset for 2/23/2017 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. (jth) (Entered: 02/17/2017) |
| 02/16/2017 | 238 | MOTION to Access *Portion of Sealed Transcript* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Rosales, Adrian) (Entered: 02/16/2017) |
| 02/14/2017 | 239 | EXHIBIT LISTS for Evidentiary Hearing by USA, ALFREDO BELTRAN LEYVA. (jth) (Entered: 02/16/2017) |
| 02/14/2017 | | Minute Entry for proceedings held before Judge Richard J. Leon: Evidentiary Hearing as to ALFREDO BELTRAN LEYVA begun and held on 2/14/2017, Exhibits admitted into evidence. Evidentiary Hearing is continued to 2/23/2017 at 10:00 AM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: William Zaremba; Defense Attorneys: A. Eduardo Balarezo and William B. Purpura, Jr.; US Attorneys: Adrian Rosales, Amanda Liskamm and Andrea Goldbarg; Probation Officer: Renee Moses-Gregory; Interpreters: Benjamin Engelsberg and Teresa Salazar; Government Witness: Thomas Hatherley. (jth) (Entered: 02/16/2017) |
| 02/13/2017 | | Set/Reset Hearings as to ALFREDO BELTRAN LEYVA: The Hearing as to the defendant's actual offense conduct and relevant conduct, and thereafter the determination as to the appropriate sentence that is presently set for 2/14/2017,at 10:00 AM is reset for 2/14/2017 at 11:00 AM in Courtroom 18 before Judge Richard J. Leon. (jth) (Entered: 02/13/2017) |
| 02/13/2017 | 236 | MEMORANDUM ORDER as to ALFREDO BELTRAN LEYVA. Consistent with the Minute Order of February 10, 2017, the Court DENIES defendant's Motion for Reconsideration [#226] and his Motion to Withdraw Plea of Guilty [#227] and will proceed with sentencing as scheduled. (See the Memorandum Order for complete details). Signed by Judge Richard J. Leon on 2/13/2017. (jth) (Entered: 02/13/2017) |
| 02/12/2017 | 235 | REPLY re 226 Motion for Reconsideration by ALFREDO BELTRAN LEYVA *TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER DENIAL OF MOTION TO RECONSIDER DEFENDANT'S MOTION TO ENFORCE* |

| | | |
|---|---|---|
| | | *RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY* (Balarezo, A.) Modified event title and link on 2/13/2017 (znmw). (Entered: 02/12/2017) |
| 02/10/2017 | | MINUTE ORDER denying 226 Motion for Reconsideration as to ALFREDO BELTRAN LEYVA and denying 227 Motion to Withdraw Plea of Guilty as to ALFREDO BELTRAN LEYVA. Defendant's motions are hereby DENIED. A memorandum order stating the Court's reasons is forthcoming on Monday, February 13, 2017. The sentencing hearing will go forward as scheduled on Tuesday, February 14, 2017. SO ORDERED. Signed by Judge Richard J. Leon on 2/10/2017. (lcrjl3, ) (Entered: 02/10/2017) |
| 02/10/2017 | 229 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 226 MOTION for Reconsideration *of Denial of Defendants Motion to Reconsider Denial of Defendants Motion to Reconsider Motion to Enforce Rule of Specialty or, Alternatively, to Limit Scope of Conspiracy* (Attachments: # 1 Exhibit)(Rosales, Adrian) (Entered: 02/10/2017) |
| 02/09/2017 | | MINUTE SCHEDULING ORDER as to ALFREDO BELTRAN LEYVA. The government shall submit any response it has to defendant's Motion for Reconsideration [Dkt. #226] and Motion to Withdraw Plea of Guilty [Dkt. #227] by 12:00 Noon on Friday, February 10, 2017. SO ORDERED. By Judge Richard J. Leon on 2/9/2017. (jth) (Entered: 02/09/2017) |
| 02/09/2017 | 227 | MOTION to Withdraw Plea of Guilty by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 02/09/2017) |
| 02/09/2017 | 226 | MOTION for Reconsideration *of Denial of Defendants Motion to Reconsider Denial of Defendants Motion to Reconsider Motion to Enforce Rule of Specialty or, Alternatively, to Limit Scope of Conspiracy* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 02/09/2017) |
| 02/06/2017 | 225 | ORDER as to ALFREDO BELTRAN LEYVA that Defendant's Motion to Reconsider 197 203 is DENIED. It is further ORDERED that Defendant's Fifth Motion to Compel 202 is DENIED. The Court construes Government's 209 Notice Re: Sentencing as a motion and DENIES the request to rely on the stipulation agreement at sentencing. (See the Order for complete details) It is further ORDERED that the Court will hear evidence as to the defendant's actual offense conduct and relevant conduct, and thereafter determine the appropriate sentence in this case, on 2/14/2017, at 10:00 AM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 2/5/2017. (jth) Modified on 2/6/2017 to reflect that Dkt. #209 is the Government's and not the Defendant's Notice (jth). Modified on 2/9/2017 (jth). (Entered: 02/06/2017) |
| 01/24/2017 | 224 | NOTICE OF ATTORNEY APPEARANCE Jason James Ruiz appearing for USA. (Ruiz, Jason) (Entered: 01/24/2017) |
| 01/23/2017 | 223 | REPLY by ALFREDO BELTRAN LEYVA re 197 MOTION Reconsideration *OF MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY* (Balarezo, A.) Modified to add link on 1/24/2017 (znmw). (Entered: 01/23/2017) |

| | | |
|---|---|---|
| 01/23/2017 | | NOTICE OF CORRECTED DOCKET ENTRY: as to ALFREDO BELTRAN LEYVA re 220 Reply to MOTION for Reconsideration of MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY AND MOTION TO WITHDRAW GUILTY PLEA was entered in error and counsel will refile said pleading. (hsj) (Entered: 01/23/2017) |
| 01/20/2017 | 222 | REPLY by ALFREDO BELTRAN LEYVA re 202 MOTION for Release of Brady Materials. (Balarezo, A.) Modified to add link on 1/23/2017 (znmw). (Entered: 01/20/2017) |
| 01/20/2017 | 221 | REPLY by ALFREDO BELTRAN LEYVA re 209 NOTICE *RE: Sentencing.* (Balarezo, A.) Modified to add link on 1/23/2017 (znmw). (Entered: 01/20/2017) |
| 01/20/2017 | 220 | ENTERED IN ERROR.....REPLY by ALFREDO BELTRAN LEYVA re 197 MOTION for Reconsideration of *MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY AND MOTION TO WITHDRAW GUILTY PLEA.* (Balarezo, A.) Modified to add link on 1/23/2017 (znmw). Modified on 1/23/2017 (zhsj). (Entered: 01/20/2017) |
| 01/03/2017 | 216 | SUPPLEMENT by USA as to ALFREDO BELTRAN LEYVA re 214 Supplement to any document, 213 Response to motion, (Attachments: # 1 Declaration)(Rosales, Adrian) (Entered: 01/03/2017) |
| 01/02/2017 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. It is ORDERED that Defendant's 199 Motion to Preclude Testimony is DENIED AS MOOT. SO ORDERED. By Judge Richard J. Leon on 1/2/2017. (jth) (Entered: 01/02/2017) |
| 12/30/2016 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. Upon consideration of Defendant's 215 Consent Motion for Enlargement of Time to File Reply to Government Oppositions, which contains a request that the Court direct the Government to produce a copy of the Mexican Foreign Ministry's response to the government's request for information, it is ORDERED that the Motion for Enlargement of Time is GRANTED. Defendant's reply is now due by January 23, 2017. It is FURTHER ORDERED that the Government shall file a response to Defendant's request to produce a copy of the Mexican Foreign Ministry's response to the government's request for information by January 6, 2017. SO ORDERED. By Judge Richard J. Leon on 12/30/2016. (jth) (Entered: 12/30/2016) |
| 12/27/2016 | | NOTICE OF ERROR re 214 Supplement to any document; emailed to adrian.rosales@usdoj.gov, cc'd 11 associated attorneys -- The PDF file you docketed contained errors: 1. Incorrect header/caption/case number, 2. Please refile document, 3. Docket Entry 214 to be Refiled with Criminal Case Number on Document. (zhsj, ) (Entered: 12/27/2016) |
| 12/23/2016 | 215 | Consent MOTION for Extension of Time to File Response/Reply *to Government Oppositions* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 12/23/2016) |
| 12/23/2016 | 214 | ENTERED IN ERROR.....SUPPLEMENT by USA as to ALFREDO BELTRAN LEYVA re 213 Response to motion, (Rosales, Adrian) Modified on 12/27/2016 (hsj). (Entered: 12/23/2016) |

| 12/23/2016 | 213 | RESPONSE by USA as to ALFREDO BELTRAN LEYVA re 197 MOTION for Reconsideration *of MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY AND MOTION TO WITHDRAW GUILTY PLEA* (Attachments: # 1 Exhibit, # 2 Exhibit)(Rosales, Adrian) (Entered: 12/23/2016) |
|---|---|---|
| 12/19/2016 | 212 | ORDER: Upon consideration of the government's 211 Motion For Access To Sealed Portions of Plea Hearing Transcript Held on February 23, 2016 as to ALFREDO BELTRAN LEYVA (1); it is hereby ordered that the motion is GRANTED. Signed by Judge Richard J. Leon on 12/17/16. (tb) (Entered: 12/19/2016) |
| 12/16/2016 | 211 | MOTION to Access *Portion of Sealed Transcript* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Rosales, Adrian) (Entered: 12/16/2016) |
| 12/12/2016 | 210 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 202 MOTION for Release of Brady Materials (dr) (Additional attachment(s) added on 12/13/2016: # 1 Exhibit 1) (zdr). (Entered: 12/13/2016) |
| 12/12/2016 | 209 | NOTICE *RE: Sentencing* by USA as to ALFREDO BELTRAN LEYVA (Liskamm, Amanda) (Entered: 12/12/2016) |
| 12/12/2016 | 208 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 199 MOTION Preclude Testimony (Liskamm, Amanda) (Entered: 12/12/2016) |
| 12/12/2016 | | Set/Reset Deadlines as to ALFREDO BELTRAN LEYVA: Government response due by 12/23/2016. (tb) (Entered: 12/12/2016) |
| 12/12/2016 | | MINUTE ORDER: Upon consideration of the government's 207 Motion for Extension of Time to File Response/Reply as to ALFREDO BELTRAN LEYVA (1); it is hereby ordered that the motion is GRANTED. Government response due by 12/23/2016. SO ORDERED - by Judge Richard J. Leon on 12/09/16. (tb) (Entered: 12/12/2016) |
| 12/08/2016 | 207 | Consent MOTION for Extension of Time to File Response/Reply *to Defendant's Motion* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Rosales, Adrian) (Entered: 12/08/2016) |
| 11/22/2016 | 204 | MOTION to Withdraw as Attorney by Victor E. Rocha. by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Rocha, Victor) (Entered: 11/22/2016) |
| 11/21/2016 | 203 | Supplemental MOTION for Reconsideration *MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Exhibit)(Balarezo, A.) (Entered: 11/22/2016) |
| 11/21/2016 | 202 | MOTION for Release of Brady Materials by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 11/21/2016) |
| 11/18/2016 | 201 | TRANSCRIPT OF STATUS HEARING PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on October 18, 2016; Page Numbers: 1-18. Date of Issuance: November 18, 2016. Court Reporter/Transcriber: |

| | | |
|---|---|---|
| | | William Zaremba; Telephone number: (202) 354-3249. Transcripts may be ordered by submitting the Transcript Order Form |
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a publi c terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter. |
| | | **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |
| | | Redaction Request due 12/9/2016. Redacted Transcript Deadline set for 12/19/2016. Release of Transcript Restriction set for 2/16/2017.(wz) (Entered: 11/18/2016) |
| 11/17/2016 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. It is ORDERED that the Government's 200 Consent Motion for an Extension of Time to File a Response to Defendant's 197 Motion to Reconsider Motion to Enforce Rule of Specialty or, Alternatively, to Limit Scope of Conspiracy is GRANTED. The Government's Response to Defendant's 197 Motion to Reconsider, and the Government's Response to Defendant's 199 Motion to Exclude Testimony are now due by December 12, 2016. SO ORDERED. By Judge Richard J. Leon on 11/17/2016. (jth) (Entered: 11/17/2016) |
| 11/16/2016 | 200 | Consent MOTION for Extension of Time to File Response/Reply as to 197 MOTION for Reconsideration *of MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY AND MOTION TO WITHDRAW GUILTY PLEA* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Rosales, Adrian) (Entered: 11/16/2016) |
| 11/16/2016 | | Terminate Deadlines and Hearings as to ALFREDO BELTRAN LEYVA: (tb) (Entered: 11/16/2016) |
| 11/16/2016 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA: In light of the defendant's recent filings, docket entries 197 and 199 ; it is hereby ordered that today's sentencing hearing is CANCELLED, and it is further ordered that the government shall respond to the defendant's two motions by noon on 11/23/16. The Sentencing hearing will be rescheduled to a date to be determined. SO ORDERED - Judge Richard J. Leon on 11/16/16. (tb) (Entered: 11/16/2016) |
| 11/15/2016 | 199 | MOTION Preclude Testimony by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 11/15/2016) |
| 11/15/2016 | 198 | TRANSCRIPT OF STATUS HEARING PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on January 21, 2016; Page Numbers: 1-52. Date of Issuance: November 15, 2016. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249, Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a publi c terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/6/2016. Redacted Transcript Deadline set for 12/16/2016. Release of Transcript Restriction set for 2/13/2017.(wz) (Entered: 11/15/2016) |
| 11/14/2016 | 197 | MOTION for Reconsideration *of MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY AND MOTION TO WITHDRAW GUILTY PLEA* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(Balarezo, A.) (Entered: 11/14/2016) |
| 11/14/2016 | | Set/Reset Hearings as to ALFREDO BELTRAN LEYVA: Sentencing reset for 11/16/2016 to 11:00 AM in Courtroom 18 before Judge Richard J. Leon. (tb) (Entered: 11/14/2016) |
| 10/18/2016 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 10/18/2016 before Judge Richard J. Leon:Sentencing rescheduled to 11/16/2016 at 10:00 AM in Courtroom 18 before Judge Richard J. Leon and may continued to 11/17/2016 at 10:00 AM in Courtroom 18 before Judge Richard J. Leon. Defendant committed; commitment issued. Court Reporter: William Zaremba; Defense Attorney: A. Eduardo Ballarezo; US Attorney: Adrian Rosales, Amanda Liskamm, Andrea Goldbard; Prob Officer: Renee Moses-Gregory; Interpreter: Teresa Salazar and Teresa Roman. (tb) (Entered: 10/19/2016) |
| 10/18/2016 | 196 | ORDER as to ALFREDO BELTRAN LEYVA. Defendant's Consent 195 Motion for Authorization for Legal Visit with his Foreign Attorney is GRANTED; and it is further ORDERED, that the United States Marshal's Service is hereby DIRECTED to authorize legal visits between defendant and Mexican attorney Juan Ramon Mondragon Solis as long as he is accompanied by defendant's America counsel, A. Eduardo Balarezo. SO ORDERED. Signed by Judge Richard J. Leon on 10/17/2016. (jth) (Entered: 10/18/2016) |
| 10/16/2016 | 195 | Consent MOTION for Authorization For Legal Visit With His Foreign Attorney by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 10/16/2016) |
| 10/11/2016 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 10/11/2016 before Judge Richard J. Leon: Oral motion by defendant to continued sentencing; heard and DENIED. Oral motion to seal transcript; heard and GRANTED. Defendant committed; commitment issued. Court Reporter: William Zaremba; |

| | | |
|---|---|---|
| | | Defense Attorney: A. Eduardo Balarezo, Harry Tun and Victor Rocha; US Attorney: Adrian Rosales and Amanda Liskamm; Interpreter: Teresa Salazar and Erin Gaskin. (tb) (Entered: 10/12/2016) |
| 10/11/2016 | 194 | ORDER: It is hereby ordered that Victor Edward Rocha's 191 Motion for Authorization of Legal Visitation with defendant ALFREDO BELTRAN LEYVA (1) is GRANTED. Signed by Judge Richard J. Leon on 10/11/16. (tb) (Entered: 10/11/2016) |
| 10/11/2016 | 193 | NOTICE OF ATTORNEY APPEARANCE: Victor E. Rocha appearing for ALFREDO BELTRAN LEYVA (Rocha, Victor) (Entered: 10/11/2016) |
| 10/07/2016 | | Set/Reset Hearing, as to ALFREDO BELTRAN LEYVA: The Motion Hearing set for 10/11/2016, at 2:30 PM, is RESCHEDULED to 12:00 PM, in Courtroom 18, before Judge Richard J. Leon. (kt) (Entered: 10/07/2016) |
| 10/07/2016 | | MINUTE ORDER granting 192 Defendant's Motion to Reschedule Hearing, as to ALFREDO BELTRAN LEYVA (1). The hearing set for October 11, 2016, at 2:30 p.m. is hereby RESCHEDULED to October 11, 2016, at 12:00 p.m. Signed by Judge Richard J. Leon on 10/7/2016. (kt) (Entered: 10/07/2016) |
| 10/07/2016 | 192 | MOTION to Reschedule Hearing by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 10/07/2016) |
| 10/05/2016 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. A motion hearing on 191 Motion for Authorization of Legal Visitation with Defendant is scheduled for Tuesday, October 11, 2016, at 2:30 PM in Courtroom 18 before Judge Richard J. Leon. Mr. Rocha should consult with the government and be prepared to submit to the Court a copy of the necessary paperwork to join the defense team in the event the Court grants the pending motion. SO ORDERED. By Judge Richard J. Leon on 10/5/2016. (jth) (Entered: 10/05/2016) |
| 10/03/2016 | 191 | MOTION for Authorization of Legal Visitation with Defendant by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Exhibit Translation/Client Letter Signed, # 2 Text of Proposed Order)(Rocha, Victor) (Entered: 10/03/2016) |
| 09/28/2016 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 9/28/2016 before Judge Richard J. Leon: Sentencing Hearing set for 10/18/2016 at 02:30 PM in Courtroom 18 before Judge Richard J. Leon. Defendant committed; commitment issued. Court Reporter: Scott Wallace; Defense Attorney: A. Eduardo Balarezo; US Attorney: Adrian Rosales; Interpreter: Teresa Roman. (tb) (Entered: 09/29/2016) |
| 09/27/2016 | 190 | NOTICE of Change of Address by A. Eduardo Balarezo (Balarezo, A.) (Entered: 09/27/2016) |
| 09/20/2016 | | Set/Reset Deadlines as to ALFREDO BELTRAN LEYVA: Forensic Legal Services Division written report shall be due to the Court and copies provided to counsel as outlined in the previous Order by close of business on 9/26/2016.(jth) (Entered: 09/20/2016) |

| 09/19/2016 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA: Upon representation by the Forensic Legal Services Division that it will be able to perform a preliminary psychiatric evaluation of the defendant on 9/23/2016, the deadlines set in the Courts Order of 9/16/2016 [Dkt. #189] are hereby VACATED. Rather, it is hereby ORDERED that the United States Marshal, or his designated deputy, shall transport the defendant as needed to facilitate the 9/23/2016 evaluation. Additionally, it is hereby ORDERED that the written report shall be due to the Court and copies provided to counsel as outlined in the previous Order by close of business on 9/26/2016. SO ORDERED - by Judge Richard J. Leon on 09/19/16. (tb) (Entered: 09/20/2016) |
| 09/16/2016 | | Set/Reset Deadlines as to ALFREDO BELTRAN LEYVA: Forensic Legal Services Division written report due by 9/23/2016. (tb) (Entered: 09/16/2016) |
| 09/16/2016 | 189 | ORDER as to ALFREDO BELTRAN LEYVA : It is hereby ordered that the United States Marshal, or his designated deputy, transport the defendant to the Cellblock in the Superior Court of the District of Columbia by no later than 09/20/16 for the purpose of a preliminary psychiatric evaluation with the Forensic Legal Services Division, and return the defendant to his place of confinement as soon as the evaluation has been completed. And it is further ordered that upon completion of the examination, the Forensic Legal Services Division shall prepare and send a written report, no later than September 23, 2015 via fax and email to Judge Leon's Chambers. Status Conference set for 9/28/2016 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. SEE ORDER FOR FULL DETAILS. Signed by Judge Richard J. Leon on 09/16/16. (tb) (Entered: 09/16/2016) |
| 09/14/2016 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 9/14/2016 before Judge Richard J. Leon:Status Conference set for 9/28/2016 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. Defendant committed; commitment issued. Court Reporter: William Zaremba; Defense Attorney: A. Eduardo Balarezo; US Attorney: Adrian Rosales and Amanda Liskamm; Interpreters: Shelley Bloomberg-Lorenza and Jaime de Castellvi. (tb) (Entered: 09/15/2016) |
| 09/09/2016 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA re 184 MOTION to Continue *Sentencing Hearing and Request for Forensic Evaluation* filed by ALFREDO BELTRAN LEYVA: It is hereby ordered that the evidentiary hearings scheduled for 09/14/16 and 09/15/16 are VACATED. Status Conference set for 9/14/2016 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED - Judge Richard J. Leon on 09/09/16. (tb) (Entered: 09/09/2016) |
| 09/09/2016 | 184 | MOTION to Continue *Sentencing Hearing and Request for Forensic Evaluation* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 09/09/2016) |
| 07/20/2016 | | Minute Entry for proceedings held before Judge Richard J. Leon: Case called for Sentencing, but not held. Status Conference as to ALFREDO BELTRAN LEYVA held on 7/20/2016. Pre-Sentencing Hearings are scheduled for 9/14/2016 and 9/15/2016 at 10:00 AM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: William Zaremba; Defense Attorneys: A Eduardo Ballarezo and William Purpura, Jr.; US Attorneys: |

| | | |
|---|---|---|
| | | Adrea Goldbard, Adrian Rosales and Marcia Henry; Probation Officer: Renee Moses-Gregory. Interpreters: Benjamin Engelsberg and Maria Krismancich. (jth) (Entered: 07/21/2016) |
| 07/20/2016 | | Set/Reset Hearings as to ALFREDO BELTRAN LEYVA: Sentencing set for 7/20/2016 at ( TIME CHANGE ) 03:00 PM in Courtroom 18 before Judge Richard J. Leon. (tb) Modified on 7/20/2016 (tb). (Entered: 07/20/2016) |
| 07/11/2016 | 183 | SENTENCING MEMORANDUM by ALFREDO BELTRAN LEYVA (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit)(Balarezo, A.) (Entered: 07/11/2016) |
| 06/28/2016 | 182 | MOTION for Order Preliminary Order of Forfeiture by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Liskamm, Amanda) (Entered: 06/28/2016) |
| 06/07/2016 | 178 | ORDER : Upon consideration of defendant's 173 Motion to Continue Sentencing as to ALFREDO BELTRAN LEYVA (1); it is hereby ordered that the motion is GRANTED. Sentencing hearing for June 6, 2016 is hereby VACATED; and it is further ordered that sentencing is scheduled for July 20, 2016 and sentencing memoranda from the parties are due by July 11, 2016. Signed by Judge Richard J. Leon on 06/06/16. (tb) Modified on 6/7/2016 (zhsj). (Entered: 06/07/2016) |
| 06/06/2016 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 6/6/2016 before Judge Richard J. Leon: Sentencing set for 7/20/2016 at 02:30 PM in Courtroom 18 before Judge Richard J. Leon. Sentencing Memorandum due by 7/11/2016. Defendant committed; commitment issued. Court Reporter: William Zaremba; Defense Attorneys: A. Eduardo Balarezo and William B. Purpura, Jr.; US Attorneys: Andrea Goldbarg, Amanda Nunn Liskamm, Adrian Rosales, and Marcia M. Henry; Interpreter: Teresa Roman and Teresa Salazar. (tb) (Entered: 06/07/2016) |
| 06/03/2016 | 175 | TRANSCRIPT OF PLEA HEARING PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on February 23, 2016; Page Numbers: 1-26. Date of Issuance: June 3, 2016. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249. Transcripts may be ordered by submitting the Transcript Order Form. <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |

| | | |
|---|---|---|
| | | Redaction Request due 6/24/2016. Redacted Transcript Deadline set for 7/4/2016. Release of Transcript Restriction set for 9/1/2016.(wz) (Entered: 06/03/2016) |
| 06/03/2016 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. Sentencing in this case scheduled for Monday, June 6, 2016, at 2:30 PM is converted to a Status Conference on that same date and at the same time. SO ORDERED. By Judge Richard J. Leon on 06/03/2016. (jth) (Entered: 06/03/2016) |
| 05/31/2016 | | NOTICE OF CORRECTED DOCKET ENTRY: as to ALFREDO BELTRAN LEYVA re 176 MOTION to Continue Sentencing was entered in error by Clerk's Office. Docket Entry 173 is the Corrected document which was entered on 5/30/2016. (hsj) (Entered: 06/03/2016) |
| 05/31/2016 | 176 | ENTERED IN ERROR.....MOTION to Continue Sentencing by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(hsj) Modified on 6/3/2016 (hsj). Modified on 6/7/2016 (zhsj). (Entered: 06/03/2016) |
| 05/31/2016 | 174 | SENTENCING MEMORANDUM by USA as to ALFREDO BELTRAN LEYVA (Liskamm, Amanda) (Entered: 05/31/2016) |
| 05/30/2016 | 173 | MOTION to Continue *Sentencing Hearing* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 05/30/2016) |
| 05/27/2016 | 172 | Recommendation of PSI Report as to ALFREDO BELTRAN LEYVA. Not for public disclosure per Judicial Conference Policy.(Stevens-Panzer, Deborah) (Entered: 05/27/2016) |
| 05/20/2016 | 170 | TRANSCRIPT OF PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on 2/8/2016; Page Numbers: 1-91. Date of Issuance:5/3/2016. Court Reporter/Transcriber William P. Zaremba, Telephone number (202) 354-3249, Transcripts may be ordered by submitting the Transcript Order Form. <br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter. <br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. <br><br>Redaction Request due 6/10/2016. Redacted Transcript Deadline set for 6/20/2016. Release of Transcript Restriction set for 8/18/2016.(hsj) (Entered: 05/23/2016) |
| 05/13/2016 | 169 | TRANSCRIPT OF PRETRIAL CONFERENCE PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on February 9, 2016; Page Numbers: 1-121. Date of Issuance: May 13, 2016. Court |

| | | |
|---|---|---|
| | | Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249. Transcripts may be ordered by submitting the Transcript Order Form.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/3/2016. Redacted Transcript Deadline set for 6/13/2016. Release of Transcript Restriction set for 8/11/2016.(wz) (Entered: 05/13/2016) |
| 05/13/2016 | 168 | TRANSCRIPT OF REDACTED PRETRIAL CONFERENCE PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on February 8, 2016; Page Numbers: 1-91. Date of Issuance: May 13, 2016. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249. Transcripts may be ordered by submitting the Transcript Order Form.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/3/2016. Redacted Transcript Deadline set for 6/13/2016. Release of Transcript Restriction set for 8/11/2016.(wz) (Entered: 05/13/2016) |
| 05/06/2016 | | MINUTE ORDER granting 167 Motion to Access as to ALFREDO BELTRAN LEYVA (1). It is hereby ORDERED that the government shall have access to the sealed portion of the pretrial hearing transcript of proceedings held on 2/8/2016 and 2/9/2016. Signed by Judge Richard J. Leon on 5/6/2016. (lcrjl3, ) (Entered: 05/06/2016) |
| 05/03/2016 | 167 | MOTION to Access *Portion of Sealed Transcripts* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Liskamm, Amanda) (Entered: 05/03/2016) |

| 03/22/2016 | 165 | ORDER: Upon consideration of defendant's 164 Motion for Authorization for Legal Visit as to ALFREDO BELTRAN LEYVA (1); it is hereby ordered that the motion is GRANTED; and it is further ordered that the United States Marshal's Service is hereby directed to authorize legal visits between Defendant and his investigator Eddy Colindres. Signed by Judge Richard J. Leon on 03/22/16. (tb) (Entered: 03/22/2016) |
|---|---|---|
| 03/21/2016 | 164 | Consent MOTION for Authorization for Legal Visit with Investigator by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 03/21/2016) |
| 02/23/2016 | 162 | WAIVER of Right to Trial by Jury as to ALFREDO BELTRAN LEYVA. Approved by Judge Richard J. Leon on 2/23/2016. (jth) (Entered: 02/23/2016) |
| 02/23/2016 | | Minute Entry for proceedings held before Judge Richard J. Leon: Case called for a Status Conference, but not held. Plea Hearing as to ALFREDO BELTRAN LEYVA held on 2/23/2016. Oral Motion by the Government to Dismiss Count 1 solely as to the portion of the charge related to the Heroin and Marijuana was Heard and Granted. Plea of Guilty entered by ALFREDO BELTRAN LEYVA as to Count 1. REFERRAL TO PROBATION OFFICE for Presentence Investigation. Sentencing scheduled for 6/6/2016 at 2:30 PM in Courtroom 18 before Judge Richard J. Leon. Sentencing Memoranda from the parties are due by 5/31/2016. Defendant's 157 Motion to Continue Trial is Dismissed as Moot. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: William Zaremba; Defense Attorneys: A. Eduardo Balarezo and William B. Purpura, Jr.; US Attorneys: Andrea Goldbarg, Amanda Nunn Liskamm, Adrian Rosales, and Marcia M. Henry; Interpreter: Teresa Salazar. (jth) (Entered: 02/23/2016) |
| 02/17/2016 | | NOTICE OF HEARING as to ALFREDO BELTRAN LEYVA. A Status Conference is scheduled for Tuesday, February 23, 2016, at 12:00 Noon in Courtroom 18 before Judge Richard J. Leon. (jth) (Entered: 02/17/2016) |
| 02/17/2016 | 158 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 157 MOTION to Continue Trial (Henry, Marcia) (Entered: 02/17/2016) |
| 02/12/2016 | 157 | MOTION to Continue Trial by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 02/12/2016) |
| 02/12/2016 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA that the Status Conference presently scheduled for Friday, February 12, 2016, at 3:00 PM is cancelled; and it is FURTHER ORDERED that the Jury Trial presently scheduled for Tuesday, February 16, 2016, at 10:00 AM is vacated, and will be rescheduled to and date and time to be determined. SO ORDERED. By Judge Richard J. Leon on 2/12/2016. (jth) (Entered: 02/12/2016) |
| 02/12/2016 | 156 | ORDER as to ALFREDO BELTRAN LEYVA Granting 155 Defendant's Consent Motion for Authorization for Legal Visit with Foreign Attorney; and it is FURTHER ORDERED, that the United States Marshal's Service is hereby directed to allow legal visits between Defendant and Mexican Attorney Noe Palacios Rodriguez to take place in the Courthouse cellblock. Signed by Judge Richard J. Leon on 2/11/2016. (jth) Modified on 2/12/2016 to reflect that the correct date of the signature of the Judge is 2/11/2016. (jth). (Entered: 02/12/2016) |

| 02/11/2016 | 155 | Consent MOTION for Authorization for Legal Visit with Foreign Attorney by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 02/11/2016) |
| 02/11/2016 | | Set/Reset Hearings as to ALFREDO BELTRAN LEYVA: A Status Conference is scheduled for Friday, February 12, 2016, at 3:00 PM in Courtroom 18 before Judge Richard J. Leon. (jth) (Entered: 02/11/2016) |
| 02/11/2016 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. The Pretrial Conference presently scheduled for 2/11/2016 at 11:00 AM is converted to a Status Conference and is scheduled for 2/11/2016 at 12:00 PM in Courtroom 18 before Judge Richard J. Leon. Signed by Judge Richard J. Leon on 2/11/2016. (jth) (Entered: 02/11/2016) |
| 02/10/2016 | 154 | NOTICE *Regarding Project Fountainhead Reports* by USA as to ALFREDO BELTRAN LEYVA (Liskamm, Amanda) (Entered: 02/10/2016) |
| 02/09/2016 | | Minute Entry for proceedings held before Judge Richard J. Leon: Pretrial Conference as to ALFREDO BELTRAN LEYVA held on 2/9/2016. The parties are directed to submit for the Court's In Camera Review, by 12:00 Noon on Thursday, February 11, 2016, any demonstrative exhibits to be used during opening arguments. Pretrial Conference continued to 2/11/2016 at 11:00 AM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: William Zaremba; Defense Attorney: A. Eduardo Balarezo; US Attorneys: Amanda Liskamm, Adrian Rosales, and Marcia Henry; Interpreters: Teresa Salazar and Angeles Estrada. (jth) (Entered: 02/10/2016) |
| 02/09/2016 | | NOTICE OF ERROR re 151 Proposed Voir Dire; emailed to filings@balarezolaw.com, cc'd 9 associated attorneys -- The PDF file you docketed contained errors: 1. Docket Entry Modified to Correct Entry as a Comments and Objections. Do Not Refile. (zhsj, ) (Entered: 02/09/2016) |
| 02/08/2016 | | Minute Entry: Pretrial Conference as to ALFREDO BELTRAN LEYVA held on 2/8/2016 before Judge Richard J. Leon: Defendant's 147 motion for clothing is DENIED; Defendant's 148 motion for more varied meals; heard and taken under advisement; Defendant's 149 motion for shave and haircut during trial is DENIED. It is ordered that government file unsealed notice regarding fountain head report, excluding the attached exhibit previously filed with the Court. Pretrial Conference continued to 2/9/2016 at 11:00 AM in Courtroom 18 before Judge Richard J. Leon. Defendant committed; commitment issued. Court Reporter: William Zaremba; Defense Attorney: A. Eduardo Balarezo and William Purpura, Jr.; US Attorney: Adrian Rosales, Amanda Liskamm, Andrea Goldbarg, and Marcia Henry; Interpreter: Teresa Salazar and Erin Gaskin-Owens. (tb) (Entered: 02/09/2016) |
| 02/08/2016 | | MINUTE ORDER: It is hereby ORDERED that the parties' proposed voir dire questions and jury instructions shall be submitted no later than February 8, 2016 at 10:00 AM. It is further ORDERED that the pretrial conference currently scheduled for February 8, 2016 at 11:00 AM is continued until February 8, 2016 at 2:30 PM.SO ORDERED - Judge Richard J. Leon on 02/08/16. (tb) (Entered: 02/08/2016) |
| 02/08/2016 | 151 | Comments & Objections to Government's Proposed Voir Dire by ALFREDO BELTRAN LEYVA. (Balarezo, A.) Modified on 2/9/2016 (hsj). (Entered: 02/08/2016) |

| 02/08/2016 | 150 | Proposed Jury Instructions by ALFREDO BELTRAN LEYVA (Balarezo, A.) (Entered: 02/08/2016) |
| 02/06/2016 | 149 | MOTION for Shave and Haircut During Trial by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 02/06/2016) |
| 02/06/2016 | 148 | MOTION for More Varied Meals by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 02/06/2016) |
| 02/06/2016 | 147 | MOTION for a Clothing Order by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 02/06/2016) |
| 02/06/2016 | 146 | NOTICE *of FIling - Fifth Request for Discovery* by ALFREDO BELTRAN LEYVA (Attachments: # 1 Exhibit)(Balarezo, A.) (Entered: 02/06/2016) |
| 02/03/2016 | 145 | ORDER as to ALFREDO BELTRAN LEYVA : Consistent with this Court's February 2, 2016 Minute Order granting defendant's Motion for Authorization for Legal Visit with Foreign Attorney 137 , it is hereby ordered that the United States Marshal's Service is hereby directed to authorize legal visits between defendant Alfredo Beltran Leyva and Mexican attorney Noe Palacios Rodriguez. Signed by Judge Richard J. Leon on 02/02/16. (tb) (Entered: 02/03/2016) |
| 02/02/2016 | | MINUTE ORDER: It is hereby ORDERED that defendant's 56 Motion for Bill of Particulars is DENIED; it is further ORDERED that defendant's 58 Motion for Disclosure of Identities of Confidential Informants is DENIED; it is further ORDERED that defendant's 60 Motion to Dismiss for Improper Venue is DENIED; it is further ORDERED that defendant's 113 Motion to Dismiss Case for Constructive Amendment or, Alternatively, for Release of Grand Jury Minutes is DENIED; and it is further ORDERED that defendant's 137 Motion for Authorization for Legal Visit with Foreign Attorney is GRANTED with the understanding that if the foreign attorney wants access to any protected discovery, he must comply with the terms of the protective order that this Court previously authorized. SO ORDERED - Judge Richard J. Leon on 02/02/16. (tb) Modified on 2/2/2016 (tb). (Entered: 02/02/2016) |
| 02/01/2016 | 144 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 138 MOTION to Suppress *Identification* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Liskamm, Amanda) (Entered: 02/01/2016) |
| 01/29/2016 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA : It is hereby ordered that the Pretrial Conference set for 2/8/2016 will commence at 11:00 AM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED - Judge Richard J. Leon on 01/29/16. (tb) (Entered: 01/29/2016) |
| 01/21/2016 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 1/21/2016 before Judge Richard J. Leon: 59 MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY filed by ALFREDO BELTRAN LEYVA GRANTED in part and DENIED in part: this motion is GRANTED as to the request that the conspiracy charge be limited to conspiracy to distribute five kilograms or more of cocaine and fifty grams or more of methamphetamine, and DENIED insofar as it seeks to limit the charged conspiracy to the period January 2008 to 2012; Government's exhibit list, witness list, and the |

| | | |
|---|---|---|
| | | parties' proposed voir dire questions and jury instructions due by 2/5/2016. Jury Trial set for 2/16/2016 at 10:00 AM in Courtroom 18 before Judge Richard J. Leon. Pretrial Conference set for 2/8/2016 at a time to be determined in Courtroom 18 before Judge Richard J. Leon. Defendant committed; commitment issued. Court Reporter: William Zaremba; Defense Attorney: A. Eduardo Balarezo and William Purpura, Jr.; US Attorney: Adrian Rosales, Amanda Liskamm, Andrea Goldbarg, and Marcia Henry; Interpreter: Gladys Seigel. (tb) (Entered: 01/22/2016) |
| 01/21/2016 | | NOTICE OF ERROR re 139 Response to document; emailed to adrian.rosales@usdoj.gov, cc'd 9 associated attorneys -- The PDF file you docketed contained errors: 1. Docket Entry 139 Modified to Correct Entry as a Supplemental Opposition. Do Not Refile. (zhsj, ) (Entered: 01/21/2016) |
| 01/20/2016 | 141 | REPLY by ALFREDO BELTRAN LEYVA *to Government's Supplemental Opposition to Defendant's Motion to Enforce Rule of Specialty or, Alternatively, to Limit Scope of Conspiracy* (Balarezo, A.) (Entered: 01/20/2016) |
| 01/20/2016 | 139 | Government's Supplemental Opposition to Defendant's Motion to Enforce Rule of Specialty or, Alternatively, to Limit Scope of Conspiracy by USA as to ALFREDO BELTRAN LEYVA re 128 Notice to Court. (Attachments: # 1 Exhibit Exhibit 1)(Rosales, Adrian) Modified on 1/21/2016 (hsj). (Entered: 01/20/2016) |
| 01/19/2016 | 138 | MOTION to Suppress *Identification* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 01/19/2016) |
| 01/12/2016 | 137 | MOTION for Authorization for Legal Visit with Foreign Attorney by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Balarezo, A.) (Entered: 01/12/2016) |
| 12/28/2015 | 132 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 113 MOTION to Dismiss Case *for Constructive Amendment or, Alternatively, for Release of Grand Jury Minutes* (Henry, Marcia) (Entered: 12/28/2015) |
| 12/17/2015 | 128 | NOTICE *TO COURT* by ALFREDO BELTRAN LEYVA (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Balarezo, A.) (Entered: 12/17/2015) |
| 12/17/2015 | 127 | NOTICE *of Filing - Fourth Request for Discovery* by ALFREDO BELTRAN LEYVA (Attachments: # 1 Exhibit)(Balarezo, A.) (Entered: 12/17/2015) |
| 12/16/2015 | | Minute Entry: Motion Hearing as to ALFREDO BELTRAN LEYVA held on 12/15/2015 before Judge Richard J. Leon: 109 MOTION for Reconsideration OF USE OF ANONYMOUS JURY filed by ALFREDO BELTRAN LEYVA is GRANTED; 104 MOTION for Use of a Jury Questionnaire in Empaneling an Anonymous Jury filed by USA is DENIED as MOOT; 59 MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY filed by ALFREDO BELTRAN LEYVA heard and taken under advisement; and Brady motions by defendant heard and taken under advisement. The Government is ORDERED to submit ex parte and under seal a memorandum describing the Project Fountainhead database and what information, if any, is contained therein that could be relevant to this case. Status Conference set for 1/21/2016 at 02:30 PM in Courtroom 18 before Judge Richard J. Leon. Medical/Mental Health Alert issued to the |

| | | |
|---|---|---|
| | | Department of Corrections Medical Unit as to ALFREDO BELTRAN LEYVA. Defendant committed; commitment issued. Court Reporter: Bryan Wayne and William Zaremba; Defense Attorney: A. Eduardo Ballarezo and William Purpura; US Attorney: Andrea Goldbarg, Adrian Rosales, Amanda Liskamm and Marcia Henry; Interpreter: Yarmila Aragon and Teresa Salazar. (tb) (Entered: 12/17/2015) |
| 12/15/2015 | 117 | MOTION for Leave to File *Ex Parte and Under Seal* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 12/15/2015) |
| 12/14/2015 | 115 | MOTION for Leave to File by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Rosales, Adrian) (Entered: 12/14/2015) |
| 12/14/2015 | | NOTICE OF ERROR re 114 Notice (Other); emailed to adrian.rosales@usdoj.gov, cc'd 9 associated attorneys -- The PDF file you docketed contained errors: 1. Incorrect event used, 2. Please refile document, 3. Docket Entry 114 is to be Refiled as an Motion (zhsj, ) (Entered: 12/14/2015) |
| 12/11/2015 | 114 | ENTERED IN ERROR.....NOTICE *of Ex Parte Filing* by USA as to ALFREDO BELTRAN LEYVA (Attachments: # 1 Text of Proposed Order)(Rosales, Adrian) Modified on 12/14/2015 (hsj). (Entered: 12/11/2015) |
| 12/11/2015 | 113 | MOTION to Dismiss Case *for Constructive Amendment or, Alternatively, for Release of Grand Jury Minutes* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Exhibit, # 2 Exhibit)(Balarezo, A.) (Entered: 12/11/2015) |
| 12/09/2015 | 112 | Memorandum in Opposition by ALFREDO BELTRAN LEYVA re 105 Supplemental MOTION in Limine *to Admit or Allow Evidence* (Balarezo, A.) (Entered: 12/09/2015) |
| 12/07/2015 | 111 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 109 MOTION for Reconsideration *OF USE OF ANONYMOUS JURY* (Liskamm, Amanda) (Entered: 12/07/2015) |
| 12/07/2015 | 110 | NOTICE *OF FILING - COMPLETE EXH. 3 TO DOC 59* by ALFREDO BELTRAN LEYVA (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Balarezo, A.) (Entered: 12/07/2015) |
| 11/23/2015 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. Granting Defendant's Consent 108 Motion to Continue Motions Hearing. The Motions Hearing presently scheduled for 12/7/2015 at 3:00 PM is rescheduled for 12/15/2015 at 12:00 PM in Courtroom 18. SO ORDERED. By Judge Richard J. Leon on 11/23/2015. (jth) (Entered: 11/23/2015) |
| 11/23/2015 | 109 | MOTION for Reconsideration *OF USE OF ANONYMOUS JURY* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 11/23/2015) |
| 11/23/2015 | 108 | Consent MOTION to Continue *MOTIONS HEARING* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 11/23/2015) |

| | | |
|---|---|---|
| 11/20/2015 | | NOTICE OF ERROR re 107 Motion to Continue ; emailed to filings@balarezolaw.com, cc'd 7 associated attorneys -- The PDF file you docketed contained errors: 1. Incorrect event used, 2. Please refile document, 3. Counsel is instructed to File Docket Entry 107 as a Motion. (zhsj, ) (Entered: 11/20/2015) |
| 11/19/2015 | 107 | ENTERED IN ERROR.....Consent MOTION to Continue *MOTIONS HEARING* by ALFREDO BELTRAN LEYVA. (Balarezo, A.) Modified on 11/20/2015 (hsj). (Entered: 11/19/2015) |
| 11/19/2015 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. A Motions Hearing is scheduled for 12/7/2015 at 3:00 PM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED. By Judge Richard J. Leon on 11/19/2015. (jth) (Entered: 11/19/2015) |
| 11/13/2015 | 106 | TRANSCRIPT OF MOTION HEARING PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on July 27, 2015; Page Numbers: 1-87. Date of Issuance: November 13, 2015. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249. Transcripts may be ordered by submitting the Transcript Order Form. <br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter. <br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. <br><br>Redaction Request due 12/4/2015. Redacted Transcript Deadline set for 12/14/2015. Release of Transcript Restriction set for 2/11/2016.(wz) (Entered: 11/13/2015) |
| 11/11/2015 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA. The Motions Hearing presently scheduled for Friday, November 13, 2015, at 2:00 PM in Courtroom 18 is continued to a date and time to be determined by the Court. SO ORDERED. By Judge Richard J. Leon on 11/11/2015. (jth) (Entered: 11/11/2015) |
| 11/06/2015 | 105 | Supplemental MOTION in Limine *to Admit or Allow Evidence* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Rosales, Adrian) (Entered: 11/06/2015) |
| 11/05/2015 | 104 | MOTION for Use of a Jury Questionnaire *in Empanelling an Anonymous Jury* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Liskamm, Amanda) (Entered: 11/05/2015) |
| 09/28/2015 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 9/28/2015 before Judge Richard J. Leon: Motion Hearing set for 11/13/2015 02:00 PM in Courtroom 18 before Judge Richard J. Leon. Defendant committed; commitment issued. Court Reporter: William Zaremba; Defense Attorney: Eduardo Balarezo and |

| | | |
|---|---|---|
| | | William Purpura, Jr.; US Attorney: Andrea Goldbarg, Amanda Liskamm and Adrian Rosales; Interpreter: Teresa Salazar/Martha Gutierrez-Shepard. (tb) (Entered: 09/28/2015) |
| 09/25/2015 | <u>102</u> | SUPPLEMENT by USA as to ALFREDO BELTRAN LEYVA re <u>67</u> MOTION to Admit Evidence of Other Crimes (Attachments: # <u>1</u> Text of Proposed Order)(Henry, Marcia) (Entered: 09/25/2015) |
| 09/18/2015 | <u>101</u> | TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on May 4, 2015; Page Numbers: 1-22. Date of Issuance: September 18, 2015. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249; Court Reporter Email Address: WilliamPZaremba@gmail.com.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/9/2015. Redacted Transcript Deadline set for 10/19/2015. Release of Transcript Restriction set for 12/17/2015.(wz) (Entered: 09/18/2015) |
| 09/18/2015 | <u>100</u> | TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on February 20, 2015; Page Numbers: 1-58. Date of Issuance: September 18, 2015. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249; Court Reporter Email Address: WilliamPZaremba@gmail.com.<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/9/2015. Redacted Transcript Deadline set for 10/19/2015. Release of Transcript Restriction set for 12/17/2015.(wz) (Entered: 09/18/2015) |

| 09/18/2015 | 99 | TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on January 16, 2015; Page Numbers: 1-68. Date of Issuance: September 18, 2015. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249; Court Reporter Email Address: WilliamPZaremba@gmail.com.

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 10/9/2015. Redacted Transcript Deadline set for 10/19/2015. Release of Transcript Restriction set for 12/17/2015.(wz) (Entered: 09/18/2015) |
| 09/18/2015 | 98 | TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on December 9, 2014; Page Numbers: 1-55. Date of Issuance: September 18, 2015. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249; Court Reporter Email Address: WilliamPZaremba@gmail.com.

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 10/9/2015. Redacted Transcript Deadline set for 10/19/2015. Release of Transcript Restriction set for 12/17/2015.(wz) (Entered: 09/18/2015) |
| 09/18/2015 | 97 | TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS in case as to ALFREDO BELTRAN LEYVA before Judge Richard J. Leon held on November 21, 2014; Page Numbers: 1-23. Date of Issuance: September 18, 2015. Court Reporter/Transcriber: William Zaremba; Telephone number: (202) 354-3249; Court Reporter Email Address: WilliamPZaremba@gmail.com.

For the first 90 days after this filing date, the transcript may be viewed at the |

| | | |
|---|---|---|
| | | courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, PDF or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/9/2015. Redacted Transcript Deadline set for 10/19/2015. Release of Transcript Restriction set for 12/17/2015.(wz) (Entered: 09/18/2015) |
| 09/14/2015 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 9/14/2015 for proceedings held before Judge Richard J. Leon: Brady motions by defendant heard and taken under advisement. Government's ex-parte status report due 30 days from today's hearing. Parties to meet and confer regarding the protective order and file an amended proposed protective order. Status Conference set for 9/28/2015 11:30 AM in Courtroom 18 before Judge Richard J. Leon.Defendant committed; commitment issued. Court Reporter: William Zaremba; Defense Attorney: Eduardo Ballarezo; US Attorney: Andrea Goldbarg, Amanda Liskamm and Adrian Rosales; Interpreter: Teres Salazar/Martha Gutierrez-Shepard. (tb) Modified on 9/15/2015 (tb). (Entered: 09/15/2015) |
| 09/14/2015 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA: Status Conference RESET for 9/14/2015 11:30 AM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED - Judge Richard J. Leon on 09/11/15. (tb) (Entered: 09/14/2015) |
| 09/14/2015 | 96 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 95 MOTION for Release of Brady Materials *(Fourth Motion)* (Liskamm, Amanda) (Entered: 09/14/2015) |
| 09/11/2015 | 95 | MOTION for Release of Brady Materials *(Fourth Motion)* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit)(Balarezo, A.) (Entered: 09/11/2015) |
| 09/11/2015 | 94 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 92 MOTION for Release of Brady Materials (Henry, Marcia) (Entered: 09/11/2015) |
| 09/11/2015 | 93 | NOTICE OF ATTORNEY APPEARANCE: William B. Purpura, Jr appearing for ALFREDO BELTRAN LEYVA (Purpura, William) (Entered: 09/11/2015) |
| 09/09/2015 | 92 | MOTION for Release of Brady Materials by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order, # 2 Pictures)(Balarezo, A.) Modified on 9/10/2015 (hsj). (Entered: 09/09/2015) |
| 09/09/2015 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA: It is hereby ORDERED that the pre-trial conference scheduled for September 14, 2015 at 11:00AM is CONVERTED into a Status Conference and Motion hearing to address pending ex parte motions. SO ORDERED - Judge Richard J. Leon. (tb) (Entered: 09/09/2015) |

| 09/08/2015 | 91 | NOTICE *of Filing - Third Request for Discovery* by ALFREDO BELTRAN LEYVA (Attachments: # 1 Exhibit)(Balarezo, A.) (Entered: 09/08/2015) |
| 08/31/2015 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA: It is hereby ordered that the Pretrial Conference set for Monday, August 31, 2015 has been RESCHEDULED. Pretrial Conference CONTINUED to 9/14/2015 11:00 AM in Courtroom 18 before Judge Richard J. Leon.Jury Trial reset for 9/28/2015 10:00 AM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED - Judge Richard J. Leon on 08/31/15. (tb) (Entered: 08/31/2015) |
| 08/28/2015 | 88 | EXHIBIT LIST by USA as to ALFREDO BELTRAN LEYVA (Henry, Marcia) (Entered: 08/28/2015) |
| 08/28/2015 | 87 | Proposed Jury Instructions by USA as to ALFREDO BELTRAN LEYVA (Henry, Marcia) (Entered: 08/28/2015) |
| 08/28/2015 | 86 | Proposed Voir Dire by USA as to ALFREDO BELTRAN LEYVA (Henry, Marcia) (Entered: 08/28/2015) |
| 07/27/2015 | | Minute Entry: Motion Hearing as to ALFREDO BELTRAN LEYVA held on 7/27/2015 before Judge Richard J. Leon re 67 MOTION to Admit Evidence of Other Crimes filed by USA, 68 MOTION to Admit/Allow Evidence, Cross-Examination and Lead Case Agent at Counsel Table filed by USA, motions heard and taken under advisement. Defendant committed; commitment issued. Court Reporter: William Zaremba Defense Attorney: Eduardo Balarezo; US Attorney: Andrea Goldbarg, Amanda Liskamm, Adrian Rosales; Interpreter: Teresa Salazar. (tb) Modified on 7/28/2015 (tb). (Entered: 07/28/2015) |
| 07/27/2015 | | Set/Reset Hearings as to ALFREDO BELTRAN LEYVA: Motion Hearing RESET for 7/27/2015 03:30 PM in Courtroom 18 before Judge Richard J. Leon. (tb) (Entered: 07/27/2015) |
| 07/25/2015 | 85 | NOTICE *Second Notice Regarding Transaction Logs* by USA as to ALFREDO BELTRAN LEYVA (Henry, Marcia) (Entered: 07/25/2015) |
| 07/22/2015 | | NOTICE OF ERROR re 84 Response to document; emailed to filings@balarezolaw.com, cc'd 5 associated attorneys -- The PDF file you docketed contained errors: 1. Docket Entry 84 Modified to Correct Entry as a Reply to Opposition. Do Not Refile. (zhsj, ) (Entered: 07/22/2015) |
| 07/21/2015 | 84 | REPLY by ALFREDO BELTRAN LEYVA TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE RULE OF SPECIALTY OR ALTERNATIVELY TO LIMIT SCOPE OF CONSPIRACY (Balarezo, A.) Modified on 7/22/2015 (hsj). (Entered: 07/21/2015) |
| 07/20/2015 | 83 | REPLY by ALFREDO BELTRAN LEYVA *TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF VENUE* (Balarezo, A.) (Entered: 07/20/2015) |
| 07/20/2015 | 82 | REPLY by ALFREDO BELTRAN LEYVA *TO GOVERNMENT'S OMNIBUS OPPOSITION* (Balarezo, A.) (Entered: 07/20/2015) |

| 07/20/2015 | 81 | REPLY in Support by USA as to ALFREDO BELTRAN LEYVA re 69 MOTION to Preclude Certain Cross-Examination or Argument By Defense Counsel , 67 MOTION to Admit Evidence of Other Crimes , 68 MOTION to Admit/Allow Evidence, Cross-Examination and Lead Case Agent at Counsel Table (Henry, Marcia) (Entered: 07/20/2015) |
|---|---|---|
| 07/17/2015 | | Set/Reset Deadlines as to ALFREDO BELTRAN LEYVA: Response due by 7/16/2015. (tb) (Entered: 07/17/2015) |
| 07/16/2015 | 80 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 59 MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2)(Rosales, Adrian) (Entered: 07/16/2015) |
| 07/16/2015 | 79 | NOTICE OF ATTORNEY APPEARANCE Marcia M. Henry appearing for USA. (Henry, Marcia) (Entered: 07/16/2015) |
| 07/13/2015 | 78 | Memorandum in Opposition by ALFREDO BELTRAN LEYVA re 67 MOTION to Admit Evidence of Other Crimes (Balarezo, A.) (Entered: 07/13/2015) |
| 07/13/2015 | 77 | Memorandum in Opposition by ALFREDO BELTRAN LEYVA re 68 MOTION to Admit/Allow Evidence, Cross-Examination and Lead Case Agent at Counsel Table (Balarezo, A.) (Entered: 07/13/2015) |
| 07/13/2015 | 76 | Memorandum in Opposition by ALFREDO BELTRAN LEYVA re 69 MOTION to Preclude Certain Cross-Examination or Argument By Defense Counsel (Balarezo, A.) (Entered: 07/13/2015) |
| 07/13/2015 | 75 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 60 MOTION to Dismiss Case *FOR IMPROPER VENUE* (Rosales, Adrian) (Entered: 07/13/2015) |
| 07/13/2015 | 74 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 61 MOTION for Release of Brady Materials , 56 MOTION for Bill of Particulars , 72 MOTION to Compel *Discovery*, 57 MOTION PRE-TRIAL DETERMINATION OF CONSPIRACY , 58 MOTION for Disclosure *OF INFORMANTS* (Liskamm, Amanda) (Entered: 07/13/2015) |
| 07/13/2015 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA: It is hereby ORDERED that 73 the Government's Motion for an Extension of Time to file a Response to Defendant's Motion to Enforce the Rule of Specialty is GRANTED. It is further ORDERED that the Government has up to and including July 16, 2015, to file its Response. It is further ORDERED that Defendant has up to and including July 23, 2015, to file a Reply in Support of 59 Defendant's Motion to Enforce the Rule of Speciality or Alternatively, to Limit Scope of Conspiracy. Signed by Judge Richard J. Leon on 7/13/2015. (jth) (Entered: 07/13/2015) |
| 07/10/2015 | 73 | Consent MOTION for Extension of Time to File Response/Reply by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Rosales, Adrian) (Entered: 07/10/2015) |

| 06/29/2015 | 72 | MOTION to Compel *Discovery* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Balarezo, A.) (Entered: 06/29/2015) |
| --- | --- | --- |
| 06/22/2015 | 71 | ORDER as to ALFREDO BELTRAN LEYVA. Granting Defendant's 53 Consent Motion for Enlargement of Time to file Pre-Trial Motions. Pre-Trial Motions are due by 6/22/2015; Responses are due by 7/13/2015; Replies, if any, are due by 7/20/2015. Signed by Judge Richard J. Leon on 6/22/2015. (jth) (Entered: 06/22/2015) |
| 06/19/2015 | 70 | MOTION for Additional Information by ALFREDO BELTRAN LEYVA. (See docket entry 55 to view document). (hsj) (Entered: 06/22/2015) |
| 06/19/2015 | 69 | MOTION to Preclude Certain Cross-Examination or Argument By Defense Counsel by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Liskamm, Amanda) (Entered: 06/19/2015) |
| 06/19/2015 | 68 | MOTION to Admit/Allow Evidence, Cross-Examination and Lead Case Agent at Counsel Table by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Liskamm, Amanda) (Entered: 06/19/2015) |
| 06/19/2015 | 67 | MOTION to Admit Evidence of Other Crimes by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Liskamm, Amanda) (Entered: 06/19/2015) |
| 06/19/2015 | 66 | MEMORANDUM in Opposition by ALFREDO BELTRAN LEYVA re 64 Emergency MOTION Remove Docket Entry 55 From the Public Docket re 55 Response to document (Balarezo, A.) Modified on 6/22/2015 (hsj). (Entered: 06/19/2015) |
| 06/19/2015 | 65 | ORDER as to ALFREDO BELTRAN LEYVA (1). Upon consideration of the Government's Emergency Motion to Remove Docket Entry 55 from the Public Docket, it is ORDERED that Docket Entry 55 is REMOVED from the public docket; and it is further ORDERED that Docket Entry 55 be temporarily filed under seal until the Court can hold a hearing with counsel to discuss alternative approaches to maintaining the confidentiality of the law enforcement information revealed therein. Signed by Judge Richard J. Leon on 6/19/2015. (jth) (Entered: 06/19/2015) |
| 06/19/2015 | 64 | Emergency MOTION Remove Docket Entry 55 From the Public Docket re 55 Response to document by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Liskamm, Amanda) (Entered: 06/19/2015) |
| 06/19/2015 | 63 | NOTICE *OF FILING - EXHIBITS TO DOC. # 60* by ALFREDO BELTRAN LEYVA re 60 MOTION to Dismiss Case *FOR IMPROPER VENUE* (Attachments: # 1 Exhibit, # 2 Exhibit)(Balarezo, A.) (Entered: 06/19/2015) |
| 06/19/2015 | 62 | NOTICE *OF FILING - EXHIBITS TO DOC. # 59* by ALFREDO BELTRAN LEYVA re 59 MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Balarezo, A.) (Entered: 06/19/2015) |
| 06/19/2015 | 61 | MOTION for Release of Brady Materials by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 06/19/2015) |

| 06/19/2015 | 60 | MOTION to Dismiss Case *FOR IMPROPER VENUE* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 06/19/2015) |
| 06/19/2015 | 59 | MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 06/19/2015) |
| 06/19/2015 | 58 | MOTION for Disclosure *OF INFORMANTS* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 06/19/2015) |
| 06/19/2015 | 57 | MOTION PRE-TRIAL DETERMINATION OF CONSPIRACY by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) Modified on 6/22/2015 (hsj). (Entered: 06/19/2015) |
| 06/19/2015 | 56 | MOTION for Bill of Particulars by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 06/19/2015) |
| 06/19/2015 | 54 | NOTICE *OF FILING - SECOND REQUEST FOR DISCOVERY* by ALFREDO BELTRAN LEYVA (Attachments: # 1 Supplement)(Balarezo, A.) (Entered: 06/19/2015) |
| 06/17/2015 | 53 | Consent MOTION for Extension of Time to *File Pre-Trial Motions* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 06/17/2015) |
| 06/01/2015 | 52 | NOTICE *Regarding Transaction Logs* by USA as to ALFREDO BELTRAN LEYVA (Goldbarg, Andrea) (Entered: 06/01/2015) |
| 05/27/2015 | | MINUTE ORDER: Upon consideration of 40 Defendant Alfredo Beltran Leyva's Motion for Relief from Protective Order, it is hereby ORDERED that Defendant's Motion is DENIED. SO ORDERED - Judge Richard J. Leon on 05/27/15. (tb) (Entered: 05/28/2015) |
| 05/27/2015 | 51 | PROTECTIVE ORDER RE: 47 Motion for Protective Order as to ALFREDO BELTRAN LEYVA (1), setting forth procedures for handling confidential material; allowing designated material to be filed under seal. Signed by Judge Richard J. Leon on 05/26/15. (tb) (Entered: 05/27/2015) |
| 05/18/2015 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 5/18/2015 before Judge Richard J. Leon: Motions due by 6/19/2015. Responses due by 7/10/2015, Replies due by 7/17/2015. Motion Hearing set for 7/27/2015 02:30 PM in Courtroom 18 before Judge Richard J. Leon. The Courts ordered government counsel to inform defense counsel of pages of the transaction log that relates to the defendant by 06/01/15.Defendant committed; commitment issued. Court Reporter: Janice Dickman Defense Attorney: A. Eduardo Balarezo; US Attorney: Andrea Goldbarg and Adrian Rosales. (tb, ) (Entered: 05/19/2015) |
| 05/04/2015 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 5/4/2015 before Judge Richard J. Leon: The government shall disclose to defense counsel the name of person(s) responsible for preparing the ledgers to be use at trial. Status Conference set for 5/18/2015 03:00 PM in Courtroom 18 before Judge Richard |

| | | |
|---|---|---|
| | | J. Leon. The Court finds in the interest of justice (XT) that the time between 05/04/15 and 05/18/15 shall be excluded from the speedy trial calculation. Defendant committed; commitment issued; Court Reporter: Bill Zaremba Defense Attorney: A. Eduardo Ballerezo; US Attorney: Amanda Liskamm, Andrea Goldbarg, Adrian Rosales. Interpreter: Teresa Salazar. (tb, ) Modified on 5/4/2015 (tb, ). (Entered: 05/04/2015) |
| 05/01/2015 | | MINUTE ORDER: It is hereby ORDERED that <u>50</u> Defendant's Consent Motion to Continue Status Hearing is DENIED. It is further ORDERED that the status conference shall proceed as scheduled on May 4, 2015 at 11:30AM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED - Judge Richard J. Leon on 05/01/15. (tb, ) (Entered: 05/01/2015) |
| 04/26/2015 | <u>50</u> | Consent MOTION to Continue *Status Hearing* by ALFREDO BELTRAN LEYVA. (Attachments: # <u>1</u> Text of Proposed Order)(Balarezo, A.) (Entered: 04/26/2015) |
| 04/13/2015 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 4/13/2015 before Judge Richard J. Leon: Status Conference set for 5/4/2015 11:30 AM in Courtroom 18 before Judge Richard J. Leon. Government shall notify the Court if it intends to use ledgers by 5/4/2015. The government shall submit to the Court it's exhibit list, proposed voir dire, and proposed jury instructions by 8/28/2015. Pretrial Conference set for 8/31/2015 03:00 PM in Courtroom 18 before Judge Richard J. Leon. Jury Trial set for 9/14/2015 10:00 AM in Courtroom 18 before Judge Richard J. Leon. The Court finds in the interest of justice (XT) that the time between 04/13/15 and 05/04/15 shall be excluded from the speedy trial calculation. Defendant committed; commitment issued. Court Reporter: Bill Zaremba; Defense Attorney: A. Eduardo Ballarezo; US Attorney: Amanda Liskamm, Andrea Goldberg and Adrian Rosales; Interpreter: Teresa Roman. (tb, ) Modified on 4/13/2015 (tb, ). (Entered: 04/13/2015) |
| 03/16/2015 | <u>49</u> | REPLY TO OPPOSITION by USA as to ALFREDO BELTRAN LEYVA re <u>47</u> MOTION for Protective Order *Modified* (Liskamm, Amanda) (Entered: 03/16/2015) |
| 03/13/2015 | | Minute Entry for proceedings held before Judge Richard J. Leon: Status Conference as to ALFREDO BELTRAN LEYVA held on 3/13/2015. An Ex Parte Status Conference with only the Defendant and his Attorney is scheduled for 3/17/2015 at 4:00 PM in Courtroom 18 before Judge Richard J. Leon. Another Status Conference with all parties is scheduled for 4/13/2015 at 11:30 AM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: William Zaremba; Defense Attorney: A. Eduardo Balarezo; US AttorneyS: Amanda Liskamm and Andrea Goldbarg. Interpreter: Teresa Salazar. (jth) (Entered: 03/16/2015) |
| 03/12/2015 | <u>48</u> | Memorandum in Opposition by ALFREDO BELTRAN LEYVA re <u>47</u> MOTION for Protective Order *Modified* (Balarezo, A.) (Entered: 03/12/2015) |
| 03/12/2015 | <u>47</u> | MOTION for Protective Order *Modified* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # <u>1</u> Text of Proposed Order)(Goldbarg, Andrea) (Entered: 03/12/2015) |

| 02/20/2015 | 44 | ORDER as to ALFREDO BELTRAN LEYVA, Granting USA's 43 Motion for Leave to File Supplement Ex Parte and Under Seal. The Government may file its Notice under seal and ex parte. Signed by Judge Richard J. Leon on 02/20/2015. (jth) (Entered: 02/20/2015) |
|---|---|---|
| 02/20/2015 | | Minute Entry for proceedings held before Judge Richard J. Leon: Status Conference as to ALFREDO BELTRAN LEYVA held on 2/20/2015. Another Status Conference is set for 3/13/2015 at 11:30 AM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: Defendant Committed/Commitment Issued; Court Reporter: William Zaremba; Defense Attorney: A. Eduardo Ballarezo; US Attorneys: Amanda Liskamm and Andrea Goldberg; Interpreters: Teresa Roman and Teresa Salazar. (jth) (Entered: 02/20/2015) |
| 02/20/2015 | 43 | MOTION for Leave to File *Supplement Ex Parte and Under Seal* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order) (Liskamm, Amanda) (Entered: 02/20/2015) |
| 02/20/2015 | 42 | REPLY by ALFREDO BELTRAN LEYVA *to Government's Opposition to Defendant's Motion for Relief from Protective Order* (Balarezo, A.) (Entered: 02/20/2015) |
| 02/19/2015 | 41 | Memorandum in Opposition by USA as to ALFREDO BELTRAN LEYVA re 40 MOTION Relief from Protective Order (Liskamm, Amanda) (Entered: 02/19/2015) |
| 02/11/2015 | 40 | MOTION Relief from Protective Order by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 02/11/2015) |
| 02/09/2015 | 39 | ORDER granting 38 Motion to Withdraw Defendant's Motion to Compel Disclosure of Brady Evidence (Doc. No. 33) with leave to re-file at a later date as to ALFREDO BELTRAN LEYVA (1). Signed by Judge Richard J. Leon on 2/8/15. (gdf) (Entered: 02/09/2015) |
| 02/06/2015 | 38 | MOTION to Withdraw Document 33 MOTION to Compel *Disclosure of Brady Evidence* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 02/06/2015) |
| 01/30/2015 | 37 | RESPONSE by USA as to ALFREDO BELTRAN LEYVA re 33 MOTION to Compel *Disclosure of Brady Evidence* (Attachments: # 1 Text of Proposed Order)(Goldbarg, Andrea) (Entered: 01/30/2015) |
| 01/29/2015 | 36 | NOTICE OF ATTORNEY APPEARANCE Adrian Rosales appearing for USA. (Rosales, Adrian) (Entered: 01/29/2015) |
| 01/20/2015 | 35 | PROTECTIVE ORDER as to ALFREDO BELTRAN LEYVA setting forth procedures for handling confidential material; allowing designated material to be filed under seal. Signed by Judge Richard J. Leon on 01/20/15. (tb, ) (Entered: 01/20/2015) |
| 01/16/2015 | | Minute Entry for proceedings held before Judge Richard J. Leon: Status Conference as to ALFREDO BELTRAN LEYVA held on 1/16/2015. The Government's Response to Defendant's 33 Motion to Compel Disclosure of Brady Evidence is due by 1/30/2015; Defendant's Reply is due by 2/6/2015. Another Status Conference is scheduled for 2/20/2015 at 2:30 PM in Courtroom 18 before Judge Richard J. Leon. Bond Status of |

| | | |
|---|---|---|
| | | Defendant: Defendant Committed/Commitment Issued; Court Reporter: William Zaremba; Defense Attorney: A. Eduardo Balarezo; US Attorney: Andrea Goldbarg; Interpreter: Angeles Estrada. (jth) (Entered: 01/16/2015) |
| 01/14/2015 | 34 | NOTICE *OF FILING - MEMBERS OF DEFENSE TEAM* by ALFREDO BELTRAN LEYVA (Balarezo, A.) (Entered: 01/14/2015) |
| 01/14/2015 | | NOTICE OF ERROR re 30 Motion for Protective Order ; emailed to amanda.liskamm@usdoj.gov, cc'd 3 associated attorneys -- The PDF file you docketed contained errors: 1. Docket Entry 30 Modified to Correct Title of Document. Do Not Refle. (zhsj, ) (Entered: 01/14/2015) |
| 01/14/2015 | 33 | WITHDRAWN PURSUANT TO ORDER FILED 2/9/15.....MOTION to Compel *Disclosure of Brady Evidence* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit)(Balarezo, A.) Modified on 2/9/2015 (zgdf, ). (Entered: 01/14/2015) |
| 01/14/2015 | 32 | MOTION to Compel *Production of Discovery* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 01/14/2015) |
| 01/14/2015 | 31 | Memorandum in Opposition by ALFREDO BELTRAN LEYVA re 30 Third MOTION for Protective Order *for Discovery* (Balarezo, A.) (Entered: 01/14/2015) |
| 01/13/2015 | 30 | THIRD SUPPLEMENTAL MOTION for Protective Order *for Discovery* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order) (Liskamm, Amanda) Modified on 1/14/2015 (hsj, ). (Entered: 01/13/2015) |
| 12/27/2014 | 29 | Memorandum in Opposition by ALFREDO BELTRAN LEYVA re 25 MOTION for Protective Order *as to Discovery Documents* (Balarezo, A.) (Entered: 12/27/2014) |
| 12/27/2014 | 28 | NOTICE *of Filing - Mexican Attorney Credentials* by ALFREDO BELTRAN LEYVA (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Balarezo, A.) (Entered: 12/27/2014) |
| 12/23/2014 | | Minute Entry for proceedings held before Judge Richard J. Leon:Status Conference as to ALFREDO BELTRAN LEYVA held on 12/23/2014. Status Conference set for 1/16/2015 at 11:30 AM in Courtroom 18 before Judge Richard J. Leon. Bond Status of Defendant: COMMITTED/COMMITMENT ISSUED; Court Reporter: BARABAR DEVICO Defense Attorney: EDUARDO BALAREZO; US Attorney: ANDREA GOLDBARG/AMANDA LISKAMM; Interpreter: TERESA SALAZAR; (mac) (Entered: 12/23/2014) |
| 12/12/2014 | 27 | Second MOTION for Protective Order *for Discovery* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Goldbarg, Andrea) (Entered: 12/12/2014) |
| 12/09/2014 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 12/9/2014 before Judge Richard J. Leon: Government will provide to defendant non-protective discovery material by noon on 12/10/2014. Parties to file Joint Proposed Protective Order in a couple days of today's hearing. Status Conference set for 12/23/2014 02:30 PM in Courtroom 18 before Judge Richard J. Leon. Defendant committed; commitment issued. Court Reporter: Bill Zaremba Defense Attorney: A. |

| | | |
|---|---|---|
| | | Eduardo Balarezo; US Attorney: Amanda Liskamm/Andrea Goldbarg; Interpreter: Teresa Salazar. (tb, ) (Entered: 12/10/2014) |
| 12/08/2014 | 26 | Memorandum in Opposition by ALFREDO BELTRAN LEYVA re 25 MOTION for Protective Order *as to Discovery Documents* (Attachments: # 1 Exhibit, # 2 Exhibit) (Balarezo, A.) (Entered: 12/08/2014) |
| 12/08/2014 | 25 | MOTION for Protective Order *as to Discovery Documents* by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Goldbarg, Andrea) (Entered: 12/08/2014) |
| 12/06/2014 | 23 | Memorandum in Opposition by ALFREDO BELTRAN LEYVA re 21 MOTION FOR A COMPLEX CASE DESIGNATION, 19 MOTION to Exclude *Time under the Speedy Trial Act and for Complex Case Designation* (Balarezo, A.) (Entered: 12/06/2014) |
| 12/04/2014 | | NOTICE OF ERROR re 22 Reply to document; emailed to filings@balarezolaw.com, cc'd 3 associated attorneys -- The PDF file you docketed contained errors: 1. Docket Entry 22 Modified to Correct Title of Pleading. Do Not Refile. (zhsj, ) (Entered: 12/04/2014) |
| 12/01/2014 | 20 | NOTICE *of Filing - First Request for Discovery* by ALFREDO BELTRAN LEYVA (Attachments: # 1 Exhibit)(Balarezo, A.) (Entered: 12/01/2014) |
| 11/28/2014 | 21 | MOTION for a Complex Case Designation by USA as to ALFREDO BELTRAN LEYVA. (See Docket Entry 19 to View Document.) (hsj, ) (Entered: 12/01/2014) |
| 11/28/2014 | 19 | MOTION to Exclude *Time under the Speedy Trial Act and for Complex Case Designation* by USA as to ALFREDO BELTRAN LEYVA. (Liskamm, Amanda) (Entered: 11/28/2014) |
| 11/25/2014 | | MINUTE ORDER granting 18 Motion to Withdraw as Counsel of Record. It is hereby ORDERED that Attorney David S. Zapp's appearance in this matter is terminated. Signed by Judge Richard J. Leon on 11/25/2014. (lcrjl2, ) (Entered: 11/25/2014) |
| 11/21/2014 | | Minute Entry: Status Conference as to ALFREDO BELTRAN LEYVA held on 11/21/2014 before Judge Richard J. Leon: Attorney Victor Rocha moved orally to withdraw as counsel for defendant; heard and GRANTED. Defendant's brief regarding the motion to transfer case due by 12/3/2014. Status Conference set for 12/9/2014 11:30 AM in Courtroom 18 before Judge Richard J. Leon. Oral motion by defendant to be detained; heard and GRANTED. Order forthcoming regarding attorney Juan Mondragon visits to defendant at DC Jail; Defendant committed; commitment issued. Court Reporter: Bill Zaremba; Interpreter: Angeles Estrada;Defense Attorney: A. Eduardo Ballerezo/Victor Rocha; US Attorney: Amanda Liskamm. (tb, ) (Entered: 11/24/2014) |
| 11/21/2014 | 18 | MOTION to Withdraw as Attorney by David Zapp. by ALFREDO BELTRAN LEYVA. (Zapp, David) (Entered: 11/21/2014) |
| 11/20/2014 | 17 | MOTION to Strike *Appearances of Attorneys David Zapp and Victor Rocha* by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit, # 3 Exhibit)(Balarezo, A.) (Entered: 11/20/2014) |

| 11/19/2014 | 16 | MOTION Authorization for Legal Visit With Foreign Attorneys by ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order)(Balarezo, A.) (Entered: 11/19/2014) |
| --- | --- | --- |
| 11/19/2014 | | NOTICE OF ERROR re 13 Notice of Attorney Appearance - Defendant; emailed to Evette_Saunders@dcd.uscourts.gov, amanda.liskamm@usdoj.gov,, cc'd 7 associated attorneys -- The PDF file you docketed contained errors: 1. Docket Entry 13 was inadvertently entered. Docket Entry 12 is the correct document. (zhsj, ) (Entered: 11/19/2014) |
| 11/19/2014 | 15 | NOTICE OF ATTORNEY APPEARANCE: Victor E. Rocha appearing for ALFREDO BELTRAN LEYVA (Rocha, Victor) (Entered: 11/19/2014) |
| 11/18/2014 | 14 | NOTICE of Change of Address by David S. Zapp (Zapp, David) (Entered: 11/18/2014) |
| 11/18/2014 | | MINUTE ORDER as to ALFREDO BELTRAN LEYVA : Status Conference regarding counsel of record for the defendant set for 11/21/2014 11:00 AM in Courtroom 18 before Judge Richard J. Leon. SO ORDERED - Richard J. Leon on 11/18/14. (tb, ) (Entered: 11/18/2014) |
| 11/18/2014 | 11 | NOTICE OF ATTORNEY APPEARANCE: A. Eduardo Balarezo appearing for ALFREDO BELTRAN LEYVA (Balarezo, A.) (Entered: 11/18/2014) |
| 11/17/2014 | 13 | ENTERED IN ERROR.....NOTICE OF ATTORNEY APPEARANCE: David S. Zapp appearing for ALFREDO BELTRAN LEYVA. (hsj, ) Modified on 11/19/2014 (zhsj, ). (Entered: 11/18/2014) |
| 11/17/2014 | 12 | NOTICE OF ATTORNEY APPEARANCE : David S. Zapp appearing for Defendant ALFREDO BELTRAN LEYVA. (kk) (Entered: 11/18/2014) |
| 11/17/2014 | | Minute Entry for Initial Appearance and Arraignment as to ALFREDO BELTRAN LEYVA held before Magistrate Judge Alan Kay on 11/17/14 : Assistant Federal Public Defender, Shawn Moore, standing in for this hearing only. Plea of Not Guilty entered by ALFREDO BELTRAN LEYVA to Count 1. A detainer has been lodged against the defendant. Hearing on Government's Motion for Pretrial Detention 7 set for 11/21/14 at 1:45 PM in Courtroom 7 before Magistrate Judge Alan Kay. Bond Status of Defendant: Defendant Held Without Bond. Defendant committed/commitment issued. Court Reporter: Bowles Reporting Service - Ctrm. 7; FTR Time Frame: 2:33:39 - 2:47:29. Defense Attorney: Shawn Moore (standing in for this hearing only); DOJ Attorneys: Andrea Goldbarg and Amanda Liskamm; Pretrial Officer: Jeremy Schumacher; Spanish Interpreter: Jaime de Castellvi'. (kk) (Entered: 11/17/2014) |
| 11/17/2014 | 10 | Arrest Warrant, dated 8/24/12, returned executed on 11/17/14 as to ALFREDO BELTRAN LEYVA. (kk) (Entered: 11/17/2014) |
| 11/17/2014 | | Arrest of ALFREDO BELTRAN LEYVA. (kk) (Entered: 11/17/2014) |
| 11/17/2014 | 9 | Case as to ALFREDO BELTRAN LEYVA reassigned to Judge Richard J. Leon as defendant is no longer a fugitive. Calendar Committee no longer assigned to the case. (ztnr, ) (Entered: 11/17/2014) |

| 11/17/2014 | 8 | NOTICE OF ATTORNEY APPEARANCE Amanda Nunn Liskamm appearing for USA. (Liskamm, Amanda) (Entered: 11/17/2014) |
| 11/17/2014 | 7 | MOTION for Temporary Detention *Pending Trial Pursuant to 18 U.S.C. § 3142(e)(1),* *with attached proposed order, by USA as to ALFREDO BELTRAN LEYVA. (Goldbarg,* *Andrea) Modified on 11/17/2014 (mlp) (Entered: 11/17/2014)* |
| 11/17/2014 | | Case unsealed as specified pursuant to minute order dated 11/14/14 as to ALFREDO BELTRAN LEYVA. (ztnr, ) (Entered: 11/17/2014) |
| 11/14/2014 | 6 | SUPPLEMENT by USA as to ALFREDO BELTRAN LEYVA re 5 MOTION to Unseal Case. (zhsj, ) (Entered: 11/14/2014) |
| 11/14/2014 | 5 | MOTION to Unseal Case by USA as to ALFREDO BELTRAN LEYVA. (zhsj, ) (Entered: 11/14/2014) |
| 12/12/2012 | 3 | Case as to ALFREDO BELTRAN LEYVA reassigned to Calendar Committee. Judge Richard J. Leon no longer assigned to the case. (ds) (Entered: 12/12/2012) |
| 08/24/2012 | 2 | MOTION to Seal by USA as to ALFREDO BELTRAN LEYVA. (Attachments: # 1 Text of Proposed Order) (zhsj, ) (Entered: 08/28/2012) |
| 08/24/2012 | 1 | INDICTMENT as to ALFREDO BELTRAN LEYVA (1) count(s) 1. (CRIMINAL FORFEITURE ALLEGATION) (zhsj, ) (Entered: 08/28/2012) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/22/2017 14:43:18 | | | |
| PACER Login: | Kh0377:2670057:0 | Client Code: | beltran |
| Description: | Docket Report | Search Criteria: | 1:12-cr-00184-RJL |
| Billable Pages: | 25 | Cost: | 2.50 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn on May 16, 2011

| | |
|---|---|
| UNITED STATES OF AMERICA | )  CRIMINAL NO. _____ |
| | )  |
| | )  UNDER SEAL |
| v. | )  |
| | )  21 U.S.C. §§ 959, 960, 963 |
| | )  (Conspiracy to Distribute Five |
| ALFREDO BELTRAN LEYVA, | )  Kilograms or More of Cocaine, |
| also known as "Mochomo," | )  Fifty Grams or More of |
| | )  Methamphetamine, One |
| Defendant. | )  Kilogram or More of Heroin and |
| | )  One Thousand Kilograms or |
| | )  More of Marijuana for |
| | )  Importation into the |
| | )  United States) |
| | )  |
| | )  21 U.S.C. § 853 |
| | )  21 U.S.C. § 970 |
| | )  (Criminal Forfeiture) |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

## COUNT ONE

From in or about January 2000, and continuing thereafter, up to and including the date of
the filing of this Indictment, both dates being approximate and inclusive, in the countries of
Mexico, the United States, and elsewhere, the defendant, **ALFREDO BELTRAN LEYVA, also
known as "Mochomo,"** with others both known and unknown to the Grand Jury, did knowingly,
intentionally and willfully conspire to commit offenses against the United States, to wit: (1) to

Case 1:12-cr-00184-RJL   Document 1   Filed 08/24/12   Page 2 of 4

knowingly and intentionally distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; (2) to knowingly and intentionally distribute 50 grams or more of methamphetamine, a Schedule II controlled substance; (3) to knowingly and intentionally distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance; and (4) to knowing and intentionally distribute 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, knowing and intending that said controlled substances would be unlawfully imported into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 959(a) and 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G) and 960(b)(1)(H); all in violation of Title 21, United States Code, Section 963.

> (Conspiracy to distribute 5 kilograms or more of cocaine, 50 grams or more of methamphetamine, 1 kilogram or more of heroin and 1,000 kilograms or more of marijuana for importation into the United States in violation of Title 21, United States Code, Sections 959, 960 and 963)

## CRIMINAL FORFEITURE ALLEGATION

The United States hereby gives notice to the defendant that upon conviction of the Title 21 offense alleged in Count One of this Indictment, the government will seek forfeiture in accordance with Title 21, United States Code, Sections 853 and 970, of all property constituting or derived from any proceeds the defendant obtained directly or indirectly as a result of the alleged Title 21 violation, and all property used or intended to be used in any manner or part to commit and to facilitate the commission of such offense.

2

037

Said property includes, but is not limited to:

A sum of money equal to all proceeds the defendant obtained directly or indirectly as a result of the Title 21 offense charged in this indictment, and all property used or intended to be used to facilitate such offense, that is, not less than a sum of money representing the amount of funds involved in the offense, and all interest and proceeds traceable thereto; in that such sum, in aggregate, was received by the defendant in exchange for the distribution of controlled substances or is traceable thereto. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

       (a)    cannot be located upon the exercise of due diligence;

       (b)    has been transferred or sold to, or deposited with, a third person;

       (c)    has been placed beyond the jurisdiction of the Court;

       (d)    has been substantially diminished in value; or

       (e)    has been commingled with other property which cannot be subdivided without difficulty;

3

Case 1:12-cr-00184-RJL   Document 1   Filed 08/24/12   Page 4 of 4

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to

seek forfeiture of any other property of the said defendant up to the value of the above forfeitable

property.

      (Criminal Forfeiture, in violation of Title 21, Untied States Code, Sections 853
      and 970.)

                        A True Bill.

                        _____

                        Foreperson

Arthur G. Wyatt
Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
Washington, D.C.  20530

By:

Andrea Goldbarg
Assistant Deputy Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20530
Andrea.Goldbarg@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

ALFREDO BELTRAN LEYVA,

Defendant.

CRIMINAL NO. 12-CR-184 (RJL)

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

### I.    Introduction

The Government respectfully submits this Memorandum in Aid of Sentencing in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines Manual, § 6A1.2 (U.S. Sentencing Comm'n 2015). The Government seeks a sentence that is sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a), and for the reasons set forth below believes a Guidelines sentence is reasonable. Sentencing is scheduled for June 6, 2016 at 2:30 p.m.

### II.    Background

#### A.    Procedural History

On August 24, 2012, a federal grand jury returned an Indictment charging the Defendant Alfredo Beltran Leyva, also known as "Mochomo" (the "Defendant"), with conspiracy to distribute five kilograms or more of cocaine, fifty grams or more of methamphetamine, one kilogram or more of heroin and one thousand kilograms or more of marijuana for importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), 960(b)(1)(H) and

963 (hereinafter the "Indictment"). The charged conspiracy occurred between January 2000 and August 2012. The Indictment also carries a criminal forfeiture allegation pursuant to 21 U.S.C. §§ 853 and 970.

On January 21, 2008, the Defendant was arrested by Mexican authorities pursuant to a Mexican investigation, which was not related to the instant case. On November 27, 2013, the Government of Mexico ("GOM") granted the Defendant's extradition to the United States on the sole count of the Indictment as it related to a cocaine and methamphetamine distribution conspiracy,[1] without limitation as to the time frame of the conspiracy, and denied the Defendant's extradition as to the conspiracy relating to the trafficking of marijuana and heroin.

On the event of trial, on February 23, 2016, the Defendant pleaded guilty to the Indictment related to cocaine and methamphetamine, without a written plea agreement.

    B.    The Defendant's Criminal Conduct

        1.    **Relevant Conduct in the Presentence Investigation Report**

The U.S. Probation Department ("Probation") prepared a Presentence Investigation Report dated April 29, 2016 (the "PSR"), which sets forth the following criminal conduct.

Between approximately January 2000 and August 2014, the Defendant and his brothers Arturo Beltran Leyva ("Arturo") and Hector Beltran Leyva ("Hector") were the leaders of the Beltran Leyva drug trafficking organization ("DTO"), which was based in Sinaloa, Mexico. PSR ¶ 7. The DTO had an ongoing relationship with the Sinaloa Cartel, an organized crime syndicate, since the 1990s. PSR ¶ 8.

During and in furtherance of the conspiracy, the DTO, beginning in or before January 2000, directed a large-scale narcotics transportation network involving the use of land, air and sea

---

[1]    On February 23, 2016, the Court dismissed the portions of the Indictment related to marijuana and heroin because the GOM did not grant the Defendant's extradition as to those drugs.

2

transportation, which was responsible for the shipment of multi-ton quantities of cocaine from South America, through Central America and Mexico, and eventually into the United States. PSR ¶ 8. The DTO facilitated its cocaine shipments through a network of corrupt law enforcement and political contacts located in Mexico and other countries. PSR ¶ 8. In addition to his responsibilities with respect to cocaine shipments, the Defendant was also responsible for the production and trafficking of methamphetamine from Mexico, with an individual named "Chapo Isidro." PSR ¶ 8. During the course of the investigation, some of the loads of narcotics were seized in Mexico, other foreign countries, and in the United States. PSR ¶ 8.

The DTO also employed "sicarios," or hitmen, who were responsible for multiple acts of violence, including murders, kidnappings, tortures, and violent collection of drug debts, at the direction of the DTO. PSR ¶ 9. The members of the Beltran Leyva DTO carried weapons and firearms with them for protection from rival cartels as well as from arrest by law enforcement. PSR ¶ 9. Within the DTO and in the course of doing business, bribes were paid to all levels of police and military personnel, which included state police, the prosecutor's office, and the Governor of State. PSR ¶ 9.

As a result of his conduct during and in furtherance of the conspiracy, the Defendant is accountable for over 450 kilograms of cocaine and over 50 kilograms of methamphetamine. PSR ¶ 11.

### 2.    Proffered Evidence

In addition to the information contained in the PSR as described above, the Government also relies on evidence proffered in the Government's Motion in Limine to Admit or Allow Evidence, Cross Examination and Lead Case Agent at Counsel Table, Docket Entry No. 68 (the "Gov't Mot. to Admit"), the Government's Motion in Limine to Introduce Other Crimes Evidence

3

at Trial, Docket Entry No. 67 (the "Gov't Mot. Other Crimes"), and the evidence proffered during the pre-trial hearings held on February 8 and 9, 2016, which the Government believes supports its position for a Guidelines sentence.[2]

### III.   Applicable Sentencing Law

The United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") still provide strong guidance to the Court in light of United States v. Booker, 543 U.S. 220 (2005). Although Booker held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. Booker, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" - that "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 39 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the applicable Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing

---

[2]      The Government believes that an evidentiary hearing is unnecessary in this case based on the facts before the Court. Nonetheless, the Government is prepared to call an agent to testify as to the proffered statements of these witnesses should the Court find that more evidence is needed at the sentencing hearing. The Federal Rules of Evidence do not apply at sentencing, and therefore, the sentencing court can consider the testimony of an agent as to statements made by witnesses. See Fed. R. Evid. 1103(d)(3) (noting the FRE do not apply to sentencing proceedings); see also United States v. Bras, 483 F.3d 103, 108, 376 U.S. App. D.C. 1, 6 (D.C. Cir. 2007) (affirming the court's consideration of reliable hearsay testimony in a drug conspiracy prosecution). The Sentencing Guidelines also provide that the Federal Rules of Evidence are inapplicable at sentencing. See U.S. Sentencing Guidelines Manual § 6A1.3(a) (U.S. Sentencing Comm'n 2015) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information ... which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). Gall, 552 U.S. at 50.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," Rita v. United States, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," Gall, 552 U.S. at 46. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 51.

A court should use the version of the Guidelines Manual in effect at the time of sentencing unless retroactive application of that version would result in a more severe penalty than would result from applying the version in effect at the time of the offense. Peugh v. United States, 133 S. Ct. 2072, 2078, 2082-83 (2013) (recognizing an ex post facto violation when a defendant is sentenced under Guidelines providing a higher range than the Guidelines in effect at the time of the offense).

## IV.    A Guidelines Sentence is Appropriate

### A.    The PSR's Guidelines Calculation is Accurate

As set forth below, the Government concurs with the Probation Department and submits that a Guidelines sentence is reasonable and appropriate in this case.

The Probation Department correctly calculated a base offense level of 38, finding the Defendant accountable for over 450 kilograms of cocaine and at least 50 grams of methamphetamine, pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(1). PSR ¶¶ 11, 23.[3]

The Probation Department further applied a four-level adjustment for a managerial or supervisory role in the offense, pursuant to U.S.S.G. § 3B1.1(a), because the Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. PSR ¶¶ 16, 30.

In addition, the Probation Department applied four offense-specific sentencing enhancements for the defendant's conduct during and in furtherance of the conspiracy. First, a two-level enhancement was added, pursuant to U.S.S.G. § 2D1.1(b)(1), because the defendant possessed a dangerous weapon. PSR ¶ 25. Second, a two-level enhancement was added, pursuant

---

[3]    The base offense level was derived from converting the amounts of cocaine and methamphetamine attributable to the Defendant to their marijuana equivalent, or approximately 9,100 kilograms of marijuana. PSR ¶¶ 23-24.

6

to U.S.S.G. § 2D1.1(b)(2), because the defendant used violence, made a credible threat to use violence and/or directed the use of violence. PSR ¶ 26. Third, a two-level enhancement was added, pursuant to U.S.S.G. § 2D1.1(b)(11), because the defendant bribed, or attempted to bribe, one or more law enforcement officers to facilitate the commission of the offense. PSR ¶ 27. Fourth, a two-level enhancement was added, pursuant to U.S.S.G. § 2D1.1(b)(15)(C), because the defendant's conduct warrants an adjustment under U.S.S.G. § 3B1.1 and because the defendant was directly involved in the importation of a controlled substance. PSR ¶ 28.

Finally, the PSR applied a three-level offense level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). PSR ¶¶ 34-35.

Based on the foregoing, the Defendant's Adjusted Offense Level is calculated at level 48 but is treated as a level 43, resulting in an adjusted Guidelines sentencing range of life imprisonment. PSR ¶¶ 36, 72.[4]

B.    The Defendant's Objections to the PSR Should be Overruled

The Defendant objects to the managerial/leadership role designation in paragraph 16 of the PSR and to the four offense-specific sentencing enhancements in paragraphs 25-28 of the PSR. See Def. PSR Obj. at 1-2. The Defendant does not and cannot offer any evidence to refute the veracity of the substantial and significant evidence regarding his role and responsibilities of his drug trafficking organization detailed in the PSR. Therefore, the Court should uphold the Probation Department's findings.

---

[4]    The Government notes that the Probation Department did not include the offense-specific enhancements pursuant to U.S.S.G. § 2D1.1(b)(3) (use of an aircraft) and (b)(12) (use of premises for manufacturing and distribution), each of which would have added two levels to the Adjusted Offense Level. However, the PSR and the evidence proffered above establishes that the Defendant and his DTO used aircraft to import controlled substances, that the Defendant maintained laboratories for the purpose of producing methamphetamine, and that the Defendant warehoused the tons of cocaine that were eventually sent to the United States. The Government did not file an objection to the PSR regarding the exclusion of these enhancements because the Defendant's Adjusted Offense Level was well above 43, thus making the issue moot. However, the Court should take these enhancements into consideration when determining the Defendant's sentence under 18 U.S.C. § 3553(a).

## 1.   The Defendant Was a Leader and Organizer in the Conspiracy

Section 3B1.1 of the Sentencing Guidelines provides that the sentencing court should increase a defendant's offense level by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).  As described in the comments to the Guidelines, to qualify for an adjustment under this section, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."  § 3B1.1(a) app. note 2.  "Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."  § 3B1.1(a) app. note 4.

Courts within this Circuit have often cited the factors identified in Application Note 4, particularly emphasizing that "[t]he exercise of decision making authority, recruitment, and a claimed right to a larger share of the proceeds are prominent among the factors that the commentary to the Guidelines indicates should be considered." United States v. Wilson, 240 F.3d 39, 46-47 (D.C. Cir. 2001) (declining to engage in an "exegesis of the concept of control" and instead emphasizing decision-making authority, recruitment and claim over larger share of proceeds); United States v. Brodie, 524 F.3d 259, 270 (D.C. Cir. 2008).  For instance, in United States v. Brodie, the District of Columbia Circuit placed particular emphasis on the fact that the defendant "recruited individuals with specialized skills to facilitate his scheme, ... coordinated the group's efforts and directed them in the performance of their respective tasks, ... [and] paid the other participants flat fees for their services ... [while keeping] the 'fruits of the crime' for himself," when upholding the District Court's determination on the issue of leadership. Brodie,

8

524 F.3d at 270.

Here, there is ample evidence to support the PSR's factual findings for a four-level role adjustment. As described in the PSR, the Government's previously filed motions and in the proffered testimony of the Government's witnesses at the pre-trial hearings, the Defendant was one of the organizers and leaders of the Beltran Leyva DTO, a sophisticated and extensive international drug trafficking organization comprised of hundreds of individuals. Indeed, the Defendant even supervised two groups of a hundred men each who were in charge of the Defendant's security. See Gov't Mot. Other Crimes at 5. The Defendant's DTO trafficked massive quantities of cocaine from Colombia to Mexico and eventually the United States through various locations, and the Defendant, along with his brothers, supervised hundreds of people to ensure that this process ran smoothly. See Gov't Mot. Other Crimes at 2–3; See also Transcript of Pre-trial Hearing held on February 9, 2016[5] ("PTH") at 19–23, 36. Additionally, the extensive nature and scope of the Defendant's organization, as well as his responsibilities within the organization, warrant the four-level leadership enhancement. See U.S.S.G. § 3B1.1(a) (stating that the criminal activity must have "involved five or more participants or [been] otherwise extensive"). The Defendant's DTO operated a complex transportation system that relied on planes, maritime assets, trucks, landing strips, and warehouse storage facilities across two continents. See Gov't Mot. Other Crimes at 3. The Defendant's role within the organization was to manage the operations of getting these drugs from Mexico to the United States. In this capacity, the Defendant was responsible for supervising dozens and dozens of individuals involved in the distribution of narcotics. Indeed, for decades, the Defendant and his DTO successfully trafficked tonnage quantities of cocaine from Colombia to Mexico that were then transported into the U.S. for further

---

[5]    The Transcripts for these hearings are under seal.

9

distribution. Id.

Aside from his overall responsibilities in the DTO, the Defendant also served as the DTO's plaza boss in the city of Culiacan, located in the state of Sinaloa, Mexico. As the plaza boss, he controlled and managed all aspects of the DTO's drug trade including: (1) oversight of all of the DTO's drugs that were brought in and out of the city; (2) oversight of payments to corrupt public officials who supported the DTO's illicit activities; and (3) management of the DTO's cooperative relationships with the leaders of the Sinaloa Cartel, with whom he shared control of Culiacan. See Gov't Mot. to Admit at 12. In this role as plaza boss, the Defendant supervised and managed hundreds of individuals within his area of control -- Culiacan. Culiacan served as the central repository for a majority of the DTO's cocaine that was destined for the United States. Further, the Defendant's DTO imported massive quantities of ephedrine from Asia into Mexico, where the Defendant was in charge of overseeing its production into methamphetamine, and its transportation across the border into the United States. See id; see also PTH at 24. The Defendant's DTO also bribed law enforcement and military officials to facilitate their drug trafficking activities and protect its members from arrest; as the plaza boss, the Defendant approved these bribes. See Gov't Mot. Other Crimes at 8–9; see also PTH at 22–23, 25.

As the central repository for a majority of the DTO's narcotics, the city of Culiacan was vital to the success of the DTO's drug trafficking activities. Culiacan grew in importance once the DTO began fighting with Los Zetas, a rival cartel, around 2004, which cut-off the DTO's access to the United States along Mexico's border with Texas. The city served as a market place for the sale of large shipments of cocaine to the DTO's customers, who used the transportation routes controlled by the DTO and by the Sinaloa Cartel to import the cocaine into the United States. Culiacan also served as the transshipment point for the large shipment of cocaine that the DTO

10

049

imported into the United States. As the plaza boss for the city of Culiacan, it was the Defendant's responsibility to oversee individuals involved in the sale of cocaine to the DTO's customers and to oversee individuals involved in the transportation of the remaining portions of cocaine to the United States. Once these shipments to the United States were organized, the Defendant gave orders and instructions to others as to where loads of cocaine should be received, inventoried and stored, so as to avoid law enforcement detection. Even when the Defendant was arrested and detained in Mexico, he continued to exercise control over the DTO by taking a large percentage of the profits either in the form of U.S. currency or cocaine that were received by the Beltran Leyva DTO, indicating his managerial role throughout the course of the conspiracy. See Gov't Mot. Other Crimes at 10–11.

Lastly, the Defendant's power and control was extensive, which reflected the large scale and scope of the Beltran Leyva DTO. Witnesses would have testified at trial that the Defendant had the power to enter into mutual agreements with other high-level drug traffickers, including members of the Sinaloa Cartel, to aid each other in the organization and receipt of large quantities of cocaine from Colombia, as well as the importation of that cocaine into the United States. See PTH at 4, 11. This speaks volumes as to the leadership role he served within the DTO. Moreover, the Defendant exercised extensive control over the area in which he operated and told members of his DTO not to worry about getting into trouble given the influence he had over law enforcement and military in the area. See PTH at 23, 25.

Therefore, the four-level role adjustment is clearly warranted and should be applied in this case.

### 2.    The Defendant Possessed Dangerous Weapons During the Conspiracy

Section 2D1.1(b)(1) applies a two-level enhancement when "a dangerous weapon

11

(including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). "[T]he enhancement is to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction, which 'includes acts that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" United States v. Bell, 795 F.3d 88, 105 (D.C. Cir. 2015) (quoting U.S.S.G. § 1B1.3(a)(2)).

The Defendant claims that this enhancement does not apply and submits that the Defendant did not possess a weapon in furtherance of the conspiracy at the time of his arrest. Def. Obj. at 2. However, the two-level enhancement for weapons possession is clearly applicable. At the time of his arrest in 2008, the Defendant possessed eight pistols including an AK-47. PSR ¶ 10. During this time period, the Defendant was an active member of the charged drug conspiracy – a fact to which he allocuted at his guilty plea hearing. Therefore, he cannot now claim that somehow the weapons which he possessed at the time of his arrest were unrelated to narcotics trafficking. See Def. Obj. at 2. Even if the Defendant could claim that the 2008 weapons were unrelated to his DTO's drug trafficking (he cannot), at trial the Government would have provided the testimony of several individuals who observed the Defendant armed and surrounded by armed guards, including one witness who was in charge of the Defendant's personal security in Culiacan, to ensure that the Defendant was not arrested or killed by a rival cartel. See Gov't Mot. Other Crimes at 4–5. At trial, this witness would have testified regarding his/her first-hand knowledge of the Defendant regularly carrying a pistol for his protection from arrest or a rival cartel. Id. Further, this witness observed the Defendant return from meetings with Joaquin Guzman Loera, also known as "Chapo" ("Chapo"), in the mountains of Mexico wearing a tactical vest containing grenades. Id. at 5. Additionally, this witness is aware that the Defendant had two groups of armed men in Culiacan, with each group consisting of approximately 100 men who carried various types of high powered

.

12

051

weapons, including AK-47s, AR-15s, bazookas and 50-caliber weapons. Id. These men provided

armed protection and support to the Defendant to ensure that the Defendant and his co-conspirators

could conduct their drug trafficking activities uninterrupted from law enforcement and rival

cartels. Id. This witness is also aware that the Defendant traveled with at least ten cars filled with

gunmen to protect the Defendant from any rival cartels. Id. Accordingly, Section 2D1.1(b)(1) is

applicable.

### 3.    The Defendant Used Violence and Directed the Use of Violence in Furtherance of the Conspiracy

Section 2D1.1(b)(2) provides for a two-level enhancement because the defendant "used

violence, made a credible threat to use violence or directed the use of violence." The Defendant

claims that this enhancement does not apply because there is no evidence that he "engaged in

making credible threats of violence" or "directed the use of violence." Def. Obj. at 2. This

argument makes no sense in light of the extensive testimony regarding the Defendant's use of

violence. For example, Government witnesses would have testified at trial that in the course of

participating in the Beltran Leyva DTO the Defendant used violence or ordered the use of violence

in the furtherance of the DTO's drug trafficking activities. Specifically one witness learned that

two members of the Defendant's DTO who were the chiefs of "sicarios" (or hitmen), "El Rayito"

and "Wacho," were in charge of kidnapping, interrogating and torturing enemies of the Defendant.

See Gov't Mot. Other Crimes at 5. These enemies, referred to as "contras," were individuals from

Tamaulipas or Nuevo Leon, Mexico who were believed to be associated with the Zetas Cartel, or

individuals from Chihuahua or Navolato, Mexico who were believed to be associated with Vicente

Carrillo Fuentes's Juarez Cartel. Id. The Zetas and Juarez Cartel are both rivals to the Defendant

and the Beltran Leyva DTO. Id. This witness was present for meetings that the Defendant

conducted every morning in which "El Rayito" and "Wacho" would inform the Defendant of

13

052

"contras" who were kidnapped, interrogated, and tortured the night before. Id. at 5-6. This witness

would also have testified that the Defendant would then give the order to "El Rayito" and "Wacho"

to kill those "contras" and make them disappear. Id. at 6.



As set forth above, numerous cooperating witnesses would have described several acts of

violence that the Defendant authorized, participated in or directed, all in furtherance of the DTO's

narcotics trafficking operations. Accordingly, Section 2D1.1(b)(2) is applicable.

**4.    The Defendant Used Bribery to Facilitate Drug Trafficking**

Section 2D1.1(b)(11) provides for a two-level enhancement because the Defendant

"bribed, or attempted to bribe, one or more law enforcement officers to facilitate the commission

of the offense." Again, the Defendant claims that there is no evidence that he engaged in bribery.

Def. Obj. at 2. At trial, the Government would have introduced evidence of public corruption

through bribery as direct evidence of the Defendant's involvement in the charged conspiracy. See

Gov't Mot. Other Crimes at 8–9, see also PTH at 22-23, 25. Cooperating witnesses would have

testified about bribes paid by the Defendant, or on behalf of the Defendant, to all levels of police

and military personnel, namely, the municipal police, state police, Governor of the State, federal

highway police, the prosecutor's office and their investigative agency in Culiacan. See Gov't Mot. Other Crimes at 8–9. These payments included bribes the Defendant paid to a high-ranking member of the military to allow the Defendant to cultivate, harvest and sell five to six tons of marijuana during each harvest. Id. at 9.

These bribes also allowed the DTO to operate with impunity. See id. at 8-9. Co-conspirators were also seen driving around in police patrol cars; the Defendant's brother, Arturo, was escorted by police on a regular basis; and the drugs were even escorted by local police as they were being trafficked through Mexico. Id. at 9. The police also turned over "contras" (discussed above) on a regular basis to the Beltran Leyva DTO. Id.

Finally, a Government witness would have testified at trial regarding bribes given to prison officials to allow the Defendant to receive drug proceeds while he was incarcerated in Mexico and to allow phones and other contraband to be smuggled into the prison where he was housed. Id. Accordingly, Section 2D1.1(b)(11) is applicable.

### 5.  The Defendant Was Directly Involved in the Importation of a Controlled Substance

Section 2D1.1(b)(15)(C) provides for a two-level enhancement where the defendant's conduct warrants an adjustment under USSG § 3B1.1 and because the defendant "was directly involved in the importation of a controlled substance." More specifically, Section 2D1.1(b)(15)(C) applies "if the defendant is accountable for the importation of a controlled substance under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct (Factors that Determine the Guideline Range)), i.e., the defendant committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the importation of a controlled substance." U.S.S.G. § 2D1.1 app. note 20.

Here, it is beyond dispute that the Defendant's criminal conduct caused the importation of a controlled substance. As set forth above, the Defendant was one of the leaders of the Beltran

15

054

Leyva DTO, who was responsible for overseeing the manufacture and distribution of narcotics for importation into the United States. In addition, the Defendant managed his DTO's extensive transportation network, which smuggled tonnage quantities of cocaine from Colombia, through Mexico and eventually to the United States. Specifically, the Defendant's central role within the Beltran Leyva DTO was to make sure the drugs were in fact safely imported into the United States. In this role, the Defendant met with co-conspirators, to include the Government's witnesses, to plan drug shipments; communicated via phone and radio with co-conspirators regarding planned departures and arrival of narcotics, and directed workers to move the drugs using planes, highways and other methods of transport. Additionally, the Defendant had daily meetings where he would check in with the plaza bosses along the U.S./Mexico border to determine the status of the Defendant's drug shipments being crossed into the United States and the movement of money back from the United States into Mexico for the payment of those drug shipments. See PTH at 24. Therefore, Section 2D1.1(b)(15)(C) is applicable.

      C.    A Guidelines Sentence is Reasonable and Appropriate

For the reasons set forth below, a sentence within the applicable Guidelines range is sufficient, but not greater than necessary, to achieve the goals of sentencing. Specifically, these factors are most important: the nature and circumstances of the offense, the need for the sentence to reflect the severity of the offense, the need for adequate deterrence, and the need to protect the public.

      **1.    Nature and Circumstances of the Offense, and Need for the Sentence to Reflect the Severity of the Offense**

The Defendant committed serious crimes, over an extended period of time, against the United States by his active participation in an expansive Mexican DTO that was responsible for transporting multi-ton quantities of cocaine from Colombia to Mexico for ultimate importation

16

into the United States. In fact, one Government witness was alone responsible for supplying the DTO with over 1 million kilograms of cocaine during the course of the conspiracy. Therefore, the amount of cocaine that the Defendant is responsible for conspiring to import into the United States well exceeds the highest offense level under the Sentencing Guidelines. This is a testament to the extremely serious nature of the Defendant's criminal conduct.

Additionally, the proffered testimony of the Government's witnesses establishes that as one of the leaders of the Beltran Leyva DTO, members of the organization rarely did anything significantly impacting the DTO without the Defendant's authorization. It is therefore the Defendant who, as one of the heads of this DTO, is truly responsible for these large quantities of cocaine being illegally trafficked into the United States.

As the Court is well aware, cocaine is an extremely dangerous and destructive illegal street drug. Cocaine abuse has devastated communities in the United States, Colombia, Mexico and elsewhere, ruining lives, splitting families apart, inflicting violence on innocent by-standers, and wreaking havoc on innocent family members and children. It's also a very destabilizing and corruptive force in countries throughout the region that don't have strong enough law enforcement institutions to combat it, such as in Mexico, further adding to the destructive nature of the crime. Its social costs have been enormous. The Defendant's offense involved aiding and abetting individuals in Mexico and elsewhere who imported these drugs into the United States and it also involved the Defendant's direct participation in the importation of these drugs into the United States.

Additionally, the Defendant's trafficking was not limited to only cocaine, but also methamphetamine. The Defendant worked with members of the DTO involved in the production and distribution of methamphetamine, which is currently plaguing some areas of the United

17

States on the same levels as crack-cocaine once plagued the United States.

In addition to the serious nature of the drug trafficking charges to which the Defendant pled guilty, the Defendant's role within the conspiracy highlights the seriousness of the offense. The Defendant was responsible for the DTO's operations in a "plaza" in Mexico, which is often referred to as a "plaza boss." Further, the Defendant's role was to direct second-level managers and supervisors regarding day to day operations of the DTO as well as to obtain information from co-conspirators about rival cartels in the area. As set forth in the Government's extensive pretrial filings, there has been a history of significant violence in Mexico between rival cartels. This has resulted in extreme loss of life to both those involved in this illegal trade, as well as innocent civilians. The extreme violence associated with this is even further highlighted by the fact that the Defendant possessed a firearm in connection with his drug trafficking activities.

Thus, the serious nature and circumstances of this offense necessitates a sentence of life imprisonment.

### 2.    Adequate Deterrence

Given the adverse impact that drug trafficking has on society, it is important that the Court impose a sentence that deters others from undermining the rule of law. Further, while this prosecution has incapacitated some of the narcotics trafficking through Mexico, importation of controlled substances from Mexico and the region into the United States still occurs. The recommended sentence would provide a critical general deterrence to other narcotics trafficking leaders that their participation in narcotics importation into the United States will result in substantial sentences.

18

### 3.     Protect the Public from Further Crimes of the Defendant

Prior to his arrest, the Defendant was a leader of a DTO responsible for trafficking

significant quantities of cocaine, methamphetamine and marijuana to the United States. A life

sentence is the only way to protect the public from further crimes committed by the Defendant.

Anything short of a life sentence would lead to the Defendant's deportation back to Mexico,

where his criminal activity will only continue. As previously noted, the Defendant committed

his crimes while he resided in Mexico and he continued to orchestrate shipments of drugs into

the United States while he was incarcerated in Mexico. The Defendant's power and influence in

Mexico over public officials and his co-conspirators was a result of nearly three decades of drug

trafficking.   Despite the Defendant's extradition to the United States, his DTO continues to

operate through the DTO's remaining leadership which includes members of the Defendant's

family still residing in Mexico. As a result, any possibility of the Defendant's return to Mexico

will result in a return to his criminal activities.

### 4.     The Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) articulates "the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §

3553(a)(6) (emphasis added). By its terms, the statute requires a specific evaluation of the

compared defendants' records and conduct. When determining whether a sentence creates an

unwarranted disparity, the Court should also consider, inter alia, a defendant's acceptance of

responsibility, the nature and extent of a defendant's participation in the criminal activity, a

defendant's criminal history, and whether and to what extent a defendant cooperated. See, e.g.,

United States v. Mejia, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in

sentences was "entirely explained" by co-defendant's acceptance of responsibility and thus any

disparity resulting from defendant's "harsher" sentence was not unwarranted). A defendant is only entitled to "a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result." United States v. Carrasco-De-Jesus, 589 F.3d 22, 29 (1st Cir. 2009).

The Defendant in this case is charged as the sole defendant. There are several related cases that are still pending, and thus not similarly situated as this case. Further, the Defendant's conduct in this case is not similarly situated to those defendants in the related cases. As set forth above, the evidence demonstrates that the Defendant was the leader of the DTO and is therefore in a position where his conduct is not similar to the conduct of his subordinate co-conspirators. An advisory guideline sentence is appropriate and reasonable in this case to avoid unwarranted sentencing disparities.

## IV.    Conclusion

For the foregoing reasons, the Government respectfully requests that the Court sentence the Defendant to a term of imprisonment within the applicable Sentencing Guideline range of life imprisonment, as calculated by the PSR. The Government submits that this sentence is sufficient, but not greater than necessary, to punish the Defendant for his crime, promote respect for the law, deter the Defendant and others from committing similar serious crimes in the future, and protect the public.

Respectfully submitted this 31st day of May, 2016.

> ARTHUR WYATT, Chief
> Narcotic and Dangerous Drug Section
> Criminal Division
> United States Department of Justice

By:    /s/_____

> Andrea Goldbarg
> Amanda N. Liskamm
> Adrian Rosales
> Trial Attorneys
> Marcia M. Henry
> Assistant United States Attorney
> United States Department of Justice
> Narcotic and Dangerous Drug Section
> 145 N Street, Northeast
> East Wing, Second Floor
> Washington, D.C. 20530

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel

of record for the defendant, this 31st day of May 2016.


Respectfully submitted,

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section


By:      /s/
Andrea Goldbarg
Amanda N. Liskamm
Adrian Rosales
Trial Attorneys
Marcia M. Henry
Assistant United States Attorney
Narcotic and Dangerous Drug Section
U.S. Department of Justice
145 N Street NE
Second Floor, East Wing
Washington, DC 20530

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| v. | : | Criminal No.12-0184(RJL) |
| | : | Sentencing: July 20, 2016 |
| ALFREDO BELTRÀN LEYVA, | : | |
| | : | |
| *Defendant.* | : | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant Alfredo Beltrán Leyva ("Beltrán Leyva), by and through his undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing. Mr. Beltrán Leyva will come before the Court on July 20, 2013, for sentencing after pleading guilty to the one count charged in the indictment, Conspiracy to Distribute Five Kilograms or More of Cocaine and 50 Grams or More of Methamphetamine for Importation Into the United States in violation of 21 U.S.C. §§ 959, 960 & 963. For the reasons set forth below, Mr. Beltrán Leyva respectfully requests that the Honorable Court reject the government's request for sentence of life in prison and sentence him to a term of 25 years.

### OBJECTIONS TO THE PRESENTENCE REPORT

Mr. Beltrán Leyva has reviewed the pre-sentence report ("PSR") and has several objections as described to the PSR writer.

### BACKGROUND

On August 24, 2012, the government filed a "bare bones" indictment charging Mr. Beltrán Leyva with one count of Conspiracy to Distribute 5 or more Kilograms of Cocaine, Fifty Grams or More of Methamphetamine, One Kilogram or More of Heroin and One Thousand Kilograms or More of Marihuana for Importation into the United States, in violation of 21

U.S.C. §§ 959, 960 and 963.[1]  The indictment charged a conspiracy "from in or about 2000, and

continuing thereafter, up to including" the filing date of the indictment.  The indictment further

alleged that Mr. Beltrán Leyva conspired with "others known and unknown," in the countries of

"Mexico, the United States, and elsewhere" to commit the charged offense.[2]  Beyond that

boilerplate language, the indictment did not specify any particular activity by Mr. Beltrán Leyva

that may be considered part of the conspiracy nor identified any other individuals who may have

been coconspirators.

### *The Government's Extradition Request*

Sometime after the filing of the indictment, the government submitted a formal

request to Mexico seeking Mr. Beltrán Leyva's extradition to the United States.  Andrea

Goldberg, Assistant Deputy Chief of the Narcotics and Dangerous Drug Section of the

Department of Justice, submitted a sworn affidavit setting forth the charges against Mr. Beltrán

Leyva.[3]  In her affidavit, Ms. Goldbarg set forth a "Summary of the Facts of the Case," wherein

she stated:

> 19.    Investigation by law enforcement authorities revealed that ALFREDO
> BELTRAN LEYVA has been involved in the distribution and illegal importation
> of drugs from Colombia for the ultimate distribution in the United States since
> approximately 2000.  ALFREDO BELTRAN LEYVA is a younger brother of
> Arturo Beltran Leyva, who until his death in 2009 was one of the most prolific
> drug traffickers in Mexico.
>
> 20.    ALFREDO BELTRAN LEYVA started working in the Beltran Leyva
> drug trafficking organization created by his older brothers, Arturo and Hector.
> ALFREDO BELTRAN LEYVA initially was assigned to coordinate the
> offloading of ton-quantity shipments of cocaine from Colombia.  ALFREDO
> BELTRAN LEYVA was later promoted to one of Arturo Beltran Leyva's main
> assistants, in which role he oversaw the shipment of thousands of kilograms of

---

[1]    The indictment also includes a forfeiture allegation.  The government has since moved to dismiss the heroin
and marijuana portions of the indictment.

[2]    Based on the charge in the indictment, a judicial officer of this Court issued a warrant for Mr. Beltrán
Leyva's arrest.  Mexican authorities had already detained Mr. Beltrán Leyva in 2008.

[3]    *See* Exh. 1 (Affidavit of Andrea Goldbarg).

063

cocaine into the United States and the subsequent distribution of the cocaine for sale in the United States.

21.     The investigation by law enforcement authorities revealed that ALFREDO BELTRAN LEYVA created his own alliances and had his own followers, including Fausto Isidro Meza Flores, alias Chapo Isidro and Agustin Flores Apodaca, alias El Niño, alias El Barbon, alias El Ingeniero, alias Agustin Apodaca Flores. After ALFREDO BELTRAN LEYVA's arrest by Mexican authorities in January 2008, he continued to give orders to Fausto Isidro Meza Flores and Agustin Flores Apodaca while he was incarcerated. In addition to carrying out ALFREDO BELTRAN LEYVA'S orders during his incarceration, Fausto Isidro Meza Flores and Agustin Flores Apodaca paid ALFREDO BELTRAN LEYVA part of the proceeds from the Beltran Leyva Organization's sale of cocaine, heroin, methamphetamine, and marijuana in the United States.

22.     On September 2, 2010, law enforcement authorities seized 33 pounds of methamphetamine and four kilograms of cocaine in the State of Washington. Laboratory analysis has confirmed that the substances seized on September 2, 2010, were methamphetamine and cocaine. Telephone conversations that were lawfully intercepted and recorded under United States law revealed discussions among members of the Beltran Leyva Organization involving distribution of the Organization's drugs in the United States and the purchase of machineguns and destructive devices to be used in furtherance of the Organization's drug trafficking activities.[4]

In her affidavit, Ms. Goldbarg also stated that she had attached a second affidavit executed by

Federal Bureau of Investigation Special Agent Britton Boyd, who "summarizes the investigation

of ALFREDO BELTRAN LEYVA's drug trafficking activities and the *evidence that resulted in*

*the indictment of this case.*"[5]  She further states that attached to Special Agent Boyd's "affidavit

and made part of this extradition request are the laboratory reports describing the chemical

analyses on the methamphetamine and cocaine seized on September 2, 2010; transcripts of

several lawfully recorded telephone conversations in which ALFREDO BELTRAN LEYVA'S

employee Agustin Flores Apodaca and his co-conspirators discussed drug trafficking activities

and weapons purchases ...."[6]

---

[4]      Exh. 1 at ¶¶ 19-22.
[5]      Exh. 1 at ¶ 23 (emphasis added).
[6]      *Id.*

For his part, S.A. Boyd summarized the facts supporting the indictment as

follows:

7.      In 2009, federal law enforcement authorities began an investigation into
the distribution of illegal drugs in the State of Washington. Specifically, law
enforcement authorities focused on the distribution of cocaine, methamphetamine,
heroin, and marijuana imported from Mexico and transported to the United States
Pacific Northwest Region. During the investigation, law enforcement authorities
were able to identify several members of Mexico-based Beltran Leyva Drug
Trafficking Organization, specifically, Agustin Flores Apodaca, alias El Niño,
alias El Barbon, alias El Ingeniero; Salome Flores Apodaca, alias Pelon, alias
Fino; and Fausto Isidro Meza Flores, alias Chapo Isisdro, alias Chapito Isidro.
Further investigation revealed that these members still worked for ALFREDO
BELTRAN LEYVA. More specifically, the part of the proceeds of the drugs that
were being sold in the United States on behalf of Agustin Flores Apodaca, Salome
Flores Apodaca, and Fausto Isidro Meza Flores was being shared with ALFREDO
BELTRAN LEYVA. In fact, although ALFREDO BELTRAN LEYVA was
arrested by law enforcement authorities in January 2008, ALFREDO BELTRAN
LEYVA was still giving orders even while incarcerated, and he was still engaged
in the distribution of drugs from Mexico into the United States.

8.      In late August 2010, law enforcement authorities were conducting
surveillance at a business location related to this investigation in Centralia,
Washington, when they observed a brown Chevrolet Impala automobile with
Arizona license plates. Further investigation by law enforcement authorities let to
a lawful search of the Impala, pursuant to which authorities discovered large
quantities of United States currency and ledgers detailing suspected drug
transactions.[7]

9.      Based on additional information developed during the investigation, on
September 2, 2010, law enforcement authorities lawfully seized 33 plastic-
wrapped, cylindrical packages containing a total of approximately 33 pounds of
methamphetamine and four plastic-wrapped, square-shaped packages containing
approximately four kilograms of cocaine, along with a firearm, ammunition, and
drug paraphernalia, at a warehouse located in Centralia, Washington. Samples of
the seized drugs were sent to the United States Drug Enforcement Western
Laboratory in San Francisco, California for analysis and were confirmed to be
methamphetamine and cocaine. A certified copy of the laboratory report detailing
the results of the chemical analysis is attached to this affidavit and marked as
Attachment D-1. Photographs of the packages of methamphetamine and cocaine
that were seized on September 2, 2010, are attached to this affidavit and marked
as Attachment D-2.

---

[7]      The ledgers seized in Centralia, Washington are not the same ones that are subject to the Court's protective
order. The government has not produced any discovery related to that seizure with the exception of the
drug analysis reports and photographs of the seized items.

10.    Following the September 2, 2010 drug seizure, law enforcement authorities lawfully recorded telephone conversations between Agustin Flores Apodaca, and another man involved in the Beltran Leyva Organization's drug trafficking activities in the United States. Law enforcement authorities played audio recordings of some of these conversations for a Cooperating Witness (hereinafter "Witness One") who personally knows Agustin Flores Apodaca, Salome Flores Apodaca, and Fausto Isidro Meza Flores, and other members of the Beltran Leyva Organization. Based on Witness One's familiarity with the Beltran Leyva Organization and its members, Witness One was able to identify in these audio recordings the voices of Agustin Flores Apodaca, Salome Flores Apodaca, and Fausto Isidro Meza Flores and further was able to interpret the meaning of several portions of these conversations in which the participants spoke in coded and cryptic language.[8]

In the subsequent paragraphs 11 through 14, Agent Boyd summarizes the intercepted telephone conversations.[9]

Agent Boyd then continues:

15.    On September 14, 2010, law enforcement authorities in Arizona observed the same brown Chevrolet Impala, from which law enforcement authorities in the State of Washington lawfully seized United States currency and ledgers of suspected drug transactions in late August 2010, being driven by Salome Flores Apodaca. Law enforcement authorities followed the Impala to a location where they observed Salome Flores Apodaca meet with several other men. According to Witness One, who was present at the meeting, Salome Flores Apodaca discussed selling over 30 pounds of methamphetamine and four kilograms of cocaine. Based on my knowledge of this investigation, I believe that Salome Flores Apodaca was attempting to sell the supply of methamphetamine and cocaine, that, unbeknownst to him, was seized by law enforcement authorities on September 2, 2010.

16.    Law enforcement authorities then followed Salome Flores Apodaca as he left the meeting. Salome Flores Apodaca was accompanied by another man, who law enforcement observed getting into a different car than the brown Impala, in which Salome Flores Apodaca drove away from the meeting. Law enforcement authorities followed the other man's car and eventually conducted a lawful stop of this other car, which led to the arrest of the other man for possession of illegal drugs.

17.    The above-stated summary of the events on September 8, 2010 was confirmed by Witness One in this case, who has also stated that Salome Flores

---

[8]    Exh. 2 (Affidavit of Special Agent Britton Boyd) at ¶ 7 – 10.
[9]    *See* Exh. 2 at ¶ 11 – 14.

Apodaca later called him/her and said that one of his workers had been arrested in Arizona, related to this drug transaction.

18.    This investigation also revealed that Fausto Isidro Meza Flores, in participation with ALFREDO BELTRAN LEYVA, was attempting to import ton quantities of marijuana from Mexico into the United States. A Cooperating Witness (hereinafter "Witness Two") engaged in an attempted drug transaction involving approximately 2,800 kilograms of marijuana that were to be imported from Mexico into the United States.

19.    Witness Two had several face-to-face meetings with Agustin Flores Apodaca and Fausto Isidro Meza Flores to negotiate the marijuana transaction. During these conversations, Agustin Flores Apodaca told Witness Two that he (Agustin Flores Apodaca) and Fausto Isidro Meza Flores were still loyal to ALFREDO BELTRAN LEYVA. In fact, Witness Two overheard a conversation in which Agustin Flores Apodaca told someone on the telephone that the orders he (Agustin Flores Apodaca) was providing came directly from ALFREDO BELTRAN LEYVA. This conversation occurred in the summer 2011, over three years after ALFREDO BELTRAN LEYVA was arrested by law enforcement authorities. Around the same time as this telephone conversation, Agustin Flores Apodaca told Witness Two that they (Agustin Flores Apodaca and Fausto Isidro Meza Flores) were still giving part of the proceeds from the drug sales they conducted in the United States to ALFREDO BELTRAN LEYVA.

20.    The investigation revealed another witness, Alejandro Tascon, who was a Colombian drug trafficker that spent many years working fro the Beltran Leyva brothers. Tascon began his work for the Beltran Leyva Organization assigned to Hector Beltran Leyva, but he eventually moved to a position where he worked for Julio Beltran Quintero and ALFREDO BELTRAN LEYVA. Tascon worked for Julio Beltran Quintero and ALFREDO BELTRAN LEYVA from 2000 until Julio Beltran Quintero's death in 2005. During this time period, Tascon assisted Julio Beltran Quintero and ALFREDO BELTRAN LEYVA in processing tens of thousands of kilograms of cocaine that the Beltran Leyva Organization received from Colombia.

21.    When Julio Beltran Quintero was murdered in 2005, Tascon went to work exclusively for Arturo Beltran Leyva, although Arturo Beltran Leyva told Tascon directly that his brother, ALFREDO BELTRAN LEYVA, was receiving part of the drugs that Tascon was providing. During the time that Tascon worked for Arturo Beltran Leyva and ALFREDO, he coordinated the delivery of thousands of kilograms of cocaine from Colombia for the Beltran Leyva Organization.[10]

On November 26, 2013, the Mexican "Secretaría de Relaciones Exteriores"

(Ministry of Foreign Affairs) issued a 214-page "Acuerdo de Extradición" (Extradition

---

[10]    Exh. 2 at ¶ 15 – 21.

Agreement) wherein the Mexican government analyzed the United States government's request for Mr. Beltrán Leyva's extradition and set forth the conditions under which Mr. Beltrán Leyva was being extradited pursuant to the Treaty of Extradition Between the United Mexican States and the United States of America.[11] Mr. Beltrán Leyva was extradited to the United States on November 15, 2014.

Mr. Beltrán Leyva's understanding, as well as that of his Mexican attorneys, was that he being extradited to face charges related to the drug seizures in Washington State.[12] However, after Mr. Beltrán Leyva's extradition, the government disclosed that it intended to try Mr. Beltrán Leyva as being a member of a large-scale conspiracy involving the Mexican "Federation," which is alleged to be composed of the "Sinaloa Cartel" and what the government terms the "Beltrán Leyva Organization."[13] The government further sought to try him as conspiring with Colombian traffickers to import cocaine from Colombia to Mexico. Finally, the government sought to associate Mr. Beltrán Leyva with multiple seizures of cocaine loads. It was understood from early on that the government's evidence consisted principally of cooperator testimony. Based on the information available to him concerning the government's evidence, Mr. Beltrán Leyva decided to exercise his constitutional right to trial.

During the pendency of this case, the government filed various motions where it claims it set forth other crimes evidence against Mr. Beltrán Leyva. The week before the scheduled start of trial, the government proffered to the Court the expected testimony of various witnesses, including cooperators. Considering the new information available to him and that a

---

[11]  *See* Exh. 3 – Extradition Agreement. The Extradition Agreement is in the Spanish language. Relevant parts have been translated for the Court's convenience.

[12]  As the Court is aware, he was actively litigating this issue up until the Court denied the motion shortly before trial.

[13]  The Court subsequently narrowed the scope of the conspiracy that could be tried.

7

guilty verdict at trial would most likely mean a life sentence, Mr. Beltrán Leyva made the

extraordinary decision to plead guilty without any benefit of an agreement with the government.

        The government now seeks to have the Court sentence Mr. Beltrán Leyva to life

in prison based largely on the representations in its various motions and the "proffer" provided

prior to the scheduled trial.  The Court should reject that government's request and sentence Mr.

Beltrán Leyva to 25 years.  In sum, the Court should not rely solely upon the government's self-

serving and non-objective recitation of the facts it believes it would have proven at trial.

## STATUTORY AND GUIDELINE ANALYSIS

        The offense of conviction carries a mandatory minimum term of 10 years and a

maximum of life imprisonment, along with at least 5 years of supervised release and a fine of up

to $10,000,000.

        Appendix A to the United States Sentencing Guidelines states that U.S.S.G. §

2D1.1(a)(3) and (c)(1) are the applicable guidelines for a violation of 21 U.S.C. §§ 959, 960 and

963. This Guideline provides for a base offense level of 38.  The PSR calculated and the

government requests that the Court find the Guidelines as follows:

| | |
|---|---|
| Base Offense Level | 38 |
| Adjustment for Role in Offense (leader/organizer) | +4 |
| Specific Offense Characteristic (firearms possessed) | +2 |
| Adjustment for violence | +2 |
| Adjustment for bribery | +2 |
| Adjustment for direct involvement | +2 |
| Total Offense Level | 50 |
| Adjustment for acceptance of responsibility | -3 |

8

Adjusted offense level                                   47

According the to Chapter 5, Part A, comment n.2, "in rare cases, ... [a]n offense
level of more than 43 is to be treated as an offense level of 43. There is no dispute that Mr.
Beltrán Leyva's criminal history category is I. Pursuant to the Sentencing Table, an offense
level of 43 with a criminal history category of I corresponds to a term of imprisonment of life.
Mr. Beltrán Leyva objects to the PSR's and government's upward adjustments in their totality.

**_No basis on the current record to support a 12-level enhancement_**

In support of its request for a life sentence, the government relies upon the
"information contained in the PSR (which merely parrots information provided by the
government) as well as "evidence proffered" in various motions filed.[14] The government further
asserts that at trial it would have presented witnesses that claim to have seen Mr. Beltrán Leyva
engaged in multiple criminal acts during and in furtherance of the charged conspiracy and claims
that an evidentiary hearing is unnecessary in this case based on the facts before the Court.[15] The
government's assertion ignores that there *are no facts* before this Court. All that exists in the
record is the government's self-serving and summary recitations of what biased government
cooperators would have said at trial. There is no specificity with respect to dates, times,
locations. There is no sworn testimony or statements from these witnesses.

The local jury instructions warn that the testimony of cooperators should be
"considered with caution."[16] The government's proposal that the Court accept blindly its
"proffer" of what these witnesses would have said is untenable. Mr. Beltrán Leyva concedes that
the Court may consider hearsay evidence at sentencing; however, that evidence must have some

---

[14]     Gov. Memo. at 3-4.
[15]     *Id.* n.2.
[16]     *See, e.g.,* Red Book Instructions 2.22, 2.22a, 2.24.

indicia of reliability to support it.[17]  The Commentary to Guideline § 6A1.3 specifically states

that

> Although lengthy sentencing hearings seldom should be necessary, disputes about
> sentencing factors must be resolved with care. *When a dispute exists about any*
> *factor important to the sentencing determination, the court must ensure that the*
> *parties have an adequate opportunity to present relevant information.* Written
> statements of counsel or affidavits of witnesses may be adequate under many
> circumstances. *An evidentiary hearing may sometimes be the only reliable way to*
> *resolve disputed issues.* The sentencing court must determine the appropriate
> procedure in light of the nature of the dispute, its relevance to the sentencing
> determination, and applicable case law.
>
> In determining the relevant facts, sentencing judges are not restricted to
> information that would be admissible at trial. *Any information may be*
> *considered, so long as it has sufficient indicia of reliability to support its probable*
> *accuracy.* Reliable hearsay evidence may be considered. Out-of-court
> declarations by an unidentified informant may be considered where there is good
> cause for the non-disclosure of the informant's identity and there is sufficient
> corroboration by other means. *Unreliable allegations shall not be considered.*
>
> The Commission believes that use of a preponderance of the evidence standard is
> appropriate to meet due process requirements and policy concerns in resolving
> disputes regarding application of the guidelines to the facts of a case.[18]

On the record before it, the Court cannot make a determination as to the

applicability of the various enhancements sought by the government.  The government's various

"proffers" are plainly insufficient because the Court cannot make a finding of reliability based

solely on them. At the very least, the Court should hold an evidentiary hearing where the

government has the burden of producing reliable evidence upon which the Court can find, or not,

by a preponderance of the evidence whether the enhancements apply.[19]

---

[17]   *See United States v. Bras*, 483 F.3d 103, 108 (D.C. Cir. 2007).

[18]   U.S.S.G. § 6A1.3 (Commentary) (emphasis added; citations omitted).

[19]   *See United States v. Jimenez Martinez*, 83 F.3d 488, 494-95 (1st Cir. 1996) (finding error in district court's
denial of defendant's motion for evidentiary hearing given questionable reliability of *affidavit* on which the
district court relied at sentencing); *United States v. Roberts*, 14 F.3d 502, 521(10th Cir. 1993) (remanding
because district court did not hold evidentiary hearing to address defendants' objections to drug quantity
determination or make requisite findings of fact regarding drug quantity). *See also United States v. Bras,*

To the extent the Court requires the government to put on witnesses to support the enhancements Mr. Beltrán Leyva requests that the Court hear from the cooperators themselves rather than from an agent who will give selective testimony of events of which he has no first-hand knowledge and which is based on his reading of various reports. Mr. Beltrán Leyva also requests that the government produce any *Jencks* (18 U.S.C. § 3500) material relevant to the testimony. Without testimony to support the enhancements, Mr. Beltrán Leyva will be not be able to properly defend himself at sentencing and the Court will not be able to make a determination as to the applicability of those enhancements sought by the government.

### *Acceptance of responsibility*

The Court has informed Mr. Beltrán Leyva that it has a policy of not granting a downward adjustment for acceptance of responsibility for a late plea. Both the PSR and the government believe that the downward adjustment is applicable in this case and Mr. Beltrán Leyva believes that he has met requirements for the adjustment.

Under U.S.S.G. §3E1.1(a), "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." "If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level."[20]

---

483 F.3d 103 (D.C. Cir. 2007) (sentencing court conducted two-day hearing to determine amount of loss for guideline purposes); *United States v. Hart*, 324 F.3d 740 (D.C. Cir. 2003) (sentencing court held evidentiary hearing to determine applicability of enhancements).

[20]    U.S.S.G. §3E1.1(b).

072

Furthermore, the Application Notes to U.S.S.G. §3E1.1 states in relevant part

1. In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

(A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true or has acted in a manner inconsistent with acceptance of responsibility; . . .[21]

At the plea hearing, the Court placed Mr. Beltrán Leyva under oath and engaged

in the following colloquy:

THE COURT: Thank you. You can come back up, Mr. Balarezo, with your client.

Now, Mr. Beltrán Leyva, you've heard the government's summary of what it would have proved if this case had gone to trial. Let me ask you a few brief questions with regard to that summary.

First, between 2000 and 2012, did you unlawfully, knowingly and intentionally combine, conspire, confederate and agree, together with other co-conspirators, to unlawfully, knowingly, and intentionally distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, which is a narcotic drug and controlled substance, intending or knowing that such cocaine would be unlawfully imported into the United States in violation of Title 21 United States Code?

Did you do that?

THE INTERPRETER: Yes, Your Honor. I would help my brother, [Arturo]. And I conspired with my brother, [Arturo].

THE COURT: Okay.

Let me ask you this second: Between 2000 and 2012, did you unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree, together with other coconspirators, to unlawfully, knowingly and intentionally distribute

---

[21]    U.S.S.G. §3E1.1 (Application Note 1A).

50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, which is a narcotic drug and controlled substance, intending and knowing that such methamphetamine would be unlawfully imported into the United States in violation of Title 21 United States Code?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. A little more specifically, let me ask you this:

Between 2000 and your arrest on January 2008 by Mexican authorities, were you not one of the leaders of the Beltran Leyva organization?

THE DEFENDANT: No, sir.

THE COURT: You were not a leader? Were you a member of the organization?

THE DEFENDANT: I was a member of the Beltran Leyva organization.

THE COURT: All right.

MR. BALAREZO: Your Honor, if I just may interject for one second.

THE COURT: No. This is -- no.

MR. BALAREZO: Very well.

THE COURT: Now, let me ask you this: During that time between 2000 and your arrest in 2008, did that organization that you're a member of, to your knowledge, help to finance shipments from Colombia, of cocaine, which were transported to Mexico, with the intention of them later being transported through Mexico to the United States?

THE DEFENDANT: I would just help my brother, [Arturo], sell it in Culiacán, with the knowledge that it would get to the United States.

THE COURT: All right.

So your organization was helping to finance those shipments from Colombia to Mexico for transshipment to the United States. Is that a fair description?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And let me ask you one other question: During the same time period we've been talking about, would it be accurate to say that your organization also produced methamphetamine in Mexico for distribution, ultimately, in the United States? To your knowledge, is that an accurate statement?

THE DEFENDANT: Yes, Your Honor, I did have knowledge of that as well.

THE COURT: Okay.

So you're pleading guilty today because you are, in fact, guilty; is that right?

THE DEFENDANT: Yes, Your Honor.[22]

In response to each of the Court's questions Mr. Beltrán Leyva knowingly and truthfully admitted the conduct comprising the offense of conviction and did not falsely deny any additional relevant conduct for which he is accountable under §1B1.3.[23] Here, Mr. Beltrán Leyva has pled guilty to the one count of a "non-speaking" indictment that merely states the times of the conspiracy and statutory boilerplate language. He is "not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a)."[24] Furthermore, he is "may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection."[25] Finally, there is no evidence on the record that he has falsely denied, or frivolously contested, relevant conduct that the court determines to be true or has acted in a manner inconsistent with acceptance of responsibility.[26]

The Guidelines further make clear that the adjustment for acceptance of responsibility is "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly

---

[22]     Plea Hr'g Tr. At 17:16 – 20:13.

[23]     *See* U.S.S.G. §3E1.1 (Commentary).
[24]     *Id.*
[25]     *Id.*
[26]     *Id.*

14

demonstrate an acceptance of responsibility for his criminal conduct even though he. exercises his constitutional right to a trial."[27]

Here, although Mr. Beltrán Leyva initially intended to exercise his constitutional right to a trial, he ultimately did not do so immediately after the full scope of the government's case became clear and once the Court denied his motion relating to the Rule of Specialty. He decided to enter a guilty plea *before* trial and did not put the government and the Court through the burden of an expected three-month trial. In fact, he realized that he did not want to go to trial and face life in prison if convicted and decided that pleading guilty would at least give him the possibility of one day returning to his country and his family. If the Guidelines contemplate a downward adjustment for acceptance of responsibility for a defendant who actually went to trial, there is no reason why the Court should not grant him the adjustment in this case where no trial occurred.[28]

The Guidelines do allow for the Court's consideration of the "timeliness of the defendant's conduct in manifesting the acceptance of responsibility."[29] It is true that Mr. Beltrán Leyva pled guilty the week before trial was scheduled to begin. However, that should not be the end of the Court's consideration. As stated previously, the scope of the government's case was not evidence until the week before trial and the Court had not ruled upon his motion to Enforce the Rule of Specialty. When the Court directed the government give a basic "proffer" of the expected evidence, Mr. Beltrán Leyva realized that the government's case was stronger than he initially believed. It was at that point, when he actually knew what he was facing, that he decided to plead guilty and forgo his constitutional right to a trial.

---

[27]    U.S.S.G. §3E1.1 (Application Note 2).

[28]    *See United States v. Jones*, 997 F.2d 1475, 1478 (D.C. Cir. 1993) (*en banc*) (the reduction should normally be denied to the "defendant who does not plead guilty"; the *Jones* court granted a 2-level reduction to defendant who actually went to trial), *cert. denied*, 510 U.S. 1065 (1994)).

[29]    U.S.S.G. §3E1.1 (Application Note 1H).

The Court itself recognized the benefits to the parties of the government providing early information to a defendant in order to make an educated decision about how to proceed. At the February 20, 2015, hearing, the Court stated:

> It was always my experience that it was in the government's interest and the defense's interest, but in the government's interest for the defense to know what it was facing, *because when the defense knew what it was facing, that was when they were in the best position to evaluate whether it made sense to go to trial or made sense to enter a plea.* That's when they knew. So keeping the defense in the dark is actually not in the government's interest, it's actually not in the government's interest, if the Government wants a resolution short of a trial.
>
> I've never known a prosecutor who didn't want to get a plea if they could get one. I mean, that's -- *it saves a lot of time, expense and risk.* I mean, God knows, there are many judges, myself included, who love to have a trial every now and then. A three-month trial is a bit of a burden.[30]

The Court went on to state:

> THE COURT: Yeah, that's right. And a three-month trial is not one you're running around dying to get a three-month trial every now and then, because that's a lot of -- that's a lot of work, that's a lot of pressure and a lot of hard work for a long period of time. And I say that, you know, being exhausted after six weeks of what's looking like 10 to 12 -- 11-week trial right now that I'm in.
>
> *But be that as it may, I think it's in both sides' interest, both, for the government and the defense, for the government to make sure the defense is educated and knows what it's facing, and that means giving it detail. You've got to give explanation to it. They have to know what they're facing here, because it's only in that process that they're in a position to really evaluate the realistic sense of going to trial or not going to trial and whether it makes sense to go to trial or not go to trial.*
>
> And I appreciate that there will be security concerns and the government has to be concerned about those, as does the Court, et cetera, but this is a balancing, this is a balancing.
>
> The government wants a successful prosecution, whether it comes in the form of a plea or a trial that results in a conviction; and the defense wants a successful resolution, however they define that, in the interest of their client. It could be through a trial that results in an acquittal possibly or a hung jury or it could be in a form of a plea.

---

[30]    Tr. 2/20/15 Hr'g at 49:23 – 50:13 (emphasis added).

*But each side has in it has its own interests, and the best way to discern how to resolve this is for the government to share, to the fullest extent possible, its knowledge of the strength of its case, not its evaluation of the case, but what the evidence is in its case against the defense.*

So I encourage, encourage the government to think that through and in that spirit share information with the defense that'll enable it to see what it's facing so that it can figure out how to proceed to resolve this case.

MR. BALAREZO: Thank you, Your Honor. Appreciate that.

THE COURT: Stating the obvious.

MR. BALAREZO: I agree, thank you.[31]

In considering the timing of Mr. Beltrán Leyva's plea, the Court should also consider the circumstances of this case. As noted previously, Mr. Beltrán Leyva was actively litigating his assertion that he had been extradited from Mexico to face charges related to the drug seizures in Washington State and for a period of time shorter than the conspiracy charged in the indictment. All of the discovery produced prior to the plea did not relate specifically to him. The government had filed some motions providing a glimpse into what witnesses might say, but did not identify them. All he knew was that various cooperators were seeking to reduce their sentences at his peril. Thus, when the panorama of what he was facing became clear, Mr. Beltrán Leyva wasted no time in entering a knowing guilty plea without the benefit of an agreement. Put another way, since the government is now seeking a life sentence, Mr. Beltrán Leyva would have been no worse off had he gone to trial and been found. Here, Mr. Beltrán Leyva has accepted responsibility and has not challenged factual guilt. Therefore, the Court should grant him a 3-level downward adjustment for acceptance of responsibility.

---

[31]    Tr. 2/20/15 Hr'g at 50:15 – 52:6 (emphasis added).

## SECTION 3553(a) FACTORS

The Supreme Court decided in *United States v. Booker*,[32] that the federal Sentencing Guidelines are advisory provisions that recommend a particular sentencing range, rather than require it. When imposing sentences, a district court must "treat the Guidelines as the starting point and initial benchmark."[33] A district court must next consider the sentencing factors set forth in 18 U.S.C. § 3553(a). But the Court should not presume a Guideline sentence will always satisfy § 3553(a), because the Guidelines are only "a rough approximation of sentences that might achieve § 3553(a)'s objectives."[34]

A district court has an independent duty to ensure that the § 3553(a) factors are met. A court is free to reject a Guidelines sentence, "perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps *because the case warrants a different sentence regardless*."[35] A sentencing judge also "may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines."[36]

In addition a sentence must honor the statutory Parsimony Clause's "overarching command" that courts "'impose a sentence sufficient, but not greater than necessary, to comply with' the basic aims of sentencing . . . ."[37] This proscription was designed to ensure that sentencing reflects reasoned judgment that is reviewable on appeal.[38]

---

[32]  543 U.S. 220 (2005).
[33]  *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)) (internal quotations omitted).
[34]  *Rita v. United States*, 551 U.S. 338, 351 (2007); *Booker*, 543 U.S. at 245.
[35]  *Rita*, 551 U.S. at 350-51 (emphasis added).
[36]  *Kimbrough*, 552 U.S. at 101.
[37]  *Kimbrough*, 552 U.S. at 101 (2007); *Rita*, 551 U.S. at 348; 18 U.S.C. § 3553(a).
[38]  *United States v. Johnson*, 635 F.3d 983, 988 (7th Cir. 2011) (vacating); *United States v. Reyes-Hernandez*, 624 F.3d 405, 420 (7th Cir. 2010); *United States v. Dorvee*, 616 F.3d 174, 182-84 (2nd Cir. 2010); *United States v. Olhovsky*, 562 F.3d 530, 547-48 (3rd Cir. 2009).

In imposing a sentence that is "sufficient, but not greater than necessary," the court should look to the seven statutory factors listed under Section 3553. These factors include:

### 1.    Nature and circumstances of the offense and history and characteristics of the defendant

There is no denying that the offense of conviction is considered to be serious and dangerous. However, the offense itself should not drive the sentence imposed in this case, at least not in the unbalanced way the Government seeks.

Mr. Beltrán Leyva is a 45-year old father of ten children, one of whom (Santiel) was kidnapped in 2010 and is now presumed dead. He was born in abject poverty in La Palma, Sinaloa, Mexico. La Palma is part of the "Golden Triangle," known as a major producer of opium and marijuana. Since his childhood, Mr. Beltrán Leyva has been surrounded by narcotics trafficking. Most people in his town grew marijuana and opium, as did his oldest brother, Arturo. Arturo was the undisputed leader of what the government terms the Beltran-Leyva DTO until his death in 2009. Arturo was the oldest brother and Mr. Beltrán Leyva the youngest. In fact, Arturo was like a father figure for him and Mr. Beltrán Leyva did anything for his older brother. Unfortunately, he got an early start in the family business. With his guilty plea, Mr. Beltrán Leyva admitted that he had worked for his brother Arturo and conspired to commit the charged offense.

Mr. Beltrán Leyva's activities have not only caused him tremendous loss and pain (including loss of freedom and the deaths of his brother and son), but also have greatly affected his children and extended family and caused tremendous upheaval that would be exacerbated by a life sentence, especially since he also faces a lengthy prison sentence in Mexico, where he was

080

arrested in January 2008[39] for charges relating to his involvement in a narcotics conspiracy with his brother Arturo.

### 2.    Need for the sentence imposed

In addition to considering the above factors, the Court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."[40]  Section 3553(a)(2) states that such purposes are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

### A.    Seriousness of the offense, respect for the law, Just punishment

At the time of sentencing, Mr. Beltrán Leyva will have been incarcerated for over 8 years.  The government seeks a life sentence mainly based on enhancements of 12 levels.  A defendant who has accepted responsibility for his actions, all of which took place in Mexico, does not merit a life sentence.

According to the Central Intelligence Ageny, a Mexican male has a life expectancy of 72.88 years at birth.[41]  Currently 45 years old, Mr. Beltrán Leyva would be approximately 71 years-old when released from a 25 year sentence.[42]  Given his life expectancy, a 25-year sentence will be effectively a life sentence, but he would at least have the hope of walking free someday.  That, Mr. Beltrán Leyva submits, would be more than sufficient to

---

[39]    Mr. Beltrán Leyva has been detained ever since his arrest.
[40]    18 U.S.C. § 3553(a)(2).
[41]    *See* https://www.cia.gov/library/publications/the-world-factbook/fields/2102.html
[42]    This does not take into account any good time credits. A 25-year sentence (300 months) minus a possible 15% reduction for good conduct, results in a sentence of approximately 21 years. This calculation also does not take into account whether the Court grants him credit for the time he has already served.

compensate for the seriousness of the offense, to instill respect for the law and to impose just punishment. A life sentence, as the government demands, should be reserved for the absolute worst offenders. Here, the government has not demonstrated the need for such a sentence.

This Court should also consider the financial costs of a sentence of the type suggested by the government. At current rates, the cost to society of sentence of 25 years would cost taxpayers between $525,143 and $848,260.[43] In these times of financial austerity and rather than having the United States foot the bill for his lengthy incarceration, the Court should sentence Mr. Beltrán Leyva to 25 years and send him back to Mexico where the Mexican taxpayer can pay for his expected subsequent incarceration when he returns.

The government's recommended sentence of life in prison is excessive and in our view, vindictive, considering the sentences that the government has agreed to for many other high-profile large-scale narcotics traffickers.

### B & C.    Deterrence to criminal conduct and protection from further crimes

As noted above, imposition of a 25-year sentence will incarcerate Mr. Beltrán Leyva for until he is 71. Such a lengthy period will serve to deter further criminal activity and protect the public. It is well recognized that recidivism rates decline relatively consistently as age increases.[44] At 71 years-old, Mr. Beltrán Leyva would be approaching his life expectancy and American society would not be further served by an extreme sentence as suggested by the

---

[43]    *See* Exh. 4; U.S. Gov't Accountability Office, *Bureau of Prisons: Eligibility and Capacity Impact Use of Flexibilities to Reduce Inmates' Time in Prison* fig. 3 (2012) (excerpt).

[44]    United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 2 (May 2004) ( *available at* http://www.ussc.gov/Research/Research_Publications/publications.cfm); Miles D. Harer, "Recidivism among federal prisoners released in 1987, JOURNAL OF CORRECTIONAL EDUCATION (1994 ) (available at http://149.101.37.70/news/research_projects/published _reports/recidivism/oreprrecid87.pdf).

government. Once he serves his sentence, Mr. Beltrán Leyva would be deported to Mexico, where he would become Mexico's burden.

### D.    Provide treatment and training

Mr. Beltrán Leyva's education ended in the seventh grade. He would greatly benefit from educational training to broaden his horizons. He has no history of substance abuse or mental health issues.

### 3 & 4.    Kinds of sentences available and the sentencing ranges established

The Statutory and Guidelines Analysis section above discusses these factors.

### 5.    Pertinent policy statement

There does appear to exist any applicable pertinent policy considerations.

### 6.    Need to avoid sentencing disparities

The government alleges that Mr. Beltrán Leyva, as part of the Beltrán Leyva DTO, was involved in trafficking of thousands kilos of cocaine to the United States. While the government's quantity estimates are conjectural, the sentence of life years urged by the government would result in an inequitable and strikingly disparate sentence when compared to other similar cases *actually tried* around the country and would be far greater than necessary to comply with the basic aims of sentencing. *See United States v. Carlos Patiño Restrepo*, 02-CR-1188 (LDW) (E.D.N.Y. 2012), (alleged leader of Colombia's North Valley Cartel, charged with conspiracy to import thousands kilos of cocaine to the United States and alleged to have been involved in the murders of multiple individuals; *sentenced to 40 years after trial*);[45] *United States v. Omar Garcia Varela*, 99-CR-0804 (CMA) (S.D. Fla. 2011) (major Colombian cocaine trafficker, responsible for importation of thousands of kilos of cocaine and multiple murders

---

[45]    *See* Exh. 5; Judgment in a Criminal Case.

including government informant; *sentenced to 280 months (23.3 years) after trial*;[46] *United States v. Jorge Mario Paredes*, 03-CR-0987 (DAB) (S.D.N.Y. 2010) (large scale Guatemalan drug trafficker, alleged to have trafficked many thousands of kilos of cocaine to the United States; *sentenced to 31 years after trial*);[47] *United States v. Erminso Cuevas Cabrera*, 04-CR-446 (TFH) (D.D.C.) (FARC defendant alleged to have managed cocaine laboratories for the FARCS's 14th Front, oversaw production and distribution of hundreds of thousands of kilograms of cocaine and converted as much as 2.5 tons of cocaine paste into cocaine approximately several times per month; *sentenced to 29 years after trial*);[48] *United States v. Juan del Cid Morales*, 06-CR-0248 (JDB) (D.D.C. 2008) (Guatemalan official alleged to have conspired to trafficked thousands of kilos of cocaine to the United States; *sentenced to 220 months (18.3 years) after trial*);[49] *United States v. Fabio Ochoa*, 99-CR-06153 (SDFL 2003) (leader of Colombian Cali Cartel, alleged to have trafficked multiple tons of cocaine to the United States and to have directed the murder of a government informant; *sentenced to 35 years after trial*);[50] and *United States v. Samuel Santander Lopesierra*, 02-CR-0392(RJL) (DDC 2007) (large-scale Colombian drug trafficker alleged to have trafficked thousands of kilos of cocaine to the United States; *sentenced to 300 months (25 years) after trial*).[51] If anything, Mr. Beltrán Leyva's crimes are equal or lesser in scope than that of these defendants *who went to trial* and this Court should sentence him accordingly.

In *United States v. Diego Montoya*, 09-CR-20665 (S.D. Fla. 2009) the defendant was the undisputed leader of Colombia's North Valley Cartel; was directly responsible for

---

[46]  *See* Exh. 6; Judgment in a Criminal Case.
[47]  *See* Exh. 7; Judgment in a Criminal Case.
[48]  *See* Exh. 8; Judgment in a Criminal Case; Exh. 9; Indictment ¶¶ 35(d), 35(d)(iii) (excerpts).
[49]  *See* Exh. 10; Judgment in a Criminal Case.
[50]  *See* Exh. 11; Judgment in a Criminal Case.
[51]  *See* Exh. 12; Judgment in a Criminal Case. The government requested a sentence between 36 and 40 years.

importing innumerable tons of cocaine into the United States; was directly responsible for the deaths of hundreds in Colombia; was responsible for the death of at least one government informant and was charged in at least three separate indictments.[52] Montoya pled guilty and was sentenced to a term of 45 years.[53] Other high-profile Mexican traffickers have been sentenced to less time than the government requests. For example: *United States v. Osiel Cardenas Guillen*, 00-CR-118 (S.D. Tex. 2010) (defendant was the leader of the Gulf Cartel that allied itself with the Zetas; was responsible for importing tons of cocaine into the United States and much violence in Mexico; sentenced to 25 years after a plea); *United States v. Hector Palma Salazar* (C.D. Cal. 1995) (defendant was a co-founder of the Sinaloa Cartel with Joaquin "Chapo" Guzman; was responsible for importing thousands of kilos of cocaine into the United States; sentenced to 26 years after a plea; released in June 2016); *United States v. Benjamin Arellano Felix*, 97-CR-2520 (S.D. Cal. 2012) (defendant was leader of the Tijuana Cartel; responsible for shipping thousands of kilos of cocaine to the United States; sentenced to 25 years after a guity plea). These similarly-situated defendants who pled guilty were sentenced to less time than sought here by the government. The Court must consider these sentences in fashioning a sentence for Mr. Beltrán Leyva.

### 7.    Need to provide restitution

Here, restitution is not an issue and there is no specific victim that incurred financial loss or suffered physical harm relating to Mr. Beltrán Leyva's offense conduct.

---

[52]    *See* Exh.13; Factual Proffer in Support of Guilty Plea.
[53]    *See* Exh 14; Judgment in a Criminal Case.

## OTHER FACTORS

### *Consideration of status as deportable alien*

Mr. Beltrán Leyva's status as a deportable alien may warrant an additional reduction of his sentence. The United States Bureau of Prisons is authorized by statute[54] to assure that an inmate must be afforded a reasonable opportunity to adjust to, and prepare for, re-entry into the community. However, in *Lartey v. Department of Justice*,[55] the court determined that the right to participate in pre-release programs only applied to prisoners that were being released into the community within the United States, thereby excluding deportable aliens. And in *United States v. Smith*,[56] the District of Columbia Circuit ruled that a downward departure may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence. Thus, under a guideline sentence, Mr. Beltrán Leyva would be eligible for a downward departure of up to six months as a result of his status as a deportable alien.

### *Consideration of credit for time served*

Mr. Beltrán Leyva respectfully urges the Court to give him full credit for the time he has been incarcerated since January 28, 2008. The government has stated that his arrest was "not related to the instant case."[57] The government's assertion is without merit. The Mexican Ministry of Foreign Affairs, in its Extradition Order, specifically stated

> With regard to the previously described, in that appeal resolution dated June 10, 2008, noted in criminal matter 487/2008, initated by virtue of the appeal lodged

---

[54]  *See* 18 U.S.C. § 3624(c), which directs the Bureau of Prisons, to the extent practicable, to assure that prisoners spend part of the last 10% of their sentences (but no more than six months) under conditions -- possibly including home confinement -- that will "afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community." Bureau of Prisons regulations bars non-U.S. citizens from assignment to a Community Corrections Center except in what appear to be rare circumstances. *See* Federal Bureau of Prisons, Program Statement 5100.04: Security Designation and Custody Classification Manual, Ch. 2-9 (June 15, 1992).

[55]  790 F. Supp 130 (W.D. La. 1992).

[56]  27 F.3d 649 (D.C. Cir. 1994).

[57]  Gov. Sent. Memo. at 2. The government also argues that the weapons he possessed at his arrest support an enhancement for possession of a weapon because he was "an active member of the drug conspiracy." *Id.*

against the consitucional deadline dated 29 January 2008, noted in criminal
matter 387/2012-VI-A, before the Sixth District Judge for Penal Matters in the
State of Jalisco against ALFREDO BELTRAN LEYVA alias "MOCHOMO", is
which the *requested party is accused with respect to a criminal organization that
is known since the year 1996 to January 2008, the date on which he was arrested
by Mexican authorities*, in which he participated with his brother Arturo Beltran
Leyva, alias Barbas or Barbitas and others, for which this Ministry considers that
only the first part of the facts mentioned by the United States authorities in its
request for extradition filed against ALFREDO BELTRAN LEYVA alias
"MOCHOMO", refers to this criminal organization to point out the following:

> Investigation by law enforcement authorities revealed that ALFREDO
> BELTRAN LEYVA has been involved in the distribution and illegal
> importation of drugs from Colombia for the ultimate distribution in the
> United States since approximately 2000.

> ALFREDO BELTRAN LEYVA is a younger brother of Arturo
> Beltran Leyva, who until his death in 2009 was one of the most
> prolific drug traffickers in Mexico. ALFREDO BELTRAN
> LEYVA started working in the Beltran Leyva drug trafficking
> organization created by his older brothers, Arturo and Hector.

> ALFREDO BELTRAN LEYVA initially was assigned to
> coordinate the offloading of ton-quantity shipments of cocaine
> from Colombia. ALFREDO BELTRAN LEYVA was later
> promoted to one of Arturo Beltran Leyva's main assistants, in
> which role he oversaw the shipment of thousands of kilograms of
> cocaine into the United States and the subsequent distribution of
> the cocaine for sale in the United States.

*For this reason, the extradition of the requested party is not appropriate to be
criminally prosecuted for having organized from 1996 to January 2008, in a
criminal organization led by Joaquin Guzman Loera, alias El Chapo Guzman,
Arturo Beltran Leyva, alias El Barbas or El Barbitas or Alfa, Hector Beltran
Leyva, alias El H, Ismael Zambada Garcia, alias El Mayo Zambada, Juan Jose
Esparragoza Moreno, alias El Azul,* who have ties to the Sinaloa and Juarez
Cartels, dedicated to receive shipments of drugs from Colombia and if lost,
coordinate their search and location to be recovered, guarding their transfer to the
northern border of the Mexican Republic for later introduction into the United
States of America, for its commercialization, by virtue that he is already being
prosecuted for his participation in this criminal organization for the period of time
indicated in the criminal case number 387/2012-VI-A, which is before the Sixth
District Judge for Federal Criminal Proceedings in the State of Jalisco.[58]

Title 18 U.S.C. § 3585(b) states that "[a] defendant shall be given credit toward

---

[58]     Exh. 3 at 155 – 156 (emphasis added).

the service of a term of imprisonment for any time he has spent in official detention prior to the

date the sentence commences – (1) *as a result of the offense for which the sentence was imposed*;

…" The Bureau of Prisons' (BOP) regulations state that "if the federal defendant has been in

pre-sentence state or foreign custody on essentially the same charges as federal charges, credit

shall also be given even though a federal detainer may not have been on file during that time."[59]

It is evident that the case for which he was arrested in Mexico in January 2008,

pertains to his participation in a criminal organization involving Mr. Beltrán Leyva and his

brother Arturo that was dedicated to drug trafficking since at least 1996.  In fact, it also states

that Mr. Beltrán Leyva had been involved in the distribution and illegal importation of drugs

from Colombia for the ultimate distribution in the United States since approximately 2000, the

same time of the charged conspiracy.[60]  Therefore, Mr. Beltrán Leyva respectfully requests that

the Court apply credit for the entire time that he has been in custody since January 28, 2008.

### *BOP Designation*

To the extent possible, Mr. he respectfully requests that the Court recommend that

the Bureau of Prisons designate him to a facility in the Southern California area so that he could

benefit from contact with relatives during his incarceration.

### FORFEITURE ALLEGATION

The indictment in this case included a forfeiture allegation against Mr. Beltrán

Leyva and the government now argues that the Court should impose a money judgment in the

amount of $10,000,000.00 (ten billion dollars).  The government must prove the amount of the

money judgment by a preponderance of the evidence. *See United States v. Roberts*, 660 F.3d

---

[59] *BOP Manual on foreign incarceration credit,* CN-03, June 30, 1997, Chapter 6, p.7.
[60] This was the basis of M. Beltrán Leyva's argument that the Mexican government had limited the scope of the conspiracy for which he could be tried in the United States. *See* Motion to Enforce Rule of Specialty or, Alternatively to Limit Scope of Conspiracy. (Doc. No. 59).

149, 166 (2nd Cir. 2011) (using a preponderance of the evidence standard to calculate the money

judgment); *United States v. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007) (holding that the government

may use "either direct or circumstantial evidence" to establish the amount of the money

judgment by a preponderance of the evidence); *United States v. Lewis*, 791 F. Supp. 2d 81, 94-95

(D.D.C. 2011) (court calculated money judgment based on a finding by a preponderance of the

evidence).

   In determining the amount of a money judgment, the Court may consider any

evidence it deems reliable, including hearsay. *See United States v. Ali*, 619 F.3d 713, 720 (7th

Cir. 2010) (holding that because forfeiture is part of sentencing, less stringent evidentiary

standards apply in the forfeiture phase of the trial; the evidence need only be "reliable").  The

amount sought by the government is pulled from thin air and bears no relation to reality.  Mr.

Beltrán Leyva respectfully request the Court hold an evidentiary hearing where the government

is made to offer reliable proof to substantiate this outlandish figure.

## CONCLUSION

Mr. Beltrán Leyva respectfully requests that the Court impose a sentence of 25

years.[61] In light of *Booker* and *Hughes* such a sentence is reasonable and sufficient to serve the

criteria laid down in 18 U.S.C. § 3553(a).

**Dated**: Washington, DC
      July 11, 2016                 Respectfully submitted,

                          **BALAREZO LAW**

                               /s/

            By:     _____

                        A. Eduardo Balarezo
                        D.C. Bar # 462659
                        400 Fifth Street, NW
                        Suite 300
                        Washington, DC  20001

                        *Counsel for Defendant Alfredo Beltrán Leyva*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 11th day of July 2016, I caused a true and

correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via

E-Mail and ECF to the Parties in this case.

                               /s/

                        _____
                        A. Eduardo Balarezo

---

[61]    *See* n.33.

## `UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) CRIMINAL NO.: 1:12-cr-184 (RJL) |
| | ) |
| ALFREDO BELTRAN-LEYVA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### NOTICE RE: SENTENCING

The United States respectfully provides notice to the Court and the Defendant regarding two sentencing issues:

First, on October 14, 2016, the Defendant and his counsel signed a Stipulation as to Sentencing Enhancements that was provided to the Court. In that Stipulation, the Defendant stipulated as to his three-level leadership role (U.S.S.G. § 3B1.1(b)), his possession of firearms (U.S.S.G. § 2D1.1(b)(1)), and bribery of public officials (U.S.S.G. § 2D1.1.(b)(11)). In that Stipulation, the Defendant also signed an acknowledgement that reads in part: "I further agree that all statements made in these stipulations can be used against me should I attempt to withdraw my guilty plea."[1]

On November 14, 2016, the Defendant filed a Motion to Reconsider the Motion to Enforce the Rule of Specialty. In his motion, the Defendant states: "Additionally, were the Court to grant this Motion, Mr. Beltran Leyva respectfully requests that the Court allow him to withdraw his guilty plea and proceed to trial." (Def. Mot. at 1, See Docket Entry No. 197). As the Defendant

---

[1]    The Court has informed the parties that it will not accept the Stipulation as the Court is requiring a hearing on the issues in dispute.

1

is clearly attempting to withdraw his guilty plea, the Government plans to introduce the Stipulation as an admission by the Defendant at the sentencing hearing (See Federal Rule of Evidence 801(d)(2)(B)). Accordingly, on November 15, 2016, the Government notified counsel for the Defendant that it will seek to introduce these Stipulations against the Defendant at the Sentencing hearing.

Secondly, as the Defendant is now attempting to withdraw his guilty plea, the Government does not believe that he qualifies for the reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. See United States v. Berkley, 567 F.3d 703 (D.C. Cir. 2009) (Court's refusal to give defendant acceptance of responsibility after defendant plead guilty and then moved to withdraw his guilty plea affirmed). Therefore, the Defendant's total offense level is increased by three levels.

Respectfully submitted this 12th day of December, 2016.

> ARTHUR WYATT, Chief
> Narcotic and Dangerous Drug Section
> Criminal Division
> United States Department of Justice

By:  /s/
> Amanda N. Liskamm
> Adrian Rosales
> Trial Attorneys
> Andrea Goldbarg
> Marcia M. Henry
> Assistant U.S. Attorneys
> United States Department of Justice
> Criminal Division
> Narcotic and Dangerous Drug Section
> 145 N Street, Northeast
> East Wing, Second Floor
> Washington, D.C. 20530

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel

of record for the defendant, this 12th day of December 2016.

Respectfully submitted,

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section

By:     /s/
        Amanda N. Liskamm
        Adrian Rosales
        Trial Attorneys
        Andrea Goldbarg
        Marcia M. Henry
        Assistant U.S. Attorneys
        United States Department of Justice
        Criminal Division
        Narcotic and Dangerous Drug Section
        145 N Street, Northeast
        East Wing, Second Floor
        Washington, D.C. 20530

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | : | |
| | : | |
| *v.* | : | |
| | : | **Criminal No. 12-0184(RJL)** |
| ALFREDO BELTRÁN LEYVA, | : | |
| | : | |
| *Defendant.* | : | |

### DEFENDANT'S REPLY TO GOVERNMENT'S NOTICE RE: SENTENCING

DEFENDANT Alfredo Beltrán Leyva ("Beltrán Leyva"), by and through undersigned counsel, respectfully submits his Reply to Government's Notice Re: Sentencing (Doc. 209) and states as follows:

In an attempt to avoid a prolonged sentencing hearing, the government and the defense negotiated a stipulation concerning sentencing enhancements. On October 14, 2016, undersigned counsel emailed chambers and the government, stating "The parties have agreed to a stipulation concerning sentencing enhancements. I have attached a copy signed by my client and will present an original copy signed by the parties as soon as possible." At the status hearing on October 18, 2016, the Court rejected the proposed stipulation. The government now seeks to introduce the proposed stipulation at sentencing for two reasons.

First, the government argues that the acknowledgement to the stipulation read in part "I further agree that all statements made in these stipulations can be used against me should I attempt to withdraw my plea." Gov. Notice at 1. While Mr. Beltrán Leyva may have signed the stipulation, the government never ratified the stipulation by providing an executed copy to the defense and never filed with the Court. Thus, it is the defense's position that the stipulation is null and void because it was never accepted by the government. Additionally, the stipulation

also read that the "Parties submit these stipulation to [the] Court as a basis for the Court to

sentence the Defendant without an evidentiary hearing." Clearly, the sole reason for the

stipulation was to avoid an evidentiary hearing. When the Court rejected the stipulation, it *sua*

*sponte* found that an evidentiary hearing was necessary. Therefore, the intent of the stipulation

was nullified by the Court and the objective of the stipulation became an impossibility.

   Second, the government the government argues that the Court should not grant a

reduction for acceptance of responsibility at sentencing because "the Defendant is now

attempting to withdraw his guilty plea." Gov. Notice at 2. The government's argument is once

again unavailing. Mr. Beltrán Leyva's Motion to Reconsider Rule of Specialty and

Alternatively, to Limit Scope of Conspiracy states: "were the Court to grant this Motion, Mr.

Beltrán Leyva respectfully requests that the Court allow him to withdraw his guilty plea and

proceed to trial." Doc. 197 at 1. Any first-year law student would recognize Mr. Beltrán

Leyva's request as precatory language that has no force unless the Court were to grant the

Motion to Reconsider.

   The Court must also consider U.S.S.G. § 3E1.1. Cmt. 2, which states:

> This adjustment is not intended to apply to a defendant who puts the government
> to its burden of proof at trial by denying the essential factual elements of guilt, is
> convicted, and only then admits guilt and expresses remorse. Conviction by trial,
> however, does not automatically preclude a defendant from consideration for such
> a reduction. In rare situations a defendant may clearly demonstrate an acceptance
> of responsibility for his criminal conduct even though he exercises his
> constitutional right to a trial. This may occur, for example, where a defendant
> goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to
> make a constitutional challenge to a statute or a challenge to the applicability of a
> statute to his conduct). In each such instance, however, a determination that a
> defendant has accepted responsibility will be based primarily upon pretrial
> statements and conduct.

2

In the instant matter, Mr. Beltran Leyva is asking the Court to reconsider a purely legal issue and is not challenging factual elements of guilt. Thus, he should not be automatically precluded from consideration for such a reduction.

      **WHEREFORE,** for the foregoing reasons and any other that may become apparent to the Court, Mr. Beltran Leyva respectfully requests that the government's request be **DENIED**.

Dated: Washington, DC
      January 20, 2017            Respectfully submitted,

               **BALAREZO LAW**

               /s/

By:        _____
               A. Eduardo Balarezo, Esq.
               D.C. Bar # 462659
               400 Seventh Street, NW
               Suite 306
               Washington, DC  20004
               Tel: (202) 639-0999
               Fax: (202) 639-0899
               E-mail: aeb@balarezolaw.com

               *Counsel for Defendant Alfredo Beltrán Leyva*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 20th day of January 2017, I caused a true and correct copy of the foregoing Defendant's Reply to Government's Notice Re: Sentencing to be delivered via Electronic Case Filing to the parties in this case.

/s/
_____
A. Eduardo Balarezo

4

097

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal Case No. 12-184 (RJL) |
| | ) | |
| ALFREDO BELTRAN LEYVA | ) | |
| | ) | **FILED** |
| | ) | |
| Defendant. | ) | FEB - 6 2017 |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM ORDER
(February 5, 2017) [Dkts. #197, #202, #203, #209]

### I.

On February 23, 2016, Defendant Alfredo Beltran Leyva entered an unconditional plea of guilty to a one-count indictment charging conspiracy to distribute cocaine and methamphetamine.[1] Prior to pleading guilty, defendant had challenged the scope of the indictment, arguing that it included events that occurred in a time period for which he could not be prosecuted pursuant to the Rule of Specialty—that is, the doctrine that allows a foreign defendant to be prosecuted only for those charges that the foreign jurisdiction agreed to when approving the United States' extradition request. In a decision explained at the hearing of January 21, 2016, I denied defendant's request to limit the temporal scope of the charges because, in the section of the extradition agreement that summarized the conditions that would apply to the prosecution, Mexico

---

[1] The Court heard and granted a motion to dismiss the portion of the indictment that charged distribution of cocaine and marijuana.

expressly limited the controlled substances for which defendant could be prosecuted, but said nothing about the time period for which he could be prosecuted. Tr. of January 21, 2016 Hr'g 9:10-24 [Dkt. #197-1]. "[T]he Mexican government demonstrated that if it wanted to provide limitations in the extradition, it knew how to do so." *Id.* at 9:14-16. Citing some evidence that he did not have when the Court made that ruling, defendant now requests the Court reconsider this ruling and, only if I were to decide in his favor, allow him to withdraw his guilty plea. *See* Def.'s Mot.to Reconsider Mot. to Enforce Rule of Specialty or, Alternatively, to Limit Scope of Conspiracy [Dkt. #197]; Def.'s Reply 2-3 [Dkt. #223].

Unfortunately for defendant, he is trying to proceed in the wrong order. Because defendant's guilty plea is unconditional, he has waived his legal challenges to the indictment. *United States v. Miranda*, 780 F.3d 1185, 1188-92 (D.C. Cir. 2015) ("[A]ppellants entered unconditional guilty pleas, thereby waiving all challenges amenable to waiver." (citing *United States v. Delgado-Garcia*, 374 F.3d 1337, 1341 (D.C. Cir. 2004))). In order to renew that challenge, he would need to *first* withdraw his guilty plea. But defendant could not be clearer that he is not seeking to withdraw his guilty plea and then renew his legal challenge. He specifically rejected that interpretation of the situation when the government argued it. *See* Def.'s Reply to Gov't's Notice Re: Sentencing 2 [Dkt. #221]. Moreover, defendant specifically concedes one of the three criterion for granting a motion to withdraw a guilty plea: he admits the "factual elements of guilt." *Id.* at 3; *see United States v. Robinson*, 587 F.3d 1122, 1126-27, 1131-32 (D.C.

2

Cir. 2009) (holding defendants could not withdraw guilty pleas because, in part, they did not assert a viable claim of innocence).

There is an exception to the rule that a defendant waives his legal challenges when he enters an unconditional guilty plea, which exception the defendant has not invoked, but which the Court will nonetheless rule out in an abundance of caution. The law does not force a defendant to waive a challenge to a legal issue where an outcome in his favor would deprive the court of jurisdiction entirely or would otherwise implicate the defendant's due process right not to face a legal proceeding at all. *United States v. Delgado-Garcia*, 374 F.3d 1337, 1341 (D.C. Cir. 2004). But that is not the situation here. There is no question that defendant Beltran Leyva would have been rightfully facing a distribution charge for the time period he did not challenge even if he won his Rule of Specialty motion. Therefore, he does not qualify for the exception to the waiver; he waived his challenge to the Rule of Specialty decision when he entered his unconditional guilty plea.

Accordingly, it is hereby

**ORDERED** that the Defendant's Motion to Reconsider [Dkts. #197, #203] is **DENIED**.

## II.

Next, defendant questions whether the Government has been providing the *Brady* evidence to which he is entitled. Def.'s Fifth Mot. to Compel Disclosure of *Brady* Evidence [Dkt. #202]. He cites as his basis for this motion that the Government turned over evidence in advance of the sentencing hearing that might be exculpatory as to one of

3

100

the sentencing enhancements the Government is seeking. He suggests that the

Government should have turned this evidence over in the merits phase. But that

complaint is moot because, as explained above, defendant does not move to withdraw his

guilty plea. Moreover, the Government is correct when it counters that the evidence it

turned over was not relevant to the charged conduct of distribution, only to the sentencing

enhancement of using or directing violence. Defendant has not been prejudiced,

therefore, by getting the evidence before the hearing on the relevant enhancement.

Hence, there is no reason to suspect the Government is deviating from its obligation to

provide exculpatory evidence when it is relevant.

Accordingly, it is hereby

**ORDERED** that Defendant's Fifth Motion to Compel [Dkt. #202] is **DENIED**.

### III.

Finally, the Government files what it styles as a "notice" that it will rely at the

sentencing hearing upon an agreement defendant signed stipulating to facts that would

support certain sentencing enhancements in exchange for the Government agreeing not to

ask for other enhancements. Notice Re: Sentencing [Dkt. #209]. The Court construes

that notice as a motion and hereby **DENIES** the request to rely on the stipulation

agreement at sentencing.

Upon review of the stipulation agreement, which the parties provided to the Court

*in camera*, it is clear to the Court that the defendant signed it in reliance on the promise

of a benefit that the Government could not ultimately provide him because the stipulation

agreement was rejected by the Court. In the end I rejected the agreement because the

4

Government has a duty of candor to the Court at sentencing to present the defendant's actual offense conduct and relevant conduct as determined by its investigation. *See* U.S.S.G. § 6B1.4; *see also United States v. Ring*, 811 F. Supp. 2d 359, 365-67 (D.D.C. 2011) (discussing the reasons for not allowing the government to stipulate to certain offense or offender characteristics). The Court, in turn, has an obligation to make findings, based on that evidence, determining thereafter which enhancements properly apply to the ultimate calculation of the defendant's guideline range. *See id.* It would be a fundamental injustice to the defendant for the Court to rely on a stipulation of facts for which the defendant never received the benefit of the bargain. However, if the defendant at the sentencing hearing should seek to introduce evidence inconsistent with the signed stipulation, the Court would permit the government to use it, at a minimum, for impeachment purposes.

### IV.

In light of the resolution of the above legal issues, it is further

**ORDERED** that the Court will hear evidence as to the defendant's actual offense conduct and relevant conduct, and thereafter determine the appropriate sentence in this case, on February 14, 2017 at 10:00AM in Courtroom 18.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge

5

102

Case 1:12-cr-00184-RJL  Document 226  Filed 02/09/17  Page 1 of 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES of AMERICA, | : |
| | : |
| v. | : |
| | : Criminal No. 12-0184(RJL) |
| ALFREDO BELTRÁN LEYVA, | : |
| | : |
| *Defendant.* | : |

### DEFENDANT'S MOTION TO RECONSIDER DENIAL OF DEFENDANT'S MOTION TO RECONSIDER MOTION TO ENFORCE RULE OF SPECIALTY OR, ALTERNATIVELY, TO LIMIT SCOPE OF CONSPIRACY

DEFENDANT Alfredo Beltrán Leyva ("Beltrán Leyva"), by and through

undersigned counsel, respectfully moves this Honorable Court to reconsider its denial of his

Motion to Reconsider Defendant's Motion to enforce the Rule of Specialty, or Alternatively, to

Limit the Scope of the Charged Conspiracy. In support of this Motion, Mr. Beltrán Leyva states

as follows:

#### The Plea Did Not Constitute a Waiver

On February 6, 2017, the Court denied Mr. Beltrán Leyva's Motion to

Reconsider. (Doc. 225). The Court ruled that "[b]ecause defendant's guilty plea is

unconditional, he has waived his legal challenges to the indictment." *Id.* (citing *United States v.*

*Miranda*, 780 F.3d 1185, 1188-92 (D.C. Cir. 2015); *United States v. Delgado-Garcia*, 374 F.3d

1337, 1341 (D.C. Cir. 2004)). While it is correct that these cases stand for the proposition that

an unconditional plea waives legal challenges to the indictment, both cases also recognized two

exceptions.

Case 1:12-cr-00184-RJL   Document 226   Filed 02/09/17   Page 2 of 5

The Court of Appeals in *Delgado-Garcia* stated:

> Appellants waived all of these claims by pleading guilty unconditionally. *Unconditional guilty pleas that are knowing and intelligent* – and there is no claim that appellants' pleas were otherwise – waive the pleading defendants' claims of error on appeal, even constitutional claims. *There are two recognized exceptions to this rule. The first is the defendant's claimed right "not to be haled into court at all;" for example, a claim that the charged offense violates the double jeopardy clause.*

*Delgado-Garcia*, 374 F.3d at 1341 (emphasis added) (citations omitted). Mr. Beltrán Leyva's argument as set forth in his previous relevant filings is that the Mexican Ministry of Foreign Affairs' (MMFA) Ruling can only reasonably be understood to allow the extradition of Mr. Beltrán Leyva solely for the acts alleged by the United States in the extradition request, which took place on September 2, 2010, and which involved cocaine and methamphetamine.

The MMFA ruled as such because it considered that Mexico was already prosecuting Mr. Beltrán Leyva for offenses from 1996 to 2008 and his prosecution in the United States for offenses prior to 2008 violated the Doctrine of *non bis in idem*. (Doc. 197). The international principle of *non bis in idem* is a term used to describe double-jeopardy provisions in international instruments. *See, e.g., Sindona v. Grant*, 619 F.2d 167, 177–78 (2d Cir. 1980).

Because Mr. Beltrán Leyva pled guilty to "the indictment," which charged a narcotics conspiracy from 2000 to 2012, and the MMFA ruled that he could not be prosecuted for a narcotics conspiracy from 1996 to 2008, he cannot be haled into court on charges from 1996 to 2008 because charges for conduct during that time span violates the doctrine or *non bis in idem* or double jeopardy.

2

As the Court of Appeals in *Delgado-Garcia* also stated:

> The second [exception] is that the court below lacked subject-matter jurisdiction
> over the case, as a claim of lack of subject-matter jurisdiction, "because it
> involves a court's power to hear a case, can never be forfeited or waived."

*Delgado-Garcia*, 374 F.3d at 1341 (emphasis added) (citations omitted).  Similalry, in the instant

case, the Court ruled that

> There is an exception to the rule that a defendant waives his legal challenges
> when he enters an unconditional guilty plea, which exception the defendant has
> not invoked, but which the Court will nonetheless rule out in an abundance of
> caution.  The law does not force a defendant to waive a challenge to a legal issue
> where an outcome in his favor would deprive the court of jurisdiction entirely or
> would otherwise implicate the defendant's due process right not to face legal
> proceedings at all.  But that is not the situation here.  *There is no question that
> defendant Beltran Leyva would have been rightfully facing a distribution charge
> for the time period he did not challenge even if he won his Rule of Specialty
> Motion.*

Memorandum Order at 3. (emphasis added) (citations omitted).  With all due respect to

the Court, the real issue is not whether Mr. Beltrán Leyva would have been properly

before this Court for the conduct from 2008 to 2012, but rather that he is not properly

before the Court for the conduct from 2000 to 2008 and therefore this Court does not

have subject matter jurisdiction for criminal conduct for that time frame.

Finally, assuming without conceding that the rule that an unconditional guilty plea

waives a defendant's claims of error on appeal, the rule does not apply here.  Mr. Beltrán Leyva

is not appealing any issue yet.  In fact, no judgment has been entered.  He is simply asking the

Court to reconsider its denial of his Motion to Enforce Rule of Specialty and, Alternatively, to

Limit Scope of Conspiracy.  A motion for reconsideration provides the court with an opportunity

to correct "manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp.*

*v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  A court has discretion whether to grant or deny a

3

motion for reconsideration. *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988). There are three circumstances in which a court may appropriately grant a motion for reconsideration: 1) where the court made a manifest error of fact or law; 2) where there is newly discovered evidence; and 3) where there has been a change in the law. *Renfro v. City of Emporia*, 732 F.Supp. 1116, 1117 (D. Kan. 1990). As argued previously, Mr. Beltrán Leyva submits that the Court's initial denial of his Motion constituted a manifest error of fact.

   **WHEREFORE**, for all the foregoing reasons and any that may become apparent to the Court, Mr. Beltrán Leyva respectfully requests that this motion be **GRANTED**.

Dated: Washington, DC                  Respectfully submitted,
          February 9, 2017

                                        **BALAREZO LAW**

                                              /s/
                          By:          _____
                                        A. Eduardo Balarezo
                                        Bar No. 462659
                                        400 Seventh Street, N.W.
                                        Suite 306
                                        Washington, D.C. 20004
                                        (202) 639-0999 (tel)
                                        (202) 639-0899 (fax)
                                        filings@balarezolaw.com

                                        *Counsel for Alfredo Beltrán Leyva*

4

Case 1:12-cr-00184-RJL   Document 226   Filed 02/09/17   Page 5 of 5

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of February 2017, I caused a true and correct copy of the foregoing Defendant's Motion to Reconsider Denial of Defendant's Motion to Reconsider Motion to Enforce Rule of Specialty or, Alternatively, to Limit Scope of Conspiracy to be delivered via Electronic Case Filing to the Parties in this case.

/s/

_____

A. Eduardo Balarezo

5

107

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | : | |
| | : | |
| *v.* | : | |
| | : | **Criminal No. 12-0184(RJL)** |
| ALFREDO BELTRÁN LEYVA, | : | |
| | : | |
| *Defendant.* | : | |

## MOTION TO WITHDRAW GUILTY PLEA

Defendant Alfredo Beltrán Leyva ("Beltrán Leyva"), by and through undersigned counsel, respectfully submits this Motion to Withdraw Guilty Plea and states as follows:

## BACKGROUND

Prior to the entry of Mr. Beltrán Leyva's guilty plea, Mr. Beltrán Leyva expressed a clear desire to have a trial and actively litigated various issues, including the application of the Rule of Specialty and the scope of the charges he faced. *See Docs.* 59, 62, 80, 84, 139, 141. Trial was scheduled for February 16, 2016. The week before trial, Mr. Beltrán Leyva unexpectedly informed counsel that he wished to plead guilty. As a result, the Court vacated the trial date. On February 23, 2016, Mr. Beltrán Leyva appeared before the Court and entered an unconditional guilty plea.

Mr. Beltrán Leyva now moves the Court to withdraw his guilty plea.

## ARGUMENT

A defendant may withdraw a plea of guilty after the Court accepts the plea, but before it imposes sentence if the defendant can show a fair and just reason for requesting the withdrawal. *See United States v. West*, 392 F.3d 450, 455 (D.C. Cir. 2004); *United States v.*

*Barker,* 514 F.2d 208, 219 (D.C. Cir.1975); Fed. R. Crim. P. 11(d)(2)(B).  Withdrawal is to be
liberally granted, but it is not a matter of right.  *See United States v. Shah,* 263 F. Supp. 2d 10, 20
(D.D.C. 2003), *aff'd and remanded,* 453 F.3d 520 (D.C. Cir. 2006) (citing *United States v. Ford,*
993 F.2d 249, 251 (D.C. Cir.1993).

      The Court of Appeals considers "three factors in reviewing denials of motions to
withdraw: '(1) whether the defendant has asserted a viable claim of innocence; (2) whether the
delay between the guilty plea and the motion to withdraw has substantially prejudiced the
government's ability to prosecute the case; and (3) whether the guilty plea was somehow
tainted.'" *West,* 392 F.3d at 455.  The District Court has broad discretion is reviewing a motion
to withdraw a guilty plea.  *See. e.g., United States v. Hanson,* 339 F.3d 983 (D.C. Cir. 2003).

### A.      The Guilty Plea Was Tainted

      If a defendant's guilty plea is not equally voluntary and knowing, it has been
obtained in violation of due process and is therefore void.  Moreover, because a guilty plea is an
admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the
defendant possesses an understanding of the law in relation to the facts.  *See McCarthy v. United
States,* 394 U.S. 459, 466 (1969).  Mr. Beltrán Leyva's guilty plea was not knowing or voluntary
and should be voided.

### The Plea Was Not Knowing

      Rule 11(b) of the Federal Rules of Criminal Procedure sets forth the *procedure
that the Court must follow* in considering and accepting a guilty plea.  The Rule states:

    (b) Considering and Accepting a Guilty or Nolo Contendere Plea.

2

109

(1) *Advising and Questioning the Defendant.* Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, *the court must inform the defendant of, and determine that the defendant understands, the following:*

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

(B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

(C) the right to a jury trial;

(D) the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. §3553(a);

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

(O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Fed. R. Crim. P. 11(b)(1) (emphasis added).

3

During the plea colloquy held on February 23, 2016, the Court did not fully follow the procedures that the Rule states must be followed. For example, the Court failed to inform Mr. Beltrán Leyva that he had the right to plead not guilty, or having already so pleaded, to persist in that plea; that the Court may order any applicable forfeiture;[1] that the court has the authority to order restitution; and that in determining a sentence, the court has an obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. §3553(a). *See generally* Plea Tr. If the plea colloquy was not conducted in "substantial compliance" with Rule 11, the defendant should "almost always" be permitted to withdraw the plea. *See Shah*, 263 F. Supp. 2d at 21 (citing *United States v. Ford*, 993 F.2d 249, 251 (D.C. Cir. 1993)).

But for the Court's failure to follow the mandate of Rule 11, Mr. Beltrán Leyva would not have pled guilty. For example, the Court has ruled that Mr. Beltrán Leyva's unconditional plea operated as a waiver of his right to collaterally attack the indictment on Rule of Specialty grounds.[2] Doc. 225. Although Mr. Beltrán Leyva pled guilty without a plea agreement, the Court failed to inform him that by pleading guilty he may be waiving the right to appeal or to collaterally attack the sentence. Additionally, had the Court advised him that he did not have to plead guilty, Mr. Beltrán Leyva may have reconsidered notwithstanding the issues raised below.

---

[1] The government subsequently announced that it was seeking a forfeiture order in the amount of $10,000,000,000.00. Doc. 182.

[2] In deciding to plead guilty, Mr. Beltrán Leyva also relied on counsel's advice, that based on counsel's understanding of the law, Mr. Beltrán Leyva would be able to appeal the Court's denial of his Motion to Enforce Rule of Specialty.

4

Without the Court conducting a proper Rule 11 inquiry, Mr. Beltrán Leyva did not have a full knowledge and understanding of his rights and any waiver of those rights prior to accepting guilt.

### The Plea Was Not Voluntary

Although Mr. Beltrán Leyva answered "no" when the Court inquired whether anyone had threatened or forced him to plead guilty, Plea Tr. at 13:17 – 21, Mr. Beltrán Leyva was in fact under severe duress because of a message he had received mere days prior to unexpectedly announcing that he wanted to plead guilty. The message was that his family would be harmed if he went to trial. Mr. Beltrán Leyva will submit under seal a declaration detailing the threats to his family. It will be evident to the Court that Mr. Beltrán Leyva's plea was not voluntary upon review of the declaration.

### B.    Mr. Beltrán Leyva Asserts a Viable Claim of Innocence

A defendant cannot satisfy the claim of legal innocence factor by a mere general denial, "he must affirmatively advance an objectively reasonable argument that he is innocent." *United States v. Cray*, 47 F.3d 1203, 1209 (D.C. Cir. 1995). Here, Mr. Beltrán Leyva entered a guilty plea to the indictment charging him with engaging in a narcotics conspiracy from 2000 to 2012. As argued in his various motions concerning the Rule of Specialty, Mr. Beltrán Leyva contends that Mexico authorized his extradition solely with respect to conduct for the time frame from January 28, 2008 to the date of the indictment and only for the offenses that took place in Washington State in September 2010.

With respect to this claim of innocence, Mr. Beltrán Leyva submits that during the plea colloquy with the Court, he was clear that his participation in the charged conspiracy

5

involved his conduct with this brother Arturo.  For example, when the Court inquired whether he

participated in a conspiracy to import cocaine into the United States, Mr. Beltrán Leyva

responded, "Yes, your honor.  I would help my brother, Artura.[sic]"  Plea Tr. 18:8.  When the

Court inquired about the financing of shipments, Mr. Beltrán Leyva answered, "I would just help

my brother, Artura[sic], sell it in Culiacan, with the knowledge that it would get to the United

States." *Id.* at 19:19.  Mr. Beltrán Leyva's brother, Arturo, was killed my Mexican Marines in

December 2009.  Mr. Beltrán Leyva never accepted the government's factual proffer.  Therefore,

Mr. Beltrán Leyva's acceptance of participation in a conspiracy prior to December 2009 cannot

factually support a guilty plea of participating in a conspiracy from 2000 to 2012 and certainly

not the September 2010 conduct for which he argues Mexico authorized extradition.

### C.   The Delay Has Not Substantially Prejudiced the Government's Ability to Prosecute the Case

As the Court is aware, the overwhelming majority of the government's evidence

against Mr. Beltrán Leyva consisted of the testimony of government cooperators and the

testimony of a few law enforcement witnesses.  Upon information and belief, all the cooperators

are still detained in the United States and would be available to be called as witnesses for the

defense.  With respect to the law enforcement witnesses, if they are not available for some

legitimate reason, Mr. Beltrán Leyva would be amenable to stipulating as to their testimony.  The

defense also believes that the investigating agents in this case are still active and available to

assist the prosecution.

6

WHEREFORE, for the foregoing reasons and any others that may become

apparent to the Court, Defendant respectfully request that this motion be **GRANTED**.

Dated: Washington, DC
      February 9, 2017              Respectfully submitted,

                                   **BALAREZO LAW**

                                   /s/

By:      _____
                        A. Eduardo Balarezo
                        D.C. Bar # 462659
                        400 Seventh Street, NW
                        Suite 306
                        Washington, DC  20004
                        Tel: (202) 639-0999
                        Fax: (202) 639-0899
                        E-mail: acb@balarezolaw.com

                        *Counsel for Defendant Alfredo Beltrán Leyva*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of February 2017, I caused a true and correct copy of the foregoing Defendant's Motion to Withdraw Guilty Plea to be served upon the Parties via Electronic Case Filing.

/s/
_____
A. Eduardo Balarezo

8

115

Case 1:12-cr-00184-RJL   Document 236   Filed 02/13/17   Page 1 of 5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal Case No. 12-184 (RJL) |
| | ) | |
| ALFREDO BELTRAN LEYVA | ) | |
| | ) | |
| | ) | **FILED** |
| Defendant. | ) | |
| | | FEB 1 3 2017 |

**MEMORANDUM ORDER**
(February _1 3_, 2017) [Dkts. #226 & #227]

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Defendant Beltran Leyva has filed two consecutive motions, the first asking the Court to reconsider its ruling that the defendant waived his challenge to the Court's pretrial rulings when he entered an unconditional plea of guilty [Dkt. #226], and the second asking to withdraw the guilty plea [Dkt. #227].

The Court **DENIES** defendant's request [Dkt. #226] that the Court reconsider its denial of the Motion for Reconsideration. My reasons are the same as stated in my original decision [Dkt. #225]. By entering a guilty plea, defendant submitted to personal jurisdiction before the Court despite his prior challenge to the temporal scope of the indictment. Though there is a procedure for preserving a legal challenge in a guilty plea, *see* Fed. R. of Crim. P. 11(a)(2), defendant did not even attempt to exercise that option and even if he had, the Government has indicated it would not have approved it. In sum,

116

while defendant's guilty plea remains in place, he cannot challenge that the court has personal jurisdiction over him.

Defendant contends that he did not have to waive this particular challenge when he entered a guilty plea because his Rule of Specialty challenge qualifies for one of the two exceptions described in *United States v. Delgado-Garcia*, 374 F.3d 1337 (D.C. Cir. 2004). I explained why that was not the case in my original decision and will therefore only sparingly reiterate here why defendant is mistaken. Defendant's Rule of Specialty challenge sought to limit the temporal scope of the *evidence* that the Government could use to prove the elements of its conspiracy charge.[1] Such an evidentiary challenge does not go to the Court's jurisdiction because even if defendant won the challenge he "would still need to come to court to answer the charge brought against [him]." *United States v. Miranda*, 780 F.3d 1185, 1190 (D.C. Cir. 2015) (quotation marks omitted). Accordingly, defendant has waived his Rule of Specialty challenge.

The Court also **DENIES** defendant's motion to withdraw his guilty plea [Dkt. #227]. The Government's brief in opposition to the motion [Dkt. #233] accurately and succinctly explains the rationale for this outcome, despite having been prepared in very short order. The Court sees no need to reinvent the wheel here, but I will be explicit in noting the following grounds for my decision: I have weighed the three factors our Circuit has announced for whether it would be fair and just to allow defendant to

---

[1] Note also that the nature of this goal undermines the merits of defendant's Rule of Specialty challenge. *See United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 206 (D.C. Cir. 2013) (The Doctrine of Specialty "governs prosecutions, not evidence.").

2

withdraw his guilty plea. Those three factors are (1) whether the defendant has asserted a

viable claim of innocence; (2) whether the delay between the guilty plea and the motion

to withdraw has substantially prejudiced the government's ability to prosecute the case;

and (3) whether the guilty plea was somehow tainted. *United States v. West*, 392 F.3d

450, 455 (D.C. Cir. 2004).

The first factor weighs strongly against defendant. He has admitted facts under

oath in several contexts which make his claim of innocence utterly improbable. First,

defendant admits he is guilty of the elements of the offense if the Government is allowed

to use facts from before 2008 to support the conspiracy charge. As I have already ruled,

the Government is allowed to use such facts. *See* Tr. of Jan. 21, 2016 Hr'g 9:10-24 [Dkt.

#197-1]; *cf. supra* n.1. But even if defendant were to prevail on his legal theory, the

Court cannot credit his claim to innocence after 2008 because he admitted to being

responsible for the activity of the Beltran Leyva drug trafficking organization from 2000

to 2012 in a stipulation with the Government that he knew could be used against him

should he attempt to withdraw his guilty plea. *See* Stipulation as to Sentencing

Enhancements ¶¶ 1-4 & p.6 (filed *in camera* with the Court). Although the Court has

refused to allow the Government to rely exclusively on this stipulation at sentencing

because it was not fairly bargained for in that context, defendant's unequivocal waiver of

his right to challenge the use of the stipulation in this context makes it unassailable that

he has no viable claim to innocence and could not prevail if his guilty plea were

3

withdrawn. For this reason, and the several other that the Government explains in its brief, the Court finds the first factor weighs strongly against withdrawal.

The Government did not weigh in on the second factor—whether it would be prejudiced in prosecuting the case at this point—and so I will assume for the purposes of this decision that the prejudice would be only slight.

Finally, as to the third factor, defendant fails to convince the Court that his guilty plea was tainted. Defendant's objections to the Rule 11 colloquy are technical at best; there is no serious contention that the Court was not in "substantial compliance" with Rule 11 or that defendant did not understand the charge against him or the consequences of pleading guilty. *United States v. Ford*, 993 F.2d 249, 251 (D.C. Cir. 1993); *see also United States v. Ahn*, 231 F.3d 26, 33-35 (D.C. Cir. 2000). Moreover, defendant did not express any reservation in admitting the essential elements of the charge: that he was part of the conspiracy to distribute controlled substances between 2000 and 2012. *See* Tr. of Feb. 23, 2016 Hr'g 17:23-18:22 [Dkt. #175]. Defendant's contention that he did not understand he had the option to plead "not guilty" is farcical considering that he had persisted with a plea of not guilty up until that moment and that the Court explicitly explained defendant's right to go to trial. As to the defendant's other arguments that the Rule 11 colloquy was deficient, I adopt the Government's refutation.

Defendant advances one final theory of taint: that the attorney for a third party told the defendant that his family would be in danger if he went to trial. Even though such a threat could, in theory, constitute a legally sufficient taint, the Court cannot allow this

4

119

claim to carry much weight in the overall analysis here because this is the first time anyone, including defendant's own attorney, is hearing of this threat, despite an extremely careful protective procedure that has governed this case. Moreover, when the Court has gone through the pains it has in this case to protect the defendant and defendant's family, it must be entitled to rely in all but the most extenuating of circumstances on the defendant's assertion to the Court, under oath, that he was not coerced into pleading guilty. Looking at the balance of evidence, including defendant's litany of last-minute reasons to delay sentencing, I conclude that this attempt to withdraw his plea is, in the final analysis, is a last-minute change of heart based not on new information regarding a threat, but on his belief that the sentencing might not go as he had hoped when he decided to plead guilty. Considering all three factors together, it would not be fair or just to allow defendant to withdraw his plea of guilty.

As such, consistent with the Minute Order of February 10, 2017, the Court **DENIES** defendant's Motion for Reconsideration [#226] and his Motion to Withdraw Plea of Guilty [#227] and will proceed with sentencing as scheduled.

RICHARD J. LEON
United States District Judge

5

120

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 12-CR-184 (RJL) |
| v. | |
| ALFREDO BELTRAN LEYVA, | |
| Defendant. | |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM
## IN AID OF SENTENCING

**I.    Introduction**

The Government respectfully submits this Supplemental Memorandum in Aid of Sentencing in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines Manual, § 6A1.2 (U.S. Sentencing Comm'n 2015). The Government seeks a sentence that is sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a), and for the reasons set forth below believes a Guidelines sentence of life imprisonment is reasonable. Sentencing is scheduled for April 5, 2017 at 2:30 p.m.

**II.    Background**

    A.    Procedural History

On February 23, 2016, the Defendant pleaded guilty to the sole count of the Indictment, conspiracy to import narcotics into the United States, but only as it related to cocaine and methamphetamine. Sentencing was originally scheduled for June 6, 2016. After repeated requests by the Defendant to continue the sentencing hearing for a variety of reasons, on February 9, 2017, the Defendant filed a Motion to Withdraw Guilty Plea claiming his plea was tainted (See Docket

1

Entry No. 227). On February 10, 2017, the Court denied the Defendant's Motion as the Defendant had no viable claim of innocence and his plea was not tainted.

On February 23, 2017 and March 1, 2017, the Court conducted evidentiary hearings as to the applicable sentencing enhancements in this case. On March 8, 2017, the Court determined that the following enhancements applied in this case:

| | | |
|---|---|---|
| Base Offense Level: | 38 | *Over 450 kilograms of cocaine* |
| Organizer/Leader: | +4 | *U.S.S.G. § 3B1.1(a)* |
| Weapons: | +2 | *U.S.S.G. § 2D1.1(b)(1)* |
| Violence: | +2 | *U.S.S.G. § 2D1.1(b)(2)* |
| Bribery: | +2 | *U.S.S.G. § 2D1.1(b)(11)* |
| Importation: | +2 | *U.S.S.G. § 2D1.1(b)(15)(C)* |
| Total Offense Level: | 50[1] | *Life* |

At the March 8, 2017 hearing, the Court also heard argument as to the forfeiture amount of $10,000,000,000 requested by the Government. The Court ordered that the parties' supplemental sentencing memorandums were to be filed by March 24, 2017, and the sentencing hearing is set for April 5, 2017 at 2:30pm.

## III.    Applicable Sentencing Law

### A.    Acceptance of Responsibility

The Defendant is not entitled to a three-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Indeed, the law is clearly settled in this Circuit that a defendant who pleads guilty, and then moves to withdraw his guilty plea is <u>not</u> entitled to acceptance of

---

[1]    The Court did note that the Government presented evidence at the evidentiary hearings related to the Defendant's use of airplanes and methamphetamine laboratories (U.S.S.G. § 2D1.1(b)(3) and U.S.S.G. § 2D1.1(b)(5)), however, as the Court has already determined an offense level of 50, it was not necessary for the Court to make any further factual findings.

responsibility. In <u>United States v. Berkeley</u>, 567 F.3d 703 (D.C. Cir. 2009), the defendant initially agreed to plead guilty to distribution of cocaine base, but before sentencing moved to withdraw his plea. The Court in <u>Berkeley</u> denied the defendant's motion to withdraw his plea and during sentencing, determined that the defendant was ineligible for a reduction for acceptance of responsibility. 567 F.3d at 711. The Circuit affirmed the District Court's conclusion that the defendant's "motion to withdraw a guilty plea in and of itself is a statement that [the defendant] did not wish to let the guilty plea stand, and therefore, he didn't wish to accept responsibility for this offense." <u>Id.</u>

Likewise here, the defendant plead guilty on February 23, 2016 and almost one year later, on February 10, 2017, the Defendant filed a motion to withdraw his guilty plea. The Defendant's motion to withdraw his guilty plea is likewise in and of itself a statement that the defendant does not wish to let his guilty plea stand. Thus, he is not accepting responsibility for his offense and is not entitled to a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

Further, the defendant has both falsely denied and frivolously contested the relevant conduct in this case (including his leadership role, his use of weapons and violence, the bribes he paid and his importation of drugs into the United States). All of this relevant conduct was proven by a preponderance of evidence at the multiple sentencing evidentiary hearings. Additionally, the Court is aware of other corroborative statements that make the defendant's denials of the relevant conduct patently false. As such, the defendant is not entitled to acceptance of responsibility. <u>See</u> <u>United States v. Saani</u>, 650 F.3d 761, 767-68 (D.C. Cir. 2011) (finding that a district court may consider whether the defendant truthfully admitted or falsely denied or frivolously contested, ay additional relevant conduct for which the defendant is accountable when determining eligibility for a reduction for acceptance of responsibility); <u>see also</u> <u>United States v. Rashad</u>, 396 F.3d 398,

3

403 (D.C. Cir. 2005) (holding that reduction for acceptance of responsibility is directed at the defendant's affirmative recognition for his own conduct, as determined by the court); see also United States v. Webb, 255 F.3d 890, 902-03 (D.C. Cir. 2001) (finding that defendant not entitled to reduction for acceptance of responsibility where, even after his conviction, defendant failed to either admit his guilt or express remorse).

For these reasons, the Defendant is not entitled to the three-level reduction for acceptance of responsibility.[2]

B.    18 U.S.C. 3553(a) Factors Warrant a Life Sentence

The United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") still provide strong guidance to the Court in light of United States v. Booker, 543 U.S. 220 (2005).  Although Booker held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. Booker, 543 U.S. at 264.  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" - that "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 39 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the applicable Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)).

---

[2]     Pursuant to 3E1.1(b), the third point is only applicable "upon motion of the [G]overnment." The Government is not moving for the third point in this case based on the defendant's motion to withdraw his plea.

4

Gall, 552 U.S. at 50.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within the Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," Rita v. United States, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," Gall, 552 U.S. at 46. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 51.

For the reasons set forth below, a sentence within the applicable Guidelines range of life imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing.

5

Specifically, these factors are most important: the nature and circumstances of the offense, the need for the sentence to reflect the severity of the offense, the need for adequate deterrence, and the need to protect the public.

### 1.    Nature and Circumstances of the Offense, and Need for the Sentence to Reflect the Severity of the Offense

The incredibly serious nature and circumstances of this offense clearly warrant a guideline sentence of life imprisonment. Indeed, the guidelines do not even contemplate the extent of this Defendant's culpability in that the Defendant's offense level does not even fall on the Sentencing Table – a testament to the severity of the offense. Indeed, the Defendant, himself, cites how serious and dangerous his conviction is considered. (See Def. Sent. Memo at 19).   It is not an overstatement to highlight that organized international drug trafficking on the scale perpetuated by the Defendant poses a grave and serious threat to the national interest of this nation as well as other countries in the region. The toll that the drug trafficking industry takes on the United States each year is astronomical. Indeed, cocaine and methamphetamine abuse is the fuel for an extraordinary amount of violence in this country, as well as the destruction of families, lives and communities.

Measured against this backdrop, it is clear that the Defendant's illegal activities constitute a most egregious form of criminal conduct. The evidence brought out at the sentencing evidentiary hearings shows that the Defendant's activities of violence, bribery and major narcotics trafficking were at an unprecedented scale for over a decade. This type of serious criminal conduct warrants a guideline sentence in this case. Thus, the serious nature and circumstances of this offense necessitates a sentence of life imprisonment.

### 2.    Adequate Deterrence

Given the adverse impact that drug trafficking has on society, it is important that the

6

Court impose a sentence that deters others from undermining the rule of law. Further, while this prosecution has incapacitated some of the narcotics trafficking through Mexico, importation of controlled substances from Mexico and the region into the United States still occurs. The recommended sentence would provide a critical general deterrence to other narcotics trafficking leaders that their participation in narcotics importation into the United States will result in substantial sentences.

### 3.    Protect the Public from Further Crimes of the Defendant

Prior to his arrest, the Defendant was a leader of a DTO responsible for trafficking significant quantities of cocaine, methamphetamine and marijuana to the United States. A life sentence is the only way to protect the public from further crimes committed by the Defendant. Anything short of a life sentence would lead to the Defendant's deportation back to Mexico, where his criminal activity will only continue. As previously noted, the Defendant committed his crimes while he resided in Mexico and he continued to orchestrate shipments of drugs into the United States while he was incarcerated in Mexico. The Defendant's power and influence in Mexico over public officials and his co-conspirators was a result of nearly three decades of drug trafficking.   Despite the Defendant's extradition to the United States, his DTO continues to operate through the DTO's remaining leadership which includes members of the Defendant's family still residing in Mexico. As a result, any possibility of the Defendant's return to Mexico will result in a return to his criminal activities.

### 4.    The Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) articulates "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6) (emphasis added). By its terms, the statute requires a specific evaluation of the

7

127

compared defendants' records and conduct. When determining whether a sentence creates an unwarranted disparity, the Court should also consider, inter alia, a defendant's acceptance of responsibility, the nature and extent of a defendant's participation in the criminal activity, a defendant's criminal history, and whether and to what extent a defendant cooperated. See, e.g., United States v. Mejia, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in sentences was "entirely explained" by co-defendant's acceptance of responsibility and thus any disparity resulting from defendant's "harsher" sentence was not unwarranted). A defendant is only entitled to "a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result." United States v. Carrasco-De-Jesus, 589 F.3d 22, 29 (1st Cir. 2009).

The Defendant argues that he should not receive a life sentence because there are other narcotics traffickers who have gone to trial and received non-life sentences. (See Def. Sent. Memo at 22-23). The Defendant's reliance on these other cases is misplaced for several reasons. First, the Defendant attempts to argue that since these other defendants actually went to trial and the Defendant in this case did not go to trial, he should receive a lesser sentence than the other cited defendants. The Defendant completely ignores that he plead guilty on the eve of trial – forcing the Government to prepare their case for trial in its entirety. Additionally, it was not until after the Government proffered all of the evidence it would present at trial (including naming the cooperating witnesses and what their anticipated testimony will be), that the Defendant decided to plead guilty. Further, the Defendant's argument completely ignores the amount of litigation in this case – primarily by the Defendant. Indeed, the Defendant filed twenty-two (22) motions before trial, and vigorously fought the Government's Motion for a Complex Case Designation and Protective Order. Further, even after his guilty plea, the Defendant filed an additional nine (9) motions, including his motion to withdraw his guilty plea. Thus, the Defendant's comparison to defendants

8

who went to trial is flawed.

Further, the cases the Defendant cited are not comparable to the Defendant in this case. Indeed, the Defendant cites seven (7) cases in which the defendants went to trial – all of who were Colombians. The Government notes for the Court that these defendants were not eligible for life sentences as a condition of these defendants' extradition from Colombia was that the United States Government promised the Government of Colombia that it would not seek a sentence of life imprisonment in those cases. Therefore, the Defendant's comparison of his case to these other cases is again misplaced, as there was no such agreement with the Government of Mexico in relation to the Defendant's extradition.

Additionally, the cases that the Defendant cites do not involve similarly situated defendants and are factually distinct from the instant case. For example, in <u>United States v. Juan del Cid Morales</u>, 06-cr-248 (JDB) (D.D.C. 2008) the defendant was a former police officer who was charged with trafficking one load of 1,500 kilograms of cocaine. This is clearly distinct from the instant case where the Defendant plead guilty to trafficking tonnage loads to the United States for over a decade. Further, in light of this Court's findings with respect to the applicable sentencing enhancements (such as his leadership within the Beltran Leyva Organization, his use of weapons, violence, and bribery to further his drug trafficking organization), the instant case is factually distinct from <u>del Cid</u>, and the Defendant in this case is deserving of a far more significant sentence.

Likewise, in <u>United States v. Samuel Santander Lopesierra</u>, 02-cr-392 (RJL) (D.D.C. 2007), the defendant was convicted of participating in five loads totaling just over 2,000 kilograms of cocaine. Again, that defendant is factually distinct from the Defendant in this case – one of the leaders of the Beltran Leyva Organization, responsible for trafficking tonnage quantities of cocaine into the United States. Indeed, just the seized loads of cocaine that the Government intended to

9

introduce at trial in the instant case totaled approximately 50,000 kilograms. Further, as the Court heard during the sentencing evidentiary hearings, the Defendant was sending caravans of planes loaded full of cocaine to the United States border in order to be trafficked to multiple cities inside the United States. These caravans were carrying between 2,100 and 7,000 kilograms per week.

The Defendant also cites the cases of United States v. Omar Garcia Varela, 99-cr-804 (S.D. Fl. 2011) and United States v. Erminso Cuevas Cabrera, 04-cr-446 (D.D.C. 2010). Again, the Defendant fails to see that his case is factually distinct from Garcia Varela and Cuevas Cabrera. Namely, Garcia Varela was a sicario who worked for the head of a drug trafficking organization. Therefore Garcia Varela was essentially equivalent to "Wacho" and "Rayito" in our current case – the head sicarios for the Defendant. Thus, any comparison to Garcia Varela's case is improper. Likewise, Cuevas Cabrera was in charge of laboratories where he had approximately 80 workers. Conversely, as the Court heard during the sentencing evidentiary hearings, the Defendant was in charge of multiple methamphetamine laboratories, had hundreds of employees and was responsible for all of the drugs being trafficked from Culiacan, Mexico to the United States for his organization. Therefore, the Defendant's reliance on these cases is woefully misplaced.

Interestingly, the Defendant ignores cases in this district that exemplify that a defendant of his stature is deserving of a life sentence. For example, in United States v. Cano Flores, 796 F.3d 83 (D.C. Cir. 2015), a local, border plaza boss working for the Gulf Cartel received a sentence of 35 years. Indeed, Cano Flores was not the leader of the Gulf Cartel, but rather of a small plaza controlled by the Gulf Cartel, and therefore, someone much lower in terms of culpability than the Defendant. The Defendant here is incredibly more culpable in that he was a leader of a major drug trafficking organization responsible for moving hundreds of thousands of kilograms of drugs into the United States. As evidenced during the evidentiary hearings, the Defendant also employed the

use of weapons, violence and bribery in order to accomplish his goals of trafficking this poison
onto the streets here in the United States. For that, he is deserving of a life sentence.

## IV.    **Conclusion**

For the foregoing reasons, the Government respectfully requests that the Court sentence
the Defendant to a term of imprisonment within the applicable Sentencing Guideline range of life
imprisonment. The Government submits that this sentence is sufficient, but not greater than
necessary, to punish the Defendant for his crime, promote respect for the law, deter the Defendant
and others from committing similar serious crimes in the future, and protect the public.

Respectfully submitted this 24th day of March, 2017.

> ARTHUR WYATT, Chief
> Narcotic and Dangerous Drug Section
> Criminal Division
> United States Department of Justice
>
> By:    /s/ _____
>
> Amanda N. Liskamm
> Adrian Rosales
> Trial Attorneys
> Andrea Goldbarg
> Marcia M. Henry
> Assistant United States Attorneys
> United States Department of Justice
> Narcotic and Dangerous Drug Section
> 145 N Street, Northeast
> East Wing, Second Floor
> Washington, D.C. 20530

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the defendant, this 24th day of March 2017.

Respectfully submitted,

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section

By:       /s/

Amanda N. Liskamm
Adrian Rosales
Trial Attorneys
Andrea Goldbarg
Marcia M. Henry
Assistant United States Attorneys
Narcotic and Dangerous Drug Section
U.S. Department of Justice
145 N Street NE
Second Floor, East Wing
Washington, DC 20530

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES of AMERICA,** | : |
| | : |
| **v.** | :     **Criminal No.12-0184(RJL)** |
| | :     **Sentencing: April 5, 2017** |
| **ALFREDO BELTRÁN LEYVA,** | : |
| | : |
| *Defendant.* | : |

## DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

Defendant Alfredo Beltrán Leyva ("Beltrán Leyva), by and through his undersigned counsel, respectfully submits this Supplemental Memorandum in Aid of Sentencing. Mr. Beltrán Leyva will come before the Court on April 5, 2017, for sentencing after pleading guilty to the one count charged in the indictment, Conspiracy to Distribute Five Kilograms or More of Cocaine and 50 Grams or More of Methamphetamine for Importation Into the United States in violation of 21 U.S.C. §§ 959, 960 & 963. For the reasons set forth below and in his initial Memorandum in Aid of Sentencing, Mr. Beltrán Leyva respectfully requests that this Honorable Court reject the government's request for a sentence of life in prison and sentence him to a term of 25 years.

### I.    Sentencing Enhancements

The Court has found by a preponderance of evidence that various sentencing enhancements apply, bringing the total offense level to 50. This guideline level corresponds with a guideline sentence of life imprisonment. Although the Court made its findings, Mr. Beltrán Leyva submits that evidence presented and the facts of this case are insufficient to support a life sentence.

133

The testimony offered by the government consisted of 2 agents' regurgitation of information allegedly provided by 3 cooperators during proffer sessions. Both agents testified that they merely repeated what the cooperators said, took their information at face value and did nothing to corroborate the information. There was no sworn testimony or statements from the cooperators themselves.

The local jury instructions warn that the testimony of cooperators should be "considered with caution."[1] In this case, the agents' recitation of unsworn cooperator proffers should be considered with even more caution. Mr. Beltrán Leyva concedes that the Court may consider hearsay evidence for sentencing; however, that evidence must have some indicia of reliability to support it.[2] The Commentary to Guideline § 6A1.3 specifically states in relevant that

> In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. *Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy.* Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means. *Unreliable allegations shall not be considered.*

On the record before it, although the Court made its determination as to the applicability of the various enhancements sought by the government, the Court has the discretion as to what weight to give the information when fashioning a sentence.

## II.   Acceptance of Responsibility

Under U.S.S.G. §3E1.1(a), "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." "If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of

---

[1]  *See, e.g.,* Red Book Instructions 2.22, 2.22a, 2.24.
[2]  *See United States v. Bras,* 483 F.3d 103, 108 (D.C. Cir. 2007).

subsection (a) is level 16 or greater, and upon motion of the government stating that the

defendant has assisted authorities in the investigation or prosecution of his own misconduct by

timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the

government to avoid preparing for trial and permitting the government and the court to allocate

their resources efficiently, decrease the offense level by 1 additional level."[3]

Furthermore, the Application Notes to U.S.S.G. §3E1.1 states in relevant part

1. In determining whether a defendant qualifies under subsection (a), appropriate
considerations include, but are not limited to, the following:

(A) truthfully admitting the conduct comprising the offense(s) of conviction,
and truthfully admitting or not falsely denying any additional relevant conduct
for which the defendant is accountable under §1B1.3 (Relevant Conduct). Note
that a defendant is not required to volunteer, or affirmatively admit, relevant
conduct beyond the offense of conviction in order to obtain a reduction under
subsection (a). A defendant may remain silent in respect to relevant conduct
beyond the offense of conviction without affecting his ability to obtain a
reduction under this subsection. However, a defendant who falsely denies, or
frivolously contests, relevant conduct that the court determines to be true or has
acted in a manner inconsistent with acceptance of responsibility; . . .[4]

At the plea hearing, the Court placed Mr. Beltrán Leyva under oath and engaged

in the following colloquy:

THE COURT: Thank you.  You can come back up, Mr. Balarezo, with your
client.

Now, Mr. Beltrán Leyva, you've heard the government's summary of what it
would have proved if this case had gone to trial. Let me ask you a few brief
questions with regard to that summary.

First, between 2000 and 2012, did you unlawfully, knowingly and intentionally
combine, conspire, confederate and agree, together with other co-conspirators, to
unlawfully, knowingly, and intentionally distribute 5 kilograms or more of a
mixture or substance containing a detectable amount of cocaine, which is a
narcotic drug and controlled substance, intending or knowing that such cocaine
would be unlawfully imported into the United States in violation of Title 21

---

[3]    U.S.S.G. §3E1.1(b).
[4]    U.S.S.G. §3E1.1 (Application Note 1A).

United States Code?

Did you do that?

THE INTERPRETER: Yes, Your Honor. I would help my brother, [Arturo]. And I conspired with my brother, [Arturo].

THE COURT: Okay.

Let me ask you this second: Between 2000 and 2012, did you unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree, together with other coconspirators, to unlawfully, knowingly and intentionally distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, which is a narcotic drug and controlled substance, intending and knowing that such methamphetamine would be unlawfully imported into the United States in violation of Title 21 United States Code?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. A little more specifically, let me ask you this:

Between 2000 and your arrest on January 2008 by Mexican authorities, were you not one of the leaders of the Beltran Leyva organization?

THE DEFENDANT: No, sir.

THE COURT: You were not a leader? Were you a member of the organization?

THE DEFENDANT: I was a member of the Beltran Leyva organization.

THE COURT: All right.

MR. BALAREZO: Your Honor, if I just may interject for one second.

THE COURT: No. This is -- no.

MR. BALAREZO: Very well.

THE COURT: Now, let me ask you this: During that time between 2000 and your arrest in 2008, did that organization that you're a member of, to your knowledge, help to finance shipments from Colombia, of cocaine, which were transported to Mexico, with the intention of them later being transported through Mexico to the United States?

THE DEFENDANT: I would just help my brother, [Arturo], sell it in Culiacán, with the knowledge that it would get to the United States.

THE COURT: All right.

4

136

So your organization was helping to finance those shipments from Colombia to Mexico for transshipment to the United States. Is that a fair description?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And let me ask you one other question: During the same time period we've been talking about, would it be accurate to say that your organization also produced methamphetamine in Mexico for distribution, ultimately, in the United States? To your knowledge, is that an accurate statement?

THE DEFENDANT: Yes, Your Honor, I did have knowledge of that as well.

THE COURT: Okay.

So you're pleading guilty today because you are, in fact, guilty; is that right?

THE DEFENDANT: Yes, Your Honor.[5]

In response to each of the Court's questions Mr. Beltrán Leyva knowingly and truthfully admitted the conduct comprising the offense of conviction and did not falsely deny any additional relevant conduct for which he is accountable under §1B1.3.[6] Here, Mr. Beltrán Leyva has pled guilty to the one count of a "non-speaking" indictment that merely states the times of the conspiracy and statutory boilerplate language. He is "not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a)."[7] Furthermore, he is "may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection."[8] Finally, there is no evidence on the record that he has falsely denied, or frivolously contested, relevant conduct that the court determines to be true or has acted in a manner inconsistent with acceptance of responsibility.[9]

---

[5]    Plea Hr'g Tr. At 17:16 – 20:13.

[6]    *See* U.S.S.G. §3E1.1 (Commentary).
[7]    *Id.*
[8]    *Id.*
[9]    *Id.*

The Guidelines further make clear that the adjustment for acceptance of responsibility is "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilty ...."[10]

Here, although Mr. Beltrán Leyva initially intended to exercise his constitutional right to a trial, he pled guilty once the Court denied his motion relating to the Rule of Specialty and for the reasons stated in his Motion to Withdraw Guilty Plea. He decided to enter a guilty plea *before* trial and did not put the government and the Court through the burden of an expected three-month trial. In fact, he realized that he did not want to go to trial and face life in prison if convicted and decided that pleading guilty would at least give him the possibility of one day returning to his country and his family. If the Guidelines contemplate a downward adjustment for acceptance of responsibility for a defendant who went to trial, there is no reason why the Court should not grant him the adjustment in this case where no trial occurred and he accepted responsibility.[11]

As noted previously, Mr. Beltrán Leyva was actively litigating his assertion that he had been extradited from Mexico to face charges related to the drug seizures in Washington State and for a period shorter than the conspiracy charged in the indictment. The government

---

[10]    U.S.S.G. §3E1.1 (Application Note 2).

[11]    *See United States v. Jones*, 997 F.2d 1475, 1478 (D.C. Cir. 1993) (*en banc*) (the reduction should normally be denied to the "defendant who does not plead guilty"; the *Jones* court granted a 2-level reduction to defendant who actually went to trial), *cert. denied*, 510 U.S. 1065 (1994)).

argues that because he moved to withdraw his plea of guilty, that motion is a "statement that he did not wish to let the guilty plea stand" and thus he should not receive credit for acceptance of responsibility. However, the Court must consider that it had denied his Motion to Reconsider Motion to Enforce Rule of Specialty or, Alternatively, to Limit Scope of Conspiracy because his unconditional guilty plea "waived his challenges to the indictment." (Doc. 225 at 2). Mr. Beltrán Leyva then moved to withdraw his guilty plea to preserve the legal argument pertaining to the Rule of Specialty. Thus, the Court should find that he met the requirement for a reduction for acceptance of responsibility.[12]

### III.    Sentencing disparities

The government cherry picks from the cases cited by the defense to demonstrate that other similar cases have resulted in sentences lower than life. In fact, the government argues that the "cases Defendant cites do not involve similarly situated defendants and are factually distinct from the instant case." (Doc. 242 at 9). The government then completely ignores the following cases cited:

In *United States v. Diego Montoya*, 09-CR-20665 (S.D. Fla. 2009) the defendant was the undisputed leader of Colombia's North Valley Cartel; was directly responsible for importing innumerable tons of cocaine into the United States; was directly responsible for the deaths of hundreds in Colombia; was responsible for the death of at least one government informant and was charged in at least three separate indictments.[13] Montoya pled guilty and was sentenced to a term of 45 years.[14] Other high-profile Mexican traffickers have been sentenced to

---

[12] After he pled guilty, the government represented that it did would not object to the reduction for acceptance of responsibility and that it would move for a reduction of an additional level.

[13]    *See* Exh.13; Factual Proffer in Support of Guilty Plea.

[14]    *See* Exh 14; Judgment in a Criminal Case.

less time than the government requests. For example: *United States v. Osiel Cardenas Guillen*,
00-CR-118 (S.D. Tex. 2010) (defendant was the leader of the Gulf Cartel that allied itself with
the Zetas; was responsible for importing tons of cocaine into the United States and much
violence in Mexico; sentenced to 25 years after a plea); *United States v. Hector Palma Salazar*
(C.D. Cal. 1995) (defendant was a co-founder of the Sinaloa Cartel with Joaquin "Chapo"
Guzman; was responsible for importing thousands of kilos of cocaine into the United States;
sentenced to 26 years after a plea; released in June 2016); *United States v. Benjamin Arellano*
*Felix*, 97-CR-2520 (S.D. Cal. 2012) (defendant was leader of the Tijuana Cartel; responsible for
shipping thousands of kilos of cocaine to the United States; sentenced to 25 years after a guilty
plea). These similarly-situated defendants who pled guilty were sentenced to less time than
sought here by the government. The Court must consider these sentences in fashioning a
sentence for Mr. Beltrán Leyva.

### IV.    Credit for time served

Mr. Beltrán Leyva respectfully urges the Court to give him full credit for the time
he has been incarcerated since January 28, 2008. The government has stated that his arrest was
"not related to the instant case."[15] The government's assertion is without merit. The Mexican
Ministry of Foreign Affairs, in its Extradition Order, specifically stated

> Accordingly, *this Secretariat finds that, just as was laid out in the above*
> *referenced Judicial Order of 10 June 2008, the existence of an organization of*
> *three or more individuals whose purpose was to commit drug trafficking crimes in*
> *an ongoing manner was corroborated;* [the organization] was led by JOAQUÍN
> GUZMÁN OERA, alias EL CHAPO GUZMÁN, ARTURO BELTRÁN LEYVA,
> alias EL BARBAS or EL BARBITAS or ALFA, HÉCTOR BELTRÁN LEYVA,
> alias EL H, ISMAEL ZAMBADA GARCÍA, alias EL MAYO ZAMBADA,
> JUAN JOSÉ ESPARRAGOZA MORENO, alias EL AZUL; [the organization]
> has ties to the Sinaloa and Juárez Cartels; in order to fulfill its objectives, [the
> members] bribed authorities from various fields (police, civilians, military, etc.);

---

[15]    Gov. Sent. Memo. at 2. The government also argues that the weapons he possessed at his arrest support an
enhancement for possession of a weapon because he was "an active member of the drug conspiracy." *Id.*

possessed and trafficked narcotics and, in general, [committed] those acts which led to the commission of various crimes against public health (and even, as was seen, acted as the custodians of resources derived from said criminal enterprise); that said criminal organization exhibited characteristics of an ongoing/permanent nature in the states of Baja California, Sinaloa, Nayarit and Colima; that at the orders of the leadership referenced herein, [the organization] collaborated in various drug trafficking related activities, such as receiving drug shipments coming from Colombia and, in the case of losses, coordinating efforts to search for and locate them for recovery, safeguarding their passage to the northern border of the Mexican Republic so they might subsequently be brought into the United States of America and sold there.

As regards the foregoing, in the above referenced 10 June 2008 Ruling on Appeal against **ALFREDO BELTRÁN LEYVA alias "MOCHOMO"** - which appears in criminal record 487/2008 and was issued in response to the appeal filed regarding the 29 January 2008 constitutional deadline order handed down in criminal case number 387/2012-VI-A, which went before the Sixth District Judge for Federal Criminal Cases/Proceedings in the State of Jalisco - *the person being sought is charged with conduct related to a criminal organization about which there is information for the years 1996 to January 2008, the date of his apprehension by Mexican authorities.* [This is] an organization in which his brother, ARTURO BELTRÁN LEYVA, alias EL BARBAS or EL BARBITAS, participated, among other persons. *Consequently, this Secretariat finds that only the first part of the facts reported by United States authorities in the current request for extradition against ALFREDO BELTRÁN LEYVA alias "MOCHOMO," refer to said criminal organization,* indicating the following:

> *An investigation conducted by United States law enforcement authorities revealed that as of the year 2000 **ALFREDO BELTRÁN LEYVA** was involved in the illegal distribution and importation of drugs, which were transported from Colombia for their final distribution in the United States of America.*
>
> ***ALFREDO BELTRÁN LEYVA**, the younger brother of Arturo Beltrán Leyva, the founder of the Beltrán Leyva Cartel who, until his death in the year 2009 was one of the most prolific drug traffickers in Mexico, along with his other brother, Héctor Beltrán Leyva, worked for his brothers' organization.*
>
> *At the beginning, **ALFREDO BELTRÁN LEYVA** was in charge of coordinating the unloading of large shipments of cocaine coming from Colombia; later, he was promoted and began to work as one of the main assistants to Arturo Beltrán Leyva, and the role of the person being sought [for extradition] consisted of safeguarding the shipment and distribution for sale of thousands of kilograms of cocaine that were introduced into the United States of America.*

*Therefore, the necessary legal requirements have not been met for extradition of the person sought, to be prosecuted for criminal conspiracy from the year 1996 to the month of January 2008* in the referenced criminal organization led by Joaquín Guzmán Loera, alias El Chapo Guzmán, Arturo Beltrán Leyva, alias El barbas or El barbitas or Alfa, Héctor Beltrán Leyva alias El H, Ismael Zambada García, alias El Mayo Zambada, Juan José Esparragoza Moreno, alias el Azul, who has links to the Sinaloa and Juárez Cartel, [and organization] dedicated to receiving drug shipments from Colombian and, in the case of losses, coordinating efforts to search for and locate them for recovery, safeguarding their passage to the northern border of the Mexican Republic so they might subsequently be brought into the United States of America and sold there. [This is not considered appropriate] given that [the person sought] is already being prosecuted for his participation in said criminal organization for the time period indicated, under criminal case number 387/2012-VI-A, which continues against him before the Sixth District Judge for Federal Criminal Matters in the State of Jalisco. *The foregoing takes into account the following ruling by the Fifth District Judge for Federal Criminal Matters for the Federal District:* (underlined/italicized emphasis added)

*A comparative analysis of the facts alleged against **ALFREDO BELTRÁN LEYVA alias "MOCHOMO,"** specifically in paragraphs I) and II) that appear above, concludes that **they are the same**, as the following similarities are clearly evident in a reading of the texts:*

| *Extradition file 8/2012* | *Case 387/2012-VI-A* |
|---|---|
| *1. From the year two thousand to January of two thousand eight (The latter referring to time period in which the extraditable individual was detained based on the facts set forth in criminal case 387/2012-VI-A, on the docket of the Sixth District Court for Federal Criminal Matters in the State of Jalisco.* | *1. From **nineteen hundred ninety-six** to the **twenty-first of January of two thousand eight.*** |
| *2. Worked for the **organization of his brothers, Arturo and Héctor.*** | *2. Was a member of the **organization led by his brothers Arturo and Héctor**, among others.* |
| *3. Was in charge of **coordinating the unloading of large shipments of*** | *3. Received shipments of drugs (cocaine) coming from* |

| | |
|---|---|
| *cocaine coming from Colombia.* | *Colombia and, in the case of lost shipments, coordinated efforts to search for and locate them so they could be recovered.* |
| *4. Later, he began to work as one of the main assistants to his brother Arturo and his role was to safeguard the shipment and distribution for sale of thousands of kilograms of cocaine that were introduced into the United States of America.* | *4. Safeguarded the transfer of the drugs (cocaine) to the northern northern [sic] border of the Mexican Republic for their subsequent introduction into the United States of America for sale there.* |

(Doc. 197; Exh. 4 -  MMFA Ruling at 156 - 157) (quoting Fifth Federal District Court) (emphasis in original) (excerpt of original in Spanish with English translation).

        Title 18 U.S.C. § 3585(b) states that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences – (1) *as a result of the offense for which the sentence was imposed;* …" The Bureau of Prisons' (BOP) regulations state that "if the federal defendant has been in pre-sentence state or foreign custody *on essentially the same charges as federal charges,* credit shall also be given even though a federal detainer may not have been on file during that time."[16]

        It is evident that the case for which he was arrested in Mexico in January 2008, pertains to his participation in a criminal organization involving Mr. Beltrán Leyva and his brother Arturo that was dedicated to drug trafficking since at least 1996.  In fact, it also states that Mr. Beltrán Leyva had been involved in the distribution and illegal importation of drugs from Colombia for the ultimate distribution in the United States since approximately 2000.  In effect, he was charged and detained in Mexico for the same conduct and time frame as charged

---

[16]    *BOP Manual on foreign incarceration credit*, CN-03, June 30, 1997, Chapter 6, p.7.

in this case.[17] Therefore, Mr. Beltrán Leyva respectfully requests that the Court apply credit for the entire time that he has been in custody since January 28, 2008.

## V.    Forfeiture

The indictment in this case included a forfeiture allegation against Mr. Beltrán Leyva and the government now argues that the Court should impose a money judgment in the amount of $10,000,000.00 (ten billion dollars). The government must prove the amount of the money judgment by a preponderance of the evidence. *See United States v. Roberts*, 660 F.3d 149, 166 (2nd Cir. 2011) (using a preponderance of the evidence standard to calculate the money judgment); *United States v. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007) (holding that the government may use "either direct or circumstantial evidence" to establish the amount of the money judgment by a preponderance of the evidence); *United States v. Lewis*, 791 F. Supp. 2d 81, 94-95 (D.D.C. 2011) (court calculated money judgment based on a finding by a preponderance of the evidence).

In determining the amount of a money judgment, the Court may consider any evidence it deems reliable, including hearsay. *See United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010) (holding that because forfeiture is part of sentencing, less stringent evidentiary standards apply in the forfeiture phase of the trial; the evidence need only be "reliable"). The amount sought by the government is pulled from thin air and bears no relation to reality. In fact, the "evidence" that the government presented was only the testimony of one agent who admitted that the numbers on the forfeiture chart introduced at hearing was based solely on the word of one cooperator. Even though others mentioned on that chart are government cooperators, the

---

[17] This was the basis of M. Beltrán Leyva's argument that the Mexican government had limited the scope of the conspiracy for which he could be tried in the United States. *See* Motion to Enforce Rule of Specialty or, Alternatively to Limit Scope of Conspiracy. (Doc. No. 59).

government did not even bother to attempt to corroborate the information with them. The
government has failed to produce any reliable evidence to support its outlandish request.

## CONCLUSION

Mr. Beltrán Leyva respectfully requests that the Court impose a sentence of 25
years. Considering *Booker* and *Hughes* such a sentence is reasonable and sufficient to serve the
criteria laid down in 18 U.S.C. § 3553(a).

**Dated:** Washington, DC
       March 24, 2017                    Respectfully submitted,

                                         **BALAREZO LAW**

                               /s/
                    By:       _____
                               A. Eduardo Balarezo
                               D.C. Bar # 462659
                               400 Seventh Street, NW
                               Suite 306
                               Washington, DC  20004

                               *Counsel for Defendant Alfredo Beltrán Leyva*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 24th day of March 2017, I caused a true and
correct copy of the foregoing Defendant's Supplemental Memorandum in Aid of Sentencing to
be delivered via ECF to the Parties in this case.

                               /s/
                    _____
                               A. Eduardo Balarezo